**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES S. FRAZIER, JR.,      )     Civil Action No. 10-500
        )
     Plaintiff,       )
        )     Magistrate Judge Lisa Pupo Lenihan
      v.         )
        )
SECRETARY RAY MABUS, U.S.     )
DEPARTMENT OF THE NAVY;     )
EXECUTIVE DIRECTOR W. DEAN     )
PFEIFFER, BOARD FOR     )
CORRECTION OF NAVAL RECORDS,     )
        )
     Defendants.     )     *Filed electronically*

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,**
**<u>OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

STATUTORY AND REGULATORY FRAMEWORK ..................................................1

    A.    United States Marine Corps Reserve Component ....................................................1

    B.    Enlisted Marine Promotions ...................................................................................2

    C.    Military Pay and Retired Pay................................................................................. 8

    D.    The Board for Correction of Naval Records .........................................................8

FACTUAL AND PROCEDURAL BACKGROUND ....................................................9

STANDARDS OF REVIEW .........................................................................................12

ARGUMENT ..................................................................................................................17

    I.    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR
        LACK OF JURISDICTION...........................................................................17

        A.    The Court Of Federal Claims Is The Only Court With Jurisdiction
               To Entertain Plaintiff's Claims..............................................................17

        B.    Even Assuming Plaintiff's Remedy Is Not Limited To Monetary
               Relief, This Court Still Lacks Jurisdiction.............................................21

    II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR
         FAVOR ........................................................................................................23

        A.    The ERSB's Consideration Of Plaintiff's Record Was Not Arbitrary,
               Capricious, An Abuse Of Discretion, Or Contrary To Law.........................24

        B.    The BCNR's Decision Was Not Arbitrary, Capricious, Unsupported
               By Substantial Evidence, or Contrary to Law .............................................34

CONCLUSION ..............................................................................................................38

ii

## TABLE OF AUTHORITIES

**CASES**

Adkins v. United States, 68 F.3d 1317 (Fed. Cir. 1995).............................................................21, 23

Boyle v. The Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71 (3d Cir. 1991)......... 13

Buckingham Township v. Wykle, 157 F.Supp.2d 457 (E.D. Pa. 2001)...........................................14

Burlington Truck Lines v. United States, 371 U.S. 156 (1962)......................................................14

Calloway v. Brownlee, 366 F.Supp.2d 43 (D.D.C. 2005)...............................................................17

Calloway v. Harvey, 590 F.Supp.2d 29 (D.C.C. 2008)..................................................................16

Carson v. U. S. Railroad Retirement Board, 2004 U.S. Dist. LEXIS 19034 (E.D. Pa. 2004)..........13

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)..................................................15

Collins v. United States, 24 Ct. Cl. 32 (1991)...............................................................................16

Concerned Citizens Alliance, Inc. v. Slater, 176 F.3d 686 (3d Cir. 1999).........................................13

Cone v. Caldera, 233 F.3d 789 (D.C. Cir. 2000)...............................................................15, 16, 17

Dougherty v. U.S. Navy Bd. for Correction of Naval Records, 784 F.2d 499 (3d Cir. 1986)...........14

Dysart v. United States, 369 F.3d 1303 (Fed. Cir. 2004)...............................................................21

El-Ganayni v. United States Dep't of Energy, 591 F.3d 176 (3d Cir. 2010)...................................25

Fairview Township v. U.S. Envtl. Protection Agency, 773 F.2d 517 (3d Cir. 1985)..............19, 20

Falk v. Secretary of the Army, 870 F.2d 941 (2d Cir 1989).............................................................26

Fluellen v. United States, 225 F.3d 1298 (Fed.Cir. 2000)..........................................................22, 23

Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d 1052 (3d Cir. 1985)................................15

Frizzelle v. Slater, 111 F.3d 172 (D.C. Cir. 1997)....................................................................16, 17

Fuller v. Winter, 538 F.Supp.2d 179 (D.D.C. 2008)......................................................................14

Gould Elecs., Inc. v. United States, 220 F.3d 169 (3d Cir. 2000)......................................13

Griffin v. Harris, 571 F.2d 767 (3d Cir. 1978).............................................................15

Hahn, et. al. v. United States, 757 F.2d 581 (3d Cir. 1985)....................................18, 19

Hondros v. United States Civil Service Commission, 720 F.2d 278 (3d Cir. 1983)....................20

Kelly v. Railroad Retirement Board, 625 F.2d 486 (3d Cir. 1980)...................................15

Kreis v. Sec'y of the Air Force, 866 F.2d 1508 (D.C. Cir. 1989)................................15, 16

Leveris v. England, 249 F.Supp.2d 1 (D.Me. 2003)..........................................................19

Martinez v. United States, 77 Fed. Cl. 318 (2007).....................................................22, 23

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977)................................12, 13

Motor Veh. Mfgrs. Ass'n. v. State Farm Mut., 463 U.S. 29 (1983)..............................14, 15, 16, 35

Neal v. Sec'y of the Navy, 639 F.2d 1029 (3d Cir. 1981)...................................................16

NVE, Inc. v. Dep't of Health & Human Services, 436 F.3d 182 (3d Cir. 2006)...........................15

Orloff v. Willoughby, 345 U.S. 83 (1953)..............................................................16, 22, 23

Palmer v. United States, 168 F.3d 1310 (Fed. Cir. 1999)................................................19

Petruska v. Gannon Univ., 462 F.3d 294 (3d Cir. 2006)................................................12, 13

Prometheus Radio Project v. F.C.C., 373 F.3d 372 (3d Cir. 2004)........................................15

Sanders v. United States, 594 F.2d 804 (Ct. Cl. 1979)................................................16, 22

Schweiker v. McClure, 456 U.S. 188 (1982).................................................................15

Skinner v. United States, 594 F.2d 824 (Ct. Cl. 1979)...............................................22, 23

Smalls v. United States, 471 F.3d 186 (D.C. Cir. 2006)...................................................20

United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506 (3d Cir. 2007)....................13

United States v. Keller, 2011 U.S. App. LEXIS 24743 (3d Cir 2011)........................................25

iv

United States v. Nixon, 418 U.S. 683 (1974)........................................................................15

**STATUTES**

Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et. seq......................................13

5 U.S.C. § 702 ........................................................................................................17, 19

5 U.S.C. § 706 ................................................................................................13, 14, 17

10 U.S.C. § 1552 .......................................................................................................8, 19

10 U.S.C. § 5013..........................................................................................................1

10 U.S.C. § 5063..........................................................................................................1

10 U.S.C. § 10109 ........................................................................................................1

10 U.S.C. § 10141 ........................................................................................................2

10 U.S.C. § 10202 ........................................................................................................1

10 U.S.C. § 12641 ........................................................................................................2

10 U.S.C. § 12731 .....................................................................................................8, 19

10 U.S.C. § 12739 .....................................................................................................8, 19

10 U.S.C. § 12774 ........................................................................................................19

10 U.S.C. § 1406 ..........................................................................................................8

28 U.S.C. § 1331 ..........................................................................................................19

Military Pay Act, 37 U.S.C. § 201, et. seq.................................................................8, 19

37 U.S.C. § 204 ...........................................................................................................19

37 U.S.C. § 206 ...........................................................................................................19

Little Tucker Act, 42 U.S.C. § 1346.................................................................18, 19, 21

Tucker Act, 42 U.S.C. § 1491.....................................................................................17, 18

## REGULATIONS AND OTHER ADMINISTRATIVE MATERIALS

32 C.F.R. Part 723 ..................................................................................................................8

32 C.F.R. § 723.2 ................................................................................................................8, 9

32 C.F.R. § 723.3.................................................................................................................9

32 C.F.R. § 723.6 ................................................................................................................8, 9

32 C.F.R. § 723.9 ................................................................................................................9

Marine Corps Manual, Change 1-3 (May 13, 1996).........................................................2, 3

Marine Corps Order 5216.9U............................................................................................6

Marine Corps Order P1001R.1J (March 10, 1999)...........................................................2

Marine Corps Order P1080.40C (June 7, 2001)...............................................................5

Marine Corps Order P1400.32C (October 30, 2000).................................................*passim*

Marine Corps Order P1400.32D (May 11, 2006)............................................3, 24, 25, 29

Marine Corps Order P1900.16F Change 1 (July 18, 2003) ..............................................30

Marine Corps Order 5420.16C (July 21, 2000) ....................................................7, 26, 28

**INTRODUCTION**

Plaintiff, James S. Frazier, Jr., originally commenced this action on April 19, 2010 by filing a motion for leave to proceed *in forma pauperis* along with a Complaint.  Based on a joint Stipulation of Dismissal submitted by the parties, the Court dismissed the Complaint on August 20, 2010 with the condition that the Board for Correction of Naval Records ("BCNR") would consider Plaintiff's December 9, 2009 petition for reconsideration.  On August 18, 2011, the BCNR denied Plaintiff's petition, and Plaintiff filed an Amended Complaint on December 14, 2011.  See Docket No. 21.  In the Amended Complaint, Plaintiff claims that he is entitled to retroactive promotion in the United States Marine Corps Reserve to Master Gunnery Sergeant (pay grade E-9) and that the decisions denying his promotion to that grade failed to comply with the Marine Corps Promotion Manual.  As relief, Plaintiff seeks an order from this Court promoting him retroactively to Master Gunnery Sergeant (E-9), adjusting his retirement rank, and expunging certain entries from his official Marine Corps record.

**STATUTORY AND REGULATORY FRAMEWORK**

**A.**     **United States Marine Corps Reserve Component**[1]

The United States Marine Corps Reserve Component ("Marine Corps Reserve" or "USMCR") is established under the Commandant of the Marine Corps ("the Commandant").  10 U.S.C.  § 10109.  By statute, each military department is required to prescribe regulations for the administration of reserve components.  10 U.S.C. § 10202.  At all times relevant to the present case, the administration of the USMCR was prescribed in the Marine Corps Reserve

---

[1] The U.S. Marine Corps is within the Department of the Navy. 10 U.S.C. § 5063.  The Secretary of the Navy is the head of the Department of the Navy. 10 U.S.C. § 5013(a).

1

Administration Management Manual ("Marine Corps Order P1001R.1J" or "MCO P1001R.1J"), dated March 10, 1999.[2]

The USMCR force was organized into three components, the Ready Reserve, the Standby Reserve, and the Retired Reserve.[3]  See 10 U.S.C. § 10141; see also MCO P1001R.1J, at ¶ 1001 (pg. 13 of 245).  The Ready Reserve consisted of two subsets: the Selected Marine Corps Reserve ("SelRes" or "SMCR") and the Individual Ready Reserve ("IRR").  MCO P1001R.1J, at ¶ 1002 (pp. 13-14 of 245).  IRR Marines were generally those who had previously served in the Active Component ("active duty") or in the SelRes and who either (1) had not completed their military service obligation ("MSO") or (2) had completed their MSO and remained in the IRR on a voluntary basis.  Id.  Members of the Retired Reserve are considered to be in a retired status. 10 U.S.C. § 10141.

**B.**   **Enlisted Marine Promotions**

Each military department is required by statute to establish standards and qualifications for retention and promotion in reserve components. 10 U.S.C. § 12641.  The Marine Corps Manual is "the basic publication of the United States Marine Corps issued by the Commandant of the Marine Corps and approved by the Secretary of the Navy.  It is a regulatory publication for the

---

[2] Relevant portions of MCO P1001R.1J are attached to Defendants' Appendix as Exhibit A.  This document is also available in full at http://www.marines.mil/news/publications/documents/MCO%20P1001R.1J.pdf.  Pinpoint pages refer to the page number of the full document.  This manual was superseded by MCO 1001R.1K on March 22, 2009.

[3] At the times relevant to this action, Plaintiff was a member of the Individual Ready Reserve ("IRR"), a subset of the Ready Reserve, until transferred to the Retired Reserve effective September 1, 2005.  See Am. Compl. ¶ 6; Administrative Record ("AR") 113, 226, attached to Defendants' Appendix.

Department of the Navy as defined in U.S. Navy Regulations." <u>See</u> Marine Corps Manual (1980), Change 1-3, dated May 13, 1996, at ¶ 0001.1.[4]  "The Marine Corps Manual is binding upon all persons in the Department of the Navy in matters concerning Marines and the Marine Corps." <u>Id.</u> at ¶ 0001.2 (pg. 9 of 125).  "When details on a specific subject are desired, the manual should be used with Marine Corps directives and other applicable issuances of the Department of the Navy." <u>Id.</u> at ¶ 0003.2 (pg. 9 of 125).  Paragraph 2503 of the Marine Corps Manual provides:

> 1. The enlisted promotion system is designed to provide a procedure for enlisted personnel within each grade and generally within each occupational field to compete for promotion to the next higher grade.  The requirements to be utilized in comparing the personnel records of all eligible Marines of the same grade, as well as the procedure to be employed in the comparison, are established by the Commandant of the Marine Corps.
>
> 2. Promotion policy and procedures prescribed by the Commandant of the Marine Corps are contained in the Marine Corps Promotion Manual and other directives.

<u>Id.</u> at ¶ 2503 (pp. 62-63 of 125).

The Marine Corps Promotion Manual, Volume 2, was the version of the promotion manual in effect at all times relevant to this case. <u>See</u> Marine Corps Order P1400.32C ("MCO P1400.32C"), dated October 30, 2000.[5]  The Marine Corps Promotion Manual was "the authority

---

[4] Relevant portions of Marine Corps Manual (1980), Change 1-3, dated May 13, 1996 are attached to Defendants' Appendix as Exhibit B.  This document is also available in full at http://www.marines.mil/news/publications/Documents/MARINE%20CORPS%20MANUAL%20W%20CH%201-3.pdf.  Pinpoint pages refer to the page number of the full document.

[5] MCO P1400.32C is not available on the internet, and therefore, it is attached to Defendants' Appendix as Exhibit C.  This manual was superseded by MCO P1400.32D on May 11, 2006.  In the Amended Complaint, Plaintiff erroneously cites to MCO P1400.32D, which took effect after the agency actions central to this case.  Defendants will cite to the correct version, MCO P.1400.32C, and will distinguish the two versions as necessary in this motion.  MCO P1400.32D is available in full at http://www.marines.mil/news/publications/Documents/MCO%20P1400.32D%20W%20CH%201.pdf.

for all enlisted promotions in the Marine Corps." Id. at ¶ 1203(1) (pg. 18 of 165).  Enlisted

Marines were selected and promoted as directed by the Commandant pursuant to the policies and

regulations established in MCO P1400.32C and separate implementing directives.  Id. at ¶

1200(3)(a) (pg. 15 of 165).  The promotion system set forth in MCO P1400.32C provided a

process whereby Marines within each grade and military occupational specialty ("MOS")/

occupational field competed among themselves for promotion to the next grade.  Id. at ¶ 1201 (pg.

18 of 165).  "The basic goal of the system was to advance the best qualified Marines to higher

grades [so that] vacancies in the enlisted structure [would] be continuously occupied by Marines

who [were] fully qualified to perform the duties and to assume the responsibilities of the next

higher grade."  Id.

        The promotion of Staff Non-Commissioned Officers ("SNCOs") was based on

recommendations made by selection boards.[6]  Id. at ¶ 3100 (pg. 73 of 165).  The Commandant

convened selection boards each calendar year comprised of Marine officers and senior SNCOs to

consider the qualifications of Marines in the grades of E-5 to E-8 for promotion to the next higher

grade.  Id. at ¶¶ 3100 and 3101 (pp. 73-74 of 165).  Upon convening, the selection boards were

provided with the number of allocations for each MOS/occupational field (the allowable number

of Marines that could be recommended for promotion), as well as guidance from the Commandant

("the precept").  Id. at ¶ 3104 (pg. 79 of 165).  The records of all eligible Marines were then

_____

        [6] Enlisted Marine grades ranged from E-1 to E-9.  MCO P1400.32C, at § 1101 (pg. 14 of
165).  Marine SNCOs are the senior enlisted personnel in grades E-6 through E-9.  Id.  A Staff
Sergeant is in grade E-6; a Gunnery Sergeant is in grade E-7; both First Sergeants and Master
Sergeants are in grade E-8; and both Master Gunnery Sergeants and Sergeants Major are in grade
E-9.  Id.  The promotion of Marines to the grades of E-2 through E-5 was governed by separate
procedures that did not involve selection boards.  Id. at §§ 2100-2600 (starting on pg. 29 of 165).

reviewed to determine the "best and fully qualified" based on the "whole Marine" concept.  Id. at ¶ 3100 (pg. 73 of 165).  As such, selection boards considered each Marine's "demonstrated performance [], leadership, professional and technical knowledge, experience [], growth potential, motivation, military proficiency, physical fitness, personal appearance, conduct, moral character, and maturity."  Id. at ¶ 3100(1) (pg. 73 of 165).  The Official Military Personnel File ("OMPF") maintained at Headquarters, U.S. Marine Corps was the primary record used by the selection boards.  Id. at ¶ 3100(3)(b) (pg. 73 of 165).  Upon completion of its review, the selection board submitted a report of its proceedings, including a list of the Marines recommended for promotion, to the Commandant of the Marine Corps or his designated representative for approval.  Id. at ¶ 3100(3)(c) (pg. 73 of 165).  The Commandant retained the authority to make the final determination for promotions to the SNCO grades.  Id. at ¶¶ 1204(5) (pg. 25 of 165) and 3106(4) (pg. 81 of 165).

Eligibility for consideration by a selection board was determined by a variety of criteria set forth in MCO P1400.32C, such as time in grade, time in service, and satisfactory achievement of credit points in the case of reserve component Marines.[7]  See generally id. at ¶ 3200 (pg. 83 of 165).  Paragraph 3200(2) governed the specific eligibility requirements for Marine Reservists.  Id. Of note, for Marines in the IRR, time in service was determined by the Marine's pay entry base date ("PEBD") which represented an established date at the beginning of the Marine's career.  Id. at ¶ 1100(28) (pg. 12 of 165).

---

[7] This information was maintained in the Marine Corps Total Force System ("MCTFS"), a computer database used to manage Marine Corps personnel. See Marine Corps Order P1080.40C, dated June 7, 2001, available at http://www.marines.mil/news/publications/ Documents/MCO%20P1080.40C.pdf.

Marine SNCOs who were eligible for promotion consideration but were not properly considered by the relevant regularly scheduled selection board were entitled to request remedial consideration.  Id. at ¶ 3600 (pg. 93 of 165).  Eligibility for remedial promotion consideration was governed by ¶ 3602 (pg. 93 of 165), and the Commandant designated the Manpower and Reserve Affairs Department, Enlisted Promotions Section (MMPR-2)[8] at Headquarters, U.S. Marine Corps as the authority to make the final determination of a Marine's eligibility for remedial consideration.  Id. at ¶¶ 3602(4) (pp. 94-95 of 165) and 3604 (pg. 96 of 165).  As a discretionary function of the promotion system, remedial consideration was granted on a case-by-case basis.  See generally id. at ¶ 3601-3602 (pp. 93-95 of 165).  Remedial consideration could be justified by a number of reasons, including, for example, a Marine who was not considered by the regular board as a result of incorrect eligibility criteria in his record at the time of that board.  Id. at ¶ 3602 (pp. 93 of 165).  Cases approved for remedial promotion consideration were referred by MMPR-2 to the Enlisted Remedial Selection Board ("ERSB") which, unlike the regularly convened selection boards, convened as necessary on a non-regular basis.  Id. at 3604(2) (pg. 97 of 165).[9]

A separate directive issued on July 21, 2000 provided additional information and guidance

---

[8] While referencing MMPR-2, MCO P1400.32C does not explicitly explain what MMPR-2 means. MMPR-2 was (and still is) the abbreviation used to designate the Enlisted Promotions Section of the Promotions Branch in the Manpower Management Division of the Manpower and Reserve Affairs Department. See Marine Corps Order 5216.9U, Enclosure (1), dated January 28, 2005, available at http://www.globalsecurity.org/military/library/policy/usmc/mco/5216-9/mco5216-9u.pdf.

[9] See also https://www.manpower.usmc.mil/portal/page/portal/M_RA_HOME/MM/PR/MMPR2/MMPR2_STAFF_NONOFFICER_PROMOTIONS/MMPR2_STAFF_NONOFFICER_PROMOT_REMEDIAL/BOARDS/MMPR2_SNCO_REMEDIAL_Schedule (for the tentative nature of ERSB scheduling).

concerning the operation and function of the ERSB.  See Marine Corps Order 5420.16C ("MCO 5420.16C"), dated July 21, 2000, attached to Defendant's Appendix in full as Exhibit D. According to MCO 5420.16C, "[t]he ERSB will consider the cases of enlisted Marines both Regular and Reserve, who, for any reason other than ineligibility, did not receive consideration or were not properly considered, when they were eligible for consideration by a regularly convened Headquarters, U.S. Marine Corps [SNCO] Selection Board."  Id. at Encl (1), ¶ 1(b)(1) (pg. 8 of 9).

Upon convening, the ERSB was guided by the same criteria and selection procedures that the regularly scheduled selection board had been instructed to follow.  See MCO P1400.32C, at § 3601(2) (pg. 93 of 165); see also MCO 5420.16C, at Encl (1), ¶ 1(b)(3) (pg. 8 of 9).  Because remedial consideration was conducted under the same criteria and selection procedures of the regularly scheduled board, the record of any Marine referred to the ERSB was redacted to prevent the board from considering any material that post-dated the regularly scheduled selection board for which the remedial promotion consideration was granted.  See MCO P1400.32C, at ¶ 3601(2) (pg. 93 of 165).  However, where the regularly scheduled selection boards were tasked with selecting the "best and fully qualified" Marines, the ERSBs were tasked with selecting "fully qualified" Marines.  Id.  This is because the ERSBs were not constrained by the allocation restrictions applicable to the regularly scheduled boards.  Id.; see also MCO 5420.16C, at Encl (1), ¶ 1(b)(4) (pg. 8 of 9).

Additionally, under MCO P1400.32C, Marine commanders were authorized to enter promotion restrictions against enlisted Marines.  See MCO P1400.32C, at ¶ 1204 (pg. 23 of 165). A Marine under a promotion restriction could not be promoted while the restriction was in effect. Id. ¶ 1204(3) (pg. 23 of 165).  While a promotion restriction prohibited the commander of a

7

Marine SNCO from effecting a promotion, it did not prohibit the SNCO from being considered for promotion selection.  See, e.g., id. at ¶ 1204(3)(u) (pg. 25 of 165) (for an example of a provision that distinguishes between promotion consideration and actual promotion); see also ¶ 1203(18)(d) (pg. 22 of 165) (for an example of a provision that distinguishes between promotion consideration, selection, and actual promotion).  Under MCO P1400.32C, a promotion restriction category existed for Marines confined by civil authorities, as well as one for Marines pending administrative separation from the Marine Corps.  Id. at ¶ 1204(3)(t) and (u) (pp. 24-25 of 165).

**C.**     **Military Pay and Retired Pay**

Marine Reservists are entitled to pay and allowances pursuant to the Military Pay Act, 37 U.S.C. §§ 201-212.  Marines transferred to the Retired Reserve are entitled, upon application to the Secretary of the Navy, to retired pay based on eligibility criteria set forth in 10 U.S.C. § 12731.  Of note, retired pay for Marines who entered the service prior to September 8, 1980 is directly tied to the Marine's pay grade at the time of retirement. 10 U.S.C. §§ 1406, 12739.

**D.**     **The Board For Correction of Naval Records**

The Secretary of the Navy, as authorized by statute, has established a Board for Correction of Naval Records ("BCNR").  10 U.S.C. § 1552.  The BCNR's rules are codified at 32 C.F.R. Part 723.  The BCNR is composed of civilians authorized by the Secretary to identify and correct material errors or injustices in Navy and Marine Corps records.  32 C.F.R. § 723.2(a).  When the BCNR identifies a material error or injustice, it may  – when authorized – take final action to correct the record.[10]  Id. at §§ 723.2(b) and 723.6(e).   When not authorized to take final

---

[10] In limited circumstances, such as when the Board's decision is not unanimous, only the Secretary may take action.  See 32 C.F.R. § 723.6.

corrective action itself, the BCNR may make appropriate recommendations to the Secretary for the correction of records.  Id. at. § 723.6.

The BCNR is not an investigative body.  Id. at § 723.2(b).  It may examine applications and review "all pertinent evidence of record," but it may deny a petition when the "record fails to demonstrate the existence of probable material error or injustice."  Id. at § 723.6(e)(1) – (e)(2). Additionally, the "Board relies on a presumption of regularity to support the official actions of public officers."  Id. at § 723.3(e)(2).  Accordingly, a petitioner bears the burden of proving with substantial evidence that the acting officials committed an error or fashioned an injustice.  Id.   In the absence of substantial evidence to the contrary, the Board will presume military officers "properly discharged their official duties." Id.

The Board may accept petitions for reconsideration following an otherwise final decision. Id. at § 723.9.  However, an applicant must present new and material evidence and may not simply raise matters the Board previously addressed.  Id.  New evidence is "evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." Id.  Likewise, evidence is only "material if it is likely to have a substantial effect on the outcome."  Id.

When the Board denies an applicant's original request in executive session, including an applicant's request for reconsideration, it shall do so in writing.  Id. at § 723.3(e).  The Board must compose a brief statement, which "shall include the reasons for the determination."  Id.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a retired Master Sergeant (E-8) in the United States Marine Corps Reserve, a rank he initially held since January 1, 1998.  See Am. Compl. ¶ 6; AR 097.  On January 12, 2004,

the Fiscal Year ("FY") 2004 Reserve SNCO Selection Board was convened to consider eligible Marines for promotion to the next higher rank. AR 100, 172. To be considered by the FY 2004 board, each Marine in Plaintiff's category was required to have a PEBD before September 30, 1977. AR 029. Plaintiff's record was not considered by the FY 2004 board because, at the time the board convened, the MCTFS reflected a PEBD of November 7, 1977. AR 097.

Plaintiff's PEBD was subsequently corrected to November 7, 1976, a date that would have made him eligible for consideration by the FY 2004 board. AR 188, 193-194. Consequently, on March 15, 2005, Plaintiff requested remedial promotion consideration by the ERSB which was approved by the Commandant (MMPR-2) on March 18, 2005. AR 056. By a letter dated May 4, 2005, the Marine Corps attempted to notify Plaintiff that he would be considered by the ERSB on May 11, 2005. AR 100, 172.

On March 21, 2005, in between Plaintiff's approval for remedial consideration and the convening of the ERSB, Plaintiff was involved in a domestic shooting. See Am. Comp. ¶ 8; AR 023, 277-282. Following the incident, he was arrested, charged with attempted second degree murder and incarcerated by civilian authorities. Id. As a result of the charges and Plaintiff's incarceration by civilian authorities, the Commander of the Marine Corps Mobilization Command began to process Plaintiff for administrative separation (discharge) from the USMCR and made a promotion restriction entry into the MCTFS on April 8, 2005. AR 022. On April 26, 2005, Plaintiff's commander initiated the administrative separation proceedings against Plaintiff by signing a "Notification of Separation Proceedings." AR 263.

On May 11, 2005, the ERSB considered Plaintiff's record for promotion. AR 102, 108, 112. Because Plaintiff's record was redacted to appear as it would have on January 12,

10

2004 (the date of the regularly convened selection board), the ERSB was unaware of Plaintiff's incarceration or pending administrative separation.  AR 056, 097.  The ERSB did not recommend Plaintiff for promotion, and on May 16, 2005, the Commandant approved the ERSB's recommendations.  AR 112.  By a letter dated May 18, 2005, the Marine Corps attempted to notify Plaintiff of the ERSB's decision.  Id.  On May 24, 2005, the Marine Corps Mobilization Command made an entry into the MCTFS stating that Plaintiff had been passed over for promotion by the ERSB.  See Am. Compl. ¶ 11.

On July 22, 2005, Plaintiff's commander, the Commander of the Marine Corps Mobilization Command, signed Plaintiff's administrative separation package for forwarding to the Commanding General of Marine Forces Reserve.  AR 262.  Plaintiff's commander recommended Plaintiff's discharge from the USMCR with an Other-Than-Honorable discharge due to "Misconduct - Commission of a Serious Offense."  Id.  On September 2, 2005, the Commanding General of Marine Forces Reserve approved Plaintiff's administrative separation.  AR 260.  As a result, Plaintiff was discharged from the USMCR with an Other-Than-Honorable discharge, assigned an RE-4 re-enlistment code, and reduced in rank from Master Sergeant (E-8) to Lance Corporal (E-3).  AR 259-260.

Plaintiff went to trial on the civilian charges in March 2007, and on March 26, 2007, a jury found him not guilty of attempted second degree murder.  AR 245, 252, 256.  On June 19, 2007, Plaintiff filed a petition with the BCNR requesting that his Other-Than-Honorable discharge, RE-4 re-enlistment code, and reduction in rank to Lance Corporal (E-3) be rescinded and that his record be expunged with respect to the shooting incident.  AR 249-253.  On January 7, 2008, Plaintiff received a final decision from the BCNR granting certain relief.

11

AR 237-241.  Specifically, the BCNR restored Plaintiff to the rank of Master Sergeant (E-8) and that he be retired effective September 1, 2005.  Id.

On March 8, 2008, Plaintiff filed another petition with the BCNR requesting that the promotion restriction and passed-over promotion entries be expunged from the MCTFS and that he be granted remedial promotion consideration to Master Gunnery Sergeant (E-9).  AR 184-191.  On January 16, 2009, the BCNR denied his petition.  AR 174-175.  On December 9, 2009, Plaintiff sought reconsideration of the BCNR's final decision, which was denied on December 24, 2009.  AR 156-163.

On April 20, 2010, Plaintiff filed the present suit.  On August 19, 2010, the parties submitted a Stipulation of Dismissal in which they agreed to dismiss Plaintiff's complaint on the condition that the BCNR would consider Plaintiff's December 9, 2009 petition for reconsideration.  On August 20, 2010, the Court dismissed the Complaint, and on August 18, 2011, the BCNR denied Plaintiff's petition for reconsideration on the merits.  On October 21, 2011, the Court granted Plaintiff's motion to re-open the case and granted Plaintiff leave to file an amended complaint by December 23, 2011.  Plaintiff filed his Amended Complaint on December 14, 2011.  See Docket No. 21.

## STANDARDS OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'"  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject

matter jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  In

reviewing a facial attack on subject matter jurisdiction, the court may only consider the plaintiff's

allegations and documents referenced therein and attached thereto.  Id.  When considering a facial

attack, a court must accept the allegations contained in the plaintiff's complaint as true. Petruska,

462 F.3d at 302 n.3.  In considering a factual attack on subject matter jurisdiction, "no

presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

Id. (citing  Mortensen, 549 F.2d at 891).  In its discretion, the court weighs the evidence such as

affidavits, documents, and evidentiary hearings relating to jurisdiction.  United States ex rel.

Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007).  Such inquiry is permissible

because a federal court must assure itself that it has jurisdiction over the case, and it may even

resolve factual disputes in doing so.  See Boyle v. The Governor's Veterans Outreach &

Assistance Ctr., 925 F.2d 71, 74 (3d Cir. 1991) (citing Mortensen, 549 F.2d at 891).  As the party

asserting jurisdiction, Plaintiff bears the burden of proving that it exists. Petruska, 462 F.3d at 302

n.3  (citing Mortensen, 549 F.2d at 891).

**B.**      **Fed. R. Civ. P. 56 and the Administrative Procedure Act, 5 U.S.C. §§ 701-706**

         Summary judgment is an appropriate mechanism for reviewing the final action of a

government agency under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

Concerned Citizens Alliance, Inc. v. Slater, 176 F.3d 686, 693 (3d Cir. 1999).  However, rather

than applying the standard of review set forth in Fed. R. Civ. P. 56, the court's function is to

determine, as a matter of law according to the standard of review set forth in the APA, whether

the evidence in the record permitted the agency to decide as it did. Carson v. United States

Railroad Retirement Board, 2004 U.S. Dist. LEXIS 19034, *14-15 (E.D. Pa. 2004).  In reviewing

the decision of an administrative agency pursuant to a motion for summary judgment, "the

administrative record provides the complete factual predicate for the court's review." Id.  This is

because, under the APA, factual issues are resolved by the agency.  Fuller v. Winter, 538

F.Supp.2d 179, 185 (D.D.C. 2008).  Thus, there are "generally no issues of material fact in an

APA case," Buckingham Township v. Wykle, 157 F.Supp.2d 457, 462 (E.D. Pa. 2001), and the

court's review is limited to the administrative record. 5 U.S.C. § 706; see also Dougherty v. U.S.

Navy Bd. for Correction of Naval Records, 784 F.2d 499, 501 (3d Cir. 1986).

Under the APA, the court may set aside agency actions, findings, or conclusions that are

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A).  As stated by the Court of Appeals for the Third Circuit:

> Agency action may not be set aside on grounds that it is arbitrary and capricious if the
> action is rational, based on relevant factors, and within the agency's statutory
> authority. Motor Veh. Mfgrs. Ass'n. v. State Farm Mut., 463 U.S. 29, 42-43, 103 S Ct.
> 2856, 866, 7 L.Ed.2d 443 (1983).
>
> In considering whether agency action is rational, a reviewing court must determine
> whether the agency considered the relevant data and articulated an explanation
> establishing a "rational connection between the facts found and the choice made."
> Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9
> L.Ed.2d 207 (1962).
>
> In considering whether agency action was based on relevant factors, the reviewing
> court normally must determine whether the agency relied on factors Congress intended
> it to consider. If the court determines that the agency relied on factors Congress did
> not intend for it to consider, or has failed to consider an important aspect of the
> problem, then the action should be set aside as arbitrary and capricious. See Motor
> Vehicle Mfrs. Ass'n., 463 U.S. at 43-44, 103 S.Ct. at 2867.
>
> In considering whether agency action was within the scope of its statutory authority,
> the reviewing court first must construe the relevant statute to determine the scope of
> the agency's authority and discretion and then must determine whether the action in

question lies within that scope. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-416 (1971).

Finally, where...judicial review includes action taken pursuant to agency regulations, validly promulgated regulations have the force of law. Griffin v. Harris, 571 F.2d 767, 772 (3d Cir. 1978). Moreover, the agency itself is bound by its own regulations. U.S. v. Nixon, 418 U.S. 683, 695-696, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). Failure on the part of the agency to act in compliance with its own regulations is fatal to such action. Kelly v. Railroad Retirement Board, 625 F.2d 486, 492 (3d Cir. 1980). Such actions are "not in accordance with law."

Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d 1052, 1055-56 (3d Cir. 1985).

The scope of review under the "[APA] standard is 'narrow, and a court is not to substitute its judgment for that of the agency.'" Prometheus Radio Project v. F.C.C., 373 F.3d 372, 389 (3d Cir. 2004)(quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 42).  While a reviewing court is not precluded from conducting a thorough, probing, in-depth review of the agency's action, the agency action is entitled to a presumption of regularity. Frisby, 755 F.2d at 1055 (citing Overton Park, 401 U.S. at 415-416 and Schweiker v. McClure, 456 U.S. 188, 196 (1982)).  The court's review focuses on the agency's decision making process, not the decision itself. NVE, Inc. v. Dep't of Health & Human Services, 436 F.3d 182, 190 (3d Cir. 2006).

Courts afford an even higher level of deference when reviewing decisions by boards for correction of military records. Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (decisions of the boards for correction of military records are reviewed under the APA by an unusually deferential application of the arbitrary and capricious standard).  This highly deferential standard in the context of military personnel decisions ensures that courts do not become embroiled in the debates of disappointed soldiers, sailors, and Marines, which would tend to destabilize the effectiveness of military operations. Cone v. Caldera, 233 F.3d 789, 793 (D.C.

Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).   With this framework, courts

proceed with extreme caution and will only disturb the clearest violations of law and regulation.

Kreis, 866 F.2d at 1515.  Otherwise, the judiciary may inadvertently interfere with military

operations and inappropriately decide what administrative measures are in the interest of good

order and discipline.  See Cone, 223 F.3d at 793.

The legal inquiry for a court reviewing the decision of a military corrections board under

the APA is whether the correction board's decision was arbitrary and capricious, unsupported by

substantial evidence, or contrary to law. Frizzelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997).

Indeed, a court in an autonomous review might arrive at a different result, but reasonable minds

can reach differing conclusions.  Calloway v. Harvey, 590 F.Supp.2d 29, 35 (D.C.C. 2008) (citing

Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979)).  Accordingly, the critical question

here is whether the Board followed the proper procedure, applied facts rationally connected to its

decision, and provided a reasoned basis for its decision. Motor Vehicle Mfrs. Ass'n, 463 U.S. at

43.

Moreover, there is a "strong but rebuttable presumption that administrators of the military,

like other public officials, discharge their duties correctly, lawfully, and in good faith."  Frizzelle,

111 F.3d at 177 (quoting Collins v. United States, 24 Ct. Cl. 32, 38 (1991); aff'd, 975 F.2d 869

(Fed. Cir. 1992)); see also Neal v. Sec'y of the Navy, 639 F.2d 1029, 1037-1038 (3d Cir. 1981).

Such discretion applies not only to military personnel "but to any decision maker whose decision

is to be reviewed under a standard that assumes discretion has been exercised soundly, in the

absence of proof to the contrary." Neal, 639 F.2d at 1037-1038.  Accordingly, a service member

challenging the decisions of military personnel or a military corrections board bears the difficult

16

burden of overcoming this presumption of regularity with "cogent and clearly convincing evidence that the decision was the result of a material error or injustice." Calloway v. Brownlee, 366 F.Supp.2d 43, 54 (D.D.C. 2005)(citations omitted); accord Cone, 223 F.3d at 792-793 and Frizzelle 111 F.3d at 177.

Finally, when reviewing an agency's decision under the APA, the court must give proper account to the role of prejudicial error. 5 U.S.C. § 706(2); see also Neal, 639 F.2d at 1035 (where the Third Circuit rejected plaintiff's claim based on procedural irregularities as a result of plaintiff's failure to demonstrate prejudice).

## ARGUMENT

### I.    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION

#### A.    The Court of Federal Claims Is The Only Court With Jurisdiction To Entertain Plaintiff's Claims

Plaintiff invokes the APA, 5 U.S.C. § 702, and the "Tucker Act." 42 U.S.C. § 1491, as the statutes providing jurisdiction in his case.[11]  A review of both statutes in context with the Amended Complaint reveals that this Court lacks jurisdiction to hear Plaintiff's claims because the Court of Federal Claims is the exclusive forum for claims against the United States seeking a monetary remedy where Plaintiff has not waived any monetary remedy beyond $10,000.

_____

[11] In addition to the APA and the Tucker Act, Plaintiff cites 5 U.S.C § 7703 and 28 U.S.C. § 2401 as bases for jurisdiction.  See Am. Compl. ¶ 4.  The former pertains to judicial review for decisions of the Merit Systems Protection Board ("MSPB"), which is inapplicable to Plaintiff's case since there were no proceedings before the MSPB.  The latter provides the statute of limitations in civil suits against the United States, which, although applicable to Plaintiff's case, does not establish jurisdiction.

The Tucker Act both grants jurisdiction and waives the sovereign immunity of the United States for non-tort money claims.  28 U.S.C. § 1491.  Specifically, the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over non-tort claims against the United States in excess of $10,000.  Id.; see also Hahn, et. al. v. United States, 757 F.2d 581, 585-586 (3d Cir. 1985).  The "Little Tucker Act" gives district courts concurrent jurisdiction over such claims not exceeding $10,000 in amount.  28 U.S.C. §§ 1346(a)(2); see also Hahn, et. al. v. United States, 757 F.2d 581, 585-586 (3d Cir. 1985).  "[I]t is not the nature of the cause of action that determines whether the district court or the [Court of Federal Claims] has jurisdiction," but rather "the nature of the relief requested."  Hahn, 757 F.2d at 586.  Thus, in order for a plaintiff to bring a claim in district court under the Little Tucker Act, he or she must waive any relief that may exist beyond the $10,000 jurisdictional limit.  Id. at 587.

In the present case, not only has Plaintiff attempted to invoke the Tucker Act as a basis for jurisdiction, but Plaintiff also indicates in the Amended Complaint that this Court can give him "back pay and appropriate collateral relief."  See Am. Compl. ¶ 33.  He supports this statement by citing no less than eleven cases in the Court of Federal Claims (or its predecessor, the United States Court of Claims), each of which involved plaintiffs who were seeking some form of military pay.  Additionally, in the Amended Complaint, "Plaintiff demands judgment against the Defendants for damages ..."  See Am. Compl. ¶ 34.  Taking each of these portions of the Amended Complaint together, Plaintiff clearly appears to be seeking a monetary remedy.  While it is unclear whether Plaintiff would actually be entitled to back pay for active duty drill

periods performed if he were to be promoted to the rank he requests,[12] he clearly would stand to receive retired pay at a higher rate since that pay is directly tied to a Reservist's rank at the time of retirement.  See AR 226-227; see also 10 U.S.C. §§ 12731, 12739, 12774.  Because this differential in retired pay could amount to hundreds of dollars per month over the span of Plaintiff's life, Plaintiff's claim ultimately is one for more than $10,000.  Consequently, pursuant to the Tucker Act, this Court lacks jurisdiction to adjudicate Plaintiff's claim, and, because Plaintiff has not waived any monetary remedy in excess of $10,000, this Court lacks jurisdiction to adjudicate Plaintiff's claim under the Little Tucker Act.

Turning to the APA, 5 U.S.C § 702 is not a grant of jurisdiction to the district courts.  5 U.S.C. § 702; see also Fairview Township v. United States Envtl. Protection Agency, 773 F.2d 517, 527 n.19 (3d Cir. 1985).  It does, however, provide a waiver of sovereign immunity which can correspond to a grant of jurisdiction under 28 U.S.C. § 1331 and 10 U.S.C. § 1552.[13] Fairview Township, 773 F.2d at 527 n.19.  However, this waiver of sovereign immunity is limited to non-monetary claims.  5 U.S.C. § 702.  As a result, "[t]his jurisdictional route may not be used to circumvent limitations on district court jurisdiction created by the Tucker Act."  Hahn, 757 F.2d at 588 (internal citations omitted).  In other words, "[Court of Federal Claims] jurisdiction may not

---

[12] A Reservist's entitlement to military pay is based on his or her participation in active duty drill periods. See Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999) ("[Reservists] are paid by the military only for drills actually attended...and for active duty for training actually performed.")(citing 37 U.S.C. §§ 204(a)(2), 206(a)(1)).

[13] Although Plaintiff failed to plead 28 U.S.C. §1331 and 10 U.S.C. § 1552 as the basis of jurisdiction that would correspond to the waiver of sovereign immunity under the APA, Defendants concede that judicial review of decisions by military corrections boards made pursuant to 10 U.S.C. § 1552 is well-established. See Leveris v. England, 249 F.Supp.2d 1, 4 n.3 (D.Me. 2003).

be evaded by merely disguising a monetary claim as a claim for injunction requiring the payment of money." Id. at 589 (citing Hondros v. United States Civil Service Commission, 720 F.2d 278, 299 n.40 (3d Cir. 1983). Courts use the "prime objective" or "prime effort" doctrine to determine whether jurisdiction properly vests in district court or the Court of Federal Claims. Fairview Township, 773 F.2d at 528. Specifically, "if victory for plaintiff in the suit would be tantamount to a release of funds in excess of $10,000, then the [Court of Federal Claims] has exclusive jurisdiction over the suit, even if the action is styled as one for injunctive or declaratory relief." Id.

Here, as explained above, if granted the relief he seeks - namely, promotion to Master Gunnery Sergeant (E9) - Plaintiff will be entitled to additional retired pay beyond what he is already entitled to receive. In other words, an order by this Court to promote Plaintiff would be "tantamount to a release of funds in excess of $10,000." Furthermore, because Plaintiff has already been transferred to the Retired Reserve at the rank of Master Sergeant (E8), he is already entitled to all other rights, privileges and benefits associated with being retired from military service.[14] There are no other tangible benefits other than the increase in retired pay that Plaintiff can argue will result from the promotion he seeks in this Court. Because Plaintiff's prime objective is to be promoted to Master Gunnery Sergeant (E9) and to get the retired pay that goes with it, his assertion of jurisdiction under the APA must be rejected.

---

[14] See Smalls v. United States, 471 F.3d 186, 190 (D.C. Cir. 2006) (the term "retirement benefits" connotes a host of benefits to which no monetary value can be attached, such as medical treatment, access to base facilities, space available travel on military aircraft, the right to wear the uniform on appropriate public occasions, and military funeral arrangements).

Ultimately, to the extent Plaintiff seeks to establish jurisdiction under the Tucker Act, his complaint must be dismissed for lack of jurisdiction since the Court of Federal Claims in the only court with jurisdiction to adjudicate such a monetary claim in excess of $10,000. Likewise, since Plaintiff has not waived any monetary relief in excess of $10,000, he has failed to establish jurisdiction under the Little Tucker Act. Finally, where the prime objective of Plaintiff's claim is to secure funds in excess of $10,000 (the retired pay attendant with the promotion he requests), he cannot circumvent the limitations on this Court's jurisdiction under the Tucker Act by pleading a claim for declaratory and injunctive relief under the APA. Accordingly, Plaintiff's claims should be dismissed for lack of jurisdiction.

**B.      Even Assuming Plaintiff's Remedy Is Not Limited To Monetary Relief, This Court Still Lacks Jurisdiction**

Even if the Court disagrees that the Court of Federal Claims retains exclusive jurisdiction over Plaintiff's claim, this Court still lacks jurisdiction. This is because Plaintiff asks the Court to interfere with military promotion matters that, by law, are left to the discretion of the military. Specifically, Plaintiff seeks an order retroactively promoting him to Master Gunnery Sergeant (E9) with a FY 2004 date of rank, adjusting his retirement rank, and expunging a promotion restriction imposed as a result of his administrative separation. See Am. Compl. ¶ 34. However, it is well-established that courts lack jurisdiction over claims seeking a promotion. Indeed, courts do not interject themselves into the military promotion process, because doing so would be an "impermissible interference with [military] matters." Adkins v. United States, 68 F.3d 1317, 1322-24 (Fed. Cir. 1995); Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004) ("[T]he subject of military promotions is beyond the competence of courts to review.");

21

Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979) ("The courts cannot [select officers

for military promotion]."); Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979)

("[S]trong policies compel the court to allow the widest possible latitude to the armed

services in their administration of personnel matters."); see generally Orloff v. Willoughby,

345 U.S. 83, 94 (1953) ("[W]e have found no case where this Court has assumed to revise

duty orders as to one lawfully in the service").

      In Martinez v. United States, 77 Fed. Cl. 318, 320-21 (2007), aff'd, 260 Fed. App. 298

(Fed. Cir. 2008), a case instructive on this issue, the plaintiff, who had been separated from

service with the United States Army, filed suit in the United States Court of Federal Claims

alleging that her separation was "without cause, justification or in accordance with the Army's

own regulations governing involuntary separation." 77 Fed. Cl. at 321.  Among the relief

Plaintiff sought was a promotion "to the next highest rank" for purposes of back pay and

retirement benefits.  Id.  The court initially observed that "'[a] claim of error in a promotion

decision presents a nonjusticiable controversy because there are no statutory or regulatory

standards against which a court can review such a decision.'"  Id. at 323 (citing Fluellen v.

United States, 225 F.3d 1298, 1304 (Fed.Cir. 2000)).  Notwithstanding this observation, the

court, *sua sponte*, addressed the issue of jurisdiction over the plaintiff's promotion claim.  It

recognized that even though it had authority to grant equitable relief "'incident of and

collateral to' a claim for monetary damages," the plaintiff's request for a promotion was

independent of her other claims.  Id. at 325.  Therefore, it concluded that it lacked jurisdiction

to adjudicate the promotion claim.  Id.  In this regard, the court added that even if it had

jurisdiction over the claim, it would decline to exercise its authority "because administration

22

of military promotions are 'left to the discretion of the military.'"  Id. (quoting Fluellen, 225 F.3d at 1304).

In this case, as in Martinez, Plaintiff's claim for a promotion in the USMCR invites the Court to impermissibly interfere with military matters.  Adkins, 68 F.3d at 1323 ("This court has consistently recognized that ... the merits of a decision committed wholly to the discretion of the military are not subject to judicial review."); Skinner, 594 F.2d at 830 ("[Plaintiff's] prayer that the Court of Federal Claims direct the Secretary to promote him to the rank of colonel plainly was a request for impermissible 'interfere[nce] with legitimate Army matters,'") (citing Orloff, 345 U.S. at 94)).  Because jurisdiction is lacking to issue an order promoting Plaintiff to Master Gunnery Sergeant (E9), the Amended Complaint should be dismissed for this additional reason.

## II.    DEFENDANTS ARE ENTITLED SUMMARY JUDGMENT IN THEIR FAVOR

Plaintiff claims he has suffered legal wrong as a result of two agency actions.  First, he asserts the Marine Corps abused its discretion, or otherwise acted contrary to law, by permitting the ERSB to consider his record for promotion.  Second, he claims the BCNR's denial of his multiple requests for correction of his record and remedial promotion consideration was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  However, because the administrative record demonstrates that neither of these actions was arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence, Defendants are entitled to judgment as a matter of law.

**A.      The ERSB's Consideration Of Plaintiff's Record Was Not Arbitrary, Capricious, An Abuse Of Discretion, Or Contrary To Law**

Plaintiff claims Marine Corps regulations prohibited the ERSB from considering his record for promotion selection.[15]  In support of his claim, Plaintiff cites several provisions of MCO P1400.32D.  Plaintiff interprets these provisions to have prohibited remedial promotion consideration by the ERSB because he was confined by civilian authorities, was awaiting adjudication of civilian criminal charges, was pending administrative separation from the Marine Corps, and was under a promotion restriction for the administrative separation.  As demonstrated below, however, none of these provisions prohibited the Marine Corps from approving his request for remedial promotion consideration or from permitting the ERSB to consider his record for promotion selection.  Instead, a review of the relevant provisions of the Marine Corps Promotion Manual in context with the administrative record demonstrates that the Marine Corps' actions were rational, based on relevant factors, and within its authority and discretion.

As an initial matter, Plaintiff incorrectly cites to MCO P1400.32D.  As explained *supra* n.5, that was not the version of the Marine Corps Promotion Manual in effect when Plaintiff was approved for remedial consideration and considered by the ERSB.  While many of the paragraphs cited by Plaintiff were taken verbatim from MCO P1400.32C, the numbering of those paragraphs differs between the two versions.  Other paragraphs remained the same in numbering but were

---

[15] To be clear, ironically, Plaintiff is complaining he was not eligible for the very remedial consideration he, himself, requested.

edited in the latter version of the manual.  Because Defendants will cite to the relevant manual in effect, MCO P1400.32C, the following table is provided to assist the court:[16]

| MCO P1400.32D (cited by Plaintiff) | MCO P1400.32C (in effect in Plaintiff's case) |
| --- | --- |
| ¶ 1100(41) | Not applicable |
| ¶ 1203(26) | ¶ 1203(23) |
| ¶ 1204(4)(t) | ¶ 1204(3)(t) |
| ¶ 1204(4)(u) | ¶ 1204(3)(u) |
| ¶ 1204(4)(z) | ¶ 1204(3)(z) |
| ¶ 1204(4)(bb) | ¶ 1204(3)(bb) |
| ¶ 1204(4)(cc) | ¶ 1204(3)(cc) |
| ¶ 1205 | Same citation; section was edited |
| ¶ 3100 | Same citation; section was edited |
| ¶ 3107 | Same citation; section was edited |
| ¶ 3602 | Same citation; section was edited |

The analysis of this issue involving the ERSB turns on a review of the MCO P1400.32C provisions that govern a Marine's eligibility for remedial consideration.  Of course, this review must be conducted in light of the prevailing case law that affords strong deference to the Marine Corps' interpretation of its own regulations. See United States v. Keller, 2011 U.S. App. LEXIS 24743, at *11-12 (3d Cir. 2011) (agency's interpretation of its own regulation must be given controlling weight provided it does not violate the Constitution or federal law and is not plainly erroneous or inconsistent with the regulation); El-Ganayni v. United States Dep't of Energy, 591

---

[16] Plaintiff only summarily cited several of these paragraphs, specifically ¶¶ 1205, 3100, 3107, and 3602. See Am. Compl. ¶ 31.  It is difficult to discern from Plaintiff's pleadings how he believes the Marine Corps violated these particular provisions.  However, Defendants will thoroughly brief the issues in this case based on all relevant provisions of MCO P1400.32C.

F.3d 176, 187 (3d Cir. 2010) (court will give substantial deference to an agency's interpretation of its own regulations and must accept the agency's interpretation as controlling unless it is plainly erroneous or inconsistent with the regulation); see also Falk v. Secretary of the Army, 870 F.2d 941, 946 (2d Cir. 1989) (courts generally defer to an agency's interpretation of its own regulation unless that interpretation is plainly erroneous).  Because enlisted Marines possess no statutory entitlement to promotion, the Commandant of the Marine Corps has established the policies and procedures to govern their promotion.  Consequently, unless the Commandant or his designated agents have interpreted those regulations in a way that is plainly erroneous or inconsistent with those regulations, the Marine Corps' interpretation of its own regulations is entitled to substantial deference.

Paragraph 3602 governs a Marine's eligibility for remedial promotion consideration. The key provision of ¶ 3602 provides that "[t]he [Commandant] (MMPR-2) will make the final determination of eligibility for remedial selection consideration."  MCO P1400.32C, at ¶ 3602(4) (pg. 94of 165).  As the designated authority to act on requests for remedial promotion consideration, MMPR-2 will forward to the ERSB "[o]nly those cases determined to fall within the spirit and intent of the [Commandant's] policies as outlined in this chapter [Chapter 3]." Id. at ¶ 3602(1) (pg. 93 of 165).  The spirit and intent of the Commandant's policies are captured in the very first sentence of the same section, Section 6 of Chapter 3, which states, "Marines are not penalized if not considered by a regularly convened selection board when eligible.  They are remedially considered..." Id. at ¶ 3600 (pg. 93 of 165); see also MCO 5420.16C, Encl (1) at ¶ 1(b)(1) (pg. 8 of 9) ("The ERSB will consider the cases of enlisted Marines both Regular and Reserve, who...did not receive consideration...when they were eligible for consideration by a

26

regularly convened Headquarters, U.S. Marine Corps [SNCO] Selection Board.").  Ultimately, the granting of remedial consideration depends on the Marine's status and eligibility *at the time of the regularly convened selection board* for which remedial consideration was requested, and the discretion lies with MMPR-2, as authorized by the Commandant, to make the final determination of who is eligible.

The administrative record demonstrates the bases on which MMPR-2 granted Plaintiff's request for remedial consideration.  On March 15, 2005, Plaintiff submitted his request to MMPR-2 seeking remedial consideration for the FY 2004 Reserve SNCO Selection Board.  AR 056.  The basis of his request was the correction to his PEBD.  AR 196.  More specifically, Plaintiff had not been considered by the FY 2004 board because, at the time that regularly scheduled board convened, his PEBD fell outside the cutoff date set for that board.  AR 097, 196.  Plaintiff's PEBD was the only criterion that had prevented his consideration by the regular FY 2004 board.  AR 097.  In his request for remedial consideration, Plaintiff advised MMPR-2 that his PEBD had subsequently been corrected to a date that, had it been correct at the time of the FY 2004 board, would have included him on the list of eligibles.  AR 196.  Upon review of Plaintiff's request and record, MMPR-2 determined that Plaintiff was eligible for promotion consideration by the FY 2004 Reserve SNCO Selection Board and should have been considered for promotion selection by that board.  AR 056, 064, 097.  This determination was based on looking at Plaintiff's eligibility for the FY 2004 board under the criteria set forth in ¶ 3200(2)(d).  AR 064.  Having corrected his PEBD, Plaintiff had fixed the only criterion that had prohibited his consideration by the FY 2004 board, thereby rendering him eligible for that board.  AR 064, 097.  Thus, because Plaintiff "did not receive consideration ... when [he was] eligible for consideration by [the]

27

regularly convened [FY 2004 Reserve] Staff Noncommissioned Officer Selection board," MMPR-2 determined the ERSB would consider Plaintiff's record.  MCO 5420.16C, at Encl (1), ¶ 1(b)(1) (pg. 8 of 9).

Plaintiff's confinement and criminal charges as a result of the March 21, 2005 shooting bore no relevance to his request for remedial consideration.  As an initial matter, contrary to Plaintiff's contentions, the administrative record indicates that MMPR-2 was actually unaware of Plaintiff's legal situation.  AR 057.  Regardless, it is entirely irrelevant whether or not MMPR-2 was aware of Plaintiff's situation.  This is because Plaintiff's situation at the time of his request for remedial consideration, or on any date after January 12, 2004 for that matter, played no part in determining whether he was eligible for remedial promotion consideration.  Paragraph 3602 of MCO P1400.32C is silent with respect to promotion restrictions or any other provisions that would limit a Marine's eligibility for remedial consideration.  Indeed, administrative separation processing, civilian confinement, and promotion restrictions are all notably absent from the list of examples for why a Marine's request for remedial consideration would typically be disapproved. See MCO P1400.32C, at ¶ 3602(5) (pg. 95 of 165); see also "Reasons for Disapproval" at https://www.manpower.usmc.mil/portal/page/portal/M_RA_HOME/MM/PR/MMPR2/MMPR2_ STAFF_NONOFFICER_PROMOTIONS/MMPR2_STAFF_NONOFFICER_PROMOT_REME DIAL/Disapproval.  As demonstrated by the administrative record, MMPR-2 did not determine there were any other considerations preventing Plaintiff's eligibility for remedial consideration.

Furthermore, even assuming that eligibility for remedial consideration was not based solely on the standard set forth in ¶ 3602, the provisions on which Plaintiff relies would still be inapplicable to his case.  First, ¶ 1100(41) did not exist in MCO P1400.32C and is, therefore,

irrelevant.  Similarly, ¶ 1205 pertains to the management, storage and destruction of Department of the Navy records which bears no relevance to the question of whether Plaintiff was eligible for remedial promotion consideration.

Paragraphs 3100 and 3107 are similarly irrelevant to the resolution of Plaintiff's claims. While ¶ 3100 provides general guidance on the administrative procedures of SNCO selection boards, nothing in that paragraph directly addresses restrictions on promotion consideration. Paragraph 3107 addresses the requirement for Marine commanders to review the records of those Marines *already selected* for promotion by a selection board.  The purpose of ¶ 3107 is to "determine whether significant [adverse] facts may have been missing from the Marine's OMPF when considered by the selection board."  In other words, ¶ 3107 serves as a quality control mechanism for reviewing the list of selected Marines.  Accordingly, because Plaintiff was not selected for promotion by the ERSB, ¶ 3107 is inapplicable to resolving his claims.

Next, ¶¶ 1204(3)(z), (bb), and (cc) all prohibit only a Marine's actual promotion, not promotion consideration or even selection.[17]  In his Amended Complaint, Plaintiff has added language to indicate these paragraphs render a Marine "not eligible for selection consideration;" however, neither MCO P1400.32C nor MCO P1400.32D includes such language in these paragraphs.  Instead, these paragraphs prohibit a Marine's actual *promotion* and nothing more.

---

[17] Again, there is a distinction between these promotion-related terms as used in MCO P1400.32C.  Although not explicitly defined in the manual, the use of these terms in the manual establishes the distinction. See, *supra*, pp. 7-8.  "Selection consideration" refers to the action of a selection board in reviewing a Marine's record for possible selection to the next higher grade. "Promotion selection" refers to a Marine's status as "selected" for promotion after a selection board has recommended the Marine for promotion.  And, "promotion" refers to the action of the relevant Marine commander with the authority to deliver the selected Marine's appointment to the next higher grade.

Once again, because Plaintiff was not selected for promotion by the ERSB, these provisions are inapplicable to his claims.

While ¶ 1204(3)(u) provides that "Marines pending administrative separation for misconduct...are *not eligible for selection consideration* or promotion," it goes on to state that this "loss of promotion eligibility begins the date the administrative separation package is signed by the [Marine's] commander for forwarding to the General Court-Martial Convening Authority ["GCMCA"] for final disposition."  MCO P1400.32C, at ¶ 1204(3)(u) (pg. 25 of 165) (emphasis added).  In Plaintiff's case, that date was July 22, 2005, the date Plaintiff's commander, the Commander of Marine Corps Mobilization Command, signed the administrative separation package for forwarding to the GCMCA, namely the Commanding General of Marine Forces Reserve.[18]  See AR 263.   Because the ERSB in Plaintiff's case convened on May 11, 2005, ¶ 1204(3)(u) had not yet been triggered by the requisite start date, and is, therefore, inapplicable to Plaintiff's claims.

---

[18] Plaintiff repeatedly refers to April 26, 2005 as the date that triggered ¶ 1204(3)(u); however, his reliance on that date is misplaced.  The document dated April 26, 2005 was the "Notification of Separation Proceedings," the document that initiated the separation process against Plaintiff and served as the notice to Plaintiff of his commander's intent to process him for discharge.  AR 263.  This document was later included as an enclosure to the letter prepared by Plaintiff's commander to forward his case to the GCMCA for approval, the letter that triggers ¶ 1204(3)(u).  See AR 262; see generally "Marine Corps Separation and Retirement Manual," Marine Corps Order P1900.16F Change 1, at Chapter 6, dated July 18, 2003 (for the Marine Corps enlisted administrative separation procedures, including the requirement to notify the Marine of the separation proceedings prior to forwarding the case to the GCMCA for approval), available at http://www.marines.mil/news/publications/Documents/MCO%20P1900.16F%20W%20CH%201-2.pdf.

Finally, Plaintiff's reliance on ¶¶ 1203(23) and 1204(3)(t) is equally misplaced.  Each of these provisions prohibits regularly convened selection boards from considering the records of Marines who are confined by civilian authorities.  As provided by ¶ 1203(23):

> Marines who are confined by civil...authorities..., or who enter such a status while the selection board is in session, are <u>not eligible</u> for promotion consideration. If the Marine is subsequently exonerated of any wrongdoing, appropriate remedial consideration may be granted."

MCO P1400.32C, at ¶ 1203(23) (pg. 23 of 165) (emphasis in original).  Likewise, ¶ 1204(3)(t) provides:

> Marines who are confined by civil...authorities will not be promoted. If a Marine who is under consideration by a SNCO selection board enters into [a confinement status] while the board is in session, the individual will be administratively deleted from the list of eligibles.  If a Marine is subsequently exonerated of any wrong doing, appropriate remedial consideration may be granted.

<u>Id.</u> at ¶ 1204(3)(t) (pg. 24 of 165).  Although this latter paragraph does not explicitly state that a Marine in civilian confinement is ineligible for promotion consideration, the act of administratively deleting the Marine from the list of eligibles achieves the same result.

Plaintiff argues that the ERSB should not have considered him for promotion based on these provisions.  However, the plain language of these paragraphs prohibits such a reading.  First, ¶ 1204(3)(t) specifically references "SNCO selection board[s]."  As defined by MCO P1400.32C, the term "Selection Boards" refers to those boards "convened annually at Headquarters, U.S. Marine Corps."  <u>Id.</u> at ¶ 1100(34) (pg. 13 of 165).  Paragraph 1204(3)(t) does not refer to ERSBs which are convened on an as-needed, non-regular basis.  Additionally, the reference to "appropriate remedial consideration" reiterates the applicability of this paragraph to regularly

convened selection boards.  The plain language of this provision reveals that its limitation on eligibility applies to regularly convened selection boards, not remedial promotion consideration.

The same holds true for ¶ 1203(23).  That provision refers to "the selection board" which, once again, refers to the regular selection boards convened on an annual basis.  Id. at ¶ 1203(23) (pg. 23 of 165).  Paragraph 1203(23) does not refer to ERSBs, although the reference to "appropriate remedial consideration" again reiterates the applicability of this paragraph to the regularly convened selection boards.  Thus, like ¶ 1204(3)(t), the plain language of ¶ 1203(23) reveals that its limitation on eligibility applies to regularly convened selection boards, not remedial promotion consideration.

Ultimately, the easiest way to conceptualize Defendants' position is to recognize that the ERSB is not a separate and distinct selection board.  Instead, the ERSB serves only as the mechanism to step back in time and provide a Marine with the appropriate promotion consideration he or she should have received at the relevant regularly convened board under the guidance, policies, and procedures that were applicable to that board.  It sits as an extension of the original board to consider those records the original board should have considered but, for any reason other than ineligibility, did not.  In Plaintiff's case, the erroneous PEBD was the only reason he was not considered by the FY 2004 Reserve SNCO Selection Board.  AR 097, 196.  But for the erroneous PEBD, Plaintiff would have been eligible and would have been considered by that board.  Had Plaintiff been incarcerated during the FY 2004 board, he would have been ineligible for consideration by that board.  And, because he would have been ineligible for that board, he would have been ineligible for remedial consideration since eligibility for remedial consideration depends entirely on eligibility for the relevant regularly convened board.  However,

given that Plaintiff was not incarcerated before or during the FY 2004 board, his eligibility for remedial consideration for that board was not affected by his later incarceration. In fact, to deny Plaintiff's request for remedial consideration based on events that occurred more than a year after that board would have been error. Indeed, a decision by the Marine Corps to deny Plaintiff's request for remedial consideration based on his post-January 12, 2004 circumstances would have served to punish him, which of course runs counter to the spirit and intent of the Commandant's policies. See MCO P1400.32C, at ¶ 3600 (pg. 93 of 165).

Even assuming *arguendo* that the Marine Corps erroneously permitted the ERSB to consider Plaintiff for promotion when it did, the administrative record is devoid of any evidence that the Plaintiff was prejudiced by that error. The administrative record makes clear that the consideration of Plaintiff's record was conducted fairly and impartially in accordance with MCO P1400.32C. AR 056, 097. Specifically, Plaintiff's record was redacted to appear exactly as it would have appeared on January 12, 2004 during the FY 2004 Reserve SNCO Selection Board. Id. In other words, assuming that Plaintiff "slipped through the cracks" and was considered for promotion by the ERSB at the wrong time, he suffered no harm since his record was still considered fairly and impartially. In fact, Plaintiff has already benefitted from the only possible remedy to which he could be entitled - remedial promotion consideration. Should the Court order Defendants to grant Plaintiff remedial promotion consideration, he will merely receive the exact consideration he already received on May 11, 2005.

In summary, the Commandant of the Marine Corps has authorized MMPR-2 to determine who is eligible for remedial promotion consideration. The administrative record demonstrates that the Marine Corps' decision to approve Plaintiff's request for remedial consideration was

33

rational, based on the relevant factors, and within its own authority and discretion.  Nothing in the record indicates the Marine Corps violated its regulations.  Furthermore, even assuming the Marine Corps acted erroneously, there is no evidence that Plaintiff was prejudiced by such actions.  If anything, any error actually resulted in Plaintiff receiving the very relief to which he would be entitled.  Therefore, Defendants are entitled to summary judgment with respect to Plaintiff's claims pertaining to the ERSB.

**B.**      **The BCNR's Decision Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Law**

Plaintiff claims the BCNR wrongfully denied his petitions seeking remedial promotion consideration, as well as the removal of the promotion restriction from his record.  In order to prevail at the BCNR, Plaintiff was required to demonstrate material error or injustice that compelled correction to his record.  However, after a careful review of the administrative record, the BCNR found the evidence insufficient to establish material error or injustice in the Marine Corps' decision to grant Plaintiff's request for remedial consideration.  Accordingly, the BCNR declined to grant Plaintiff remedial consideration or to make any other corrections to his record.  For the following reasons and contrary to Plaintiff's assertion, the BCNR properly executed its duties.

The BCNR's decision to deny Plaintiff the remedial consideration he requested was well founded and supported by the administrative record.  While Plaintiff's Amended Complaint fails to specifically articulate how the BCNR acted wrongfully, the standard for reviewing this issue is clear.  When reviewing the decision of a military corrections board, the court looks to whether the

34

board followed the proper procedure, applied facts rationally connected to its decision, and

provided a reasoned basis for its decision.  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

First, Plaintiff has not alleged any error by the BCNR in following its procedures, and the

administrative record reveals none.  Second, as its decision indicates, the BCNR ruled only after

"careful and conscientious consideration of the entire record," having reviewed Plaintiff's

"application, together with all material submitted in support thereof, [Plaintiff's] naval record and

applicable statutes, regulations, and policies, and the Board's file from [Plaintiff's] prior case

[Docket Number 2503-08]."  AR 002-003.  Additionally, the BCNR "considered the advisory

opinions from Headquarters Marine Corps dated 14 October 2010 and 29 June 2011," as well as

"[Plaintiff's] rebuttal letters dated 29 November and 1 December 2010 and 4 August 2011," with

all of their enclosures.  AR 002.  Finally, having thus examined the relevant facts rationally

connected to its decision, the BCNR provided a reasoned basis for its decision to deny favorable

action by noting that it "found that the evidence submitted was insufficient to establish the

existence of probable material error or injustice."  AR 003.

As the BCNR further explained, it substantially concurred with the comments provided in

the Marine Corps' advisory opinions.  AR 003.  Both of those opinions, provided by MMPR-2 on

behalf of the Marine Corps, stated the Marine Corps' position that Plaintiff's request was properly

approved based on his eligibility for the FY 2004 Reserve SNCO Selection Board.  AR 056, 097.

In this regard, the BCNR specifically found that Plaintiff's eligibility for remedial consideration

was not prohibited by his civilian confinement because he was not confined at the time of the

regularly convened selection board.  AR 003.  This determination was in keeping with the Marine

Corps' decision that Plaintiff was eligible for remedial consideration which, as already explained

above, was rational, based on the relevant factors, and within the agency's authority and discretion.

In addition, both advisory opinions also explained that Plaintiff's record was properly redacted to appear as it would have at the FY 2004 board, thereby prohibiting the ERSB from being influenced by the promotion restriction or Plaintiff's legal situation stemming from the March 21, 2005 shooting. AR 056, 097. Having determined that Plaintiff's request for remedial consideration was properly approved and that Plaintiff's record was properly redacted, the BCNR concluded there was no material error or injustice to correct by granting remedial consideration again. AR 003. Likewise, the BCNR concluded that since Plaintiff was not selected for promotion by the regularly convened board or the ERSB for that board, both of which were free of any error or injustice, there was no reason to direct that Plaintiff be promoted to Master Gunnery Sergeant (E-9). Id.

Ultimately, Plaintiff has failed to meet his burden for overcoming the presumption of regularity applied to the BCNR by providing cogent, clear, convincing evidence that action is warranted to correct material error or injustice. The only way to construe Plaintiff's conclusory allegation that the BCNR violated MCO P1400.32 is to assume that, in Plaintiff's opinion, the BCNR wrongfully failed to grant him a new ERSB after the May 11, 2005 ERSB erroneously considered his record. In other words, Plaintiff appears to be arguing that since the Marine Corps wrongfully permitted the ERSB to review his record on May 11, 2005, the BCNR erred for the same reasons when it refused to correct that error and grant him a new ERSB. As explained above, however, the BCNR's interpretation of the Marine Corps Promotion Manual was in keeping with the nature and purpose of remedial selection boards which are designed to consider a

36

Marine's record as of the date of the relevant regularly convened selection board.  <u>See</u> MCO P1400.32C, at ¶ 3601(2) (pg. 93 of 165).  Because the evidence provided by Plaintiff failed to establish any error in the Marine Corps' decision to approve Plaintiff's request for remedial consideration, the BCNR found no reason to grant the same remedial consideration once again. And because Plaintiff failed to provide evidence that the ERSB was otherwise erroneously conducted, the BCNR found no reason to second guess that board's decision not to select Plaintiff for promotion.

In the end, the BCNR followed the proper procedure, applied facts rationally connected to its decision, and provided a reasoned basis for its decision.  Therefore, Defendants are entitled to summary judgment with respect to Plaintiff's claims pertaining to the BCNR.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss

Plaintiff's Amended Complaint for lack of jurisdiction, with prejudice, or, in the alternative, grant

Defendants summary judgment in their favor.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

/s/ Jennifer R. Andrade
JENNIFER R. ANDRADE
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7354
*Attorney for Defendant*s

Of Counsel:
LCDR Michael J. Marinello, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
1322 Patterson Avenue, SE, STE 3000
Washington Navy Yard, DC 20374

38

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing *Brief in Support*

*of Motion to Dismiss, or in the Alternative, for Summary Judgment* was served via electronic

filing and/or first-class mail upon the following:

James S. Frazier, Jr.
Post Office Box 224
McKeesport, PA 15134
*Pro se Plaintiff*


Dated:   February 17, 2012                    <u>s/ Jennifer R. Andrade</u>
                                              JENNIFER R. ANDRADE
                                              Assistant U. S. Attorney