IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JAMES S. FRAZIER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-500 |
| | ) | |
| vs. | ) | Chief Magistrate Judge Lisa P. Lenihan |
| | ) | ECF No. 26 |
| SECRETARY RAY MABUS, U.S. | ) | |
| DEPT. OF THE NAVY; EXECUTIVE | ) | |
| DIRECTOR W. DEAN PFEIFFER, BOARD | ) | |
| FOR CORRECTION OF NAVAL RECORDS | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDUM OPINION ON MOTION OF DEFENDANTS
TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT**


I.  **SUMMATION**

    The Motion to Dismiss or In the Alternative for Summary Judgment filed by Defendants

Secretary Ray Mabus, U.S. Dept. of the Navy (hereafter the "Navy"), and Executive Director W.

Dean Pfeiffer, Board for Correction of Naval Records (hereafter the "BCNR") (also collectively

"Defendants"), in this *pro se* plaintiff's action for reconsideration of his remedial promotion will

be denied in part and granted in part.  The case is appropriate for review on the administrative

record.  The Court finds that it has (a) original jurisdiction, under 28 U.S.C. Section 1331, over

Plaintiff's equitable claims arising from final federal agency action under federal regulations,

and regarding the actions of Defendants under the Administrative Procedure Act (the "APA"), 5

U.S.C. Section 701 *et seq.*; and (b) concurrent jurisdiction with the Federal Court of Claims,

under 28 U.S.C. § 1346 (the "Little Tucker Act"), over Plaintiff's claims for potential money

damages arising from remedial promotion and limited to an amount under $10,000, as amended.[1]

The Court further finds that the case states cognizable and plausible claims which are sufficiently

supported to preclude the alternative requests of Defendants' Motion.  Said Motion will also be

granted in part as, to the extent Plaintiff seeks remedial promotion directly from this Court, it is

well established that "a request for retroactive promotion falls squarely within the realm of

nonjusticiable military personnel decisions."  Kreis v. Sec'y of the Air Force, 866 F.2d 1508,

1511 (D.C. Cir. 1989).

 The Court further concludes that the Navy and United States Marine Corps (hereafter the

"Marine Corps") violated binding agency regulations in considering Plaintiff's promotion when

he was incarcerated on civilian criminal charges (of which he was subsequently acquitted) and

the BCNR's denial of Plaintiff's challenge to that invalid proceeding was thus outside the

agency's authority or discretion and contrary to law.[2]  In light of the (a) nonjusticiability of his

remedial promotion, and (b) subjective/discretionary considerations applicable under the Marine

Corps rules and regulations governing Plaintiff's qualification for promotion, the case must once

again return to the Defendants for further proceedings – to be undertaken in accordance with

relevant law and this Opinion.  The Court expects that, given the now eight (8) year history of

---

[1] See Plaintiff's Motion for Second Amendment (waiving "any monetary remedy in excess of
$10,000"); ECF Docket No. 32 (Court Order).

[2] The Court hereafter refers to the Decision of the BCNR, although "the final agency action
under review is the decision of a designated representative of the Secretary of the Navy
approving the recommendation of the BCNR."  See Pettiford v. Sec'y of the Navy, 774
F.Supp.2d 173, 174, n. 1 (D.D.C. 2011).

the matter, Defendants' decision(s) will be rendered with all due promptness.

## II. <u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff, in his Complaint filed *pro se* in April, 2010, and as amended in December, 2011, includes allegations that the Marine Corps' selection board decision denying his remedial promotion from Master Sergeant to Master Gunnery Sergeant was in violation of Defendants' regulatory policies/procedures, including Promotion Policy paragraph 1203 and Promotion Restriction paragraph 1204,[3] and the BCNR's denial of his related petition(s) for correction/redress was therefore contrary to law.   He seeks retroactive promotion to Master Gunnery Sergeant, with related adjustment of his retirement rank, and revision of his military record. <u>See</u> Amended Complaint at 8, para. 34.

Plaintiff served from January 1998 through September 2005 as a Master Sergeant (at an employment compensation Grade of E-8) in the Individual Ready Reserve division  (the "IRR", a division for those officers with prior service) of the United States Marine Corps Reserve Component (the "MCR").[4]  Due to a record-keeping error in the Marine Corps Total Force System ("MCTFS"), a personnel computer database, Plaintiff's pay entry base date (his "PEBD") (which was "time of service" determinative) was listed as November 1977 instead of

---

[3] <u>See</u> discussion, *infra*.

[4] The MCR is established under the Commandant of the Marine Corps (the "Commandant").  <u>See</u> Defendants' Brief in Support of Motion to Dismiss, or In the Alternative for Summary Judgment (hereafter "Defendants' Brief") at 1 & n. 1.  The MCR force has three components: (1) Ready Reserve (consisting of two subsets – Selected Marine Corps Reserve or "SMCR" and Individual Ready Reserve or "IRR" – the IRR is comprised of those who have previously served in active duty or SMCR and have not completed their service obligations or have completed those obligations and remained on a voluntary basis); (2) Standby Reserve; and (3) Retired Reserve (those in retired status).  <u>See</u> id. at 2 & n. 2.

1976 and, as a result, he was not included with other Marine Corps candidates for consideration for promotion to Master Gunnery Sergeant (at a Grade of E-9) – a promotion for which he was otherwise eligible for consideration – when the Marine Corps' regularly-scheduled selection board for Staff Non-Commissioned Officers (the "SNCO" selection board) convened in January, 2004[5] and made its annual review and promotion recommendations for Fiscal Year 2004.[6]

The error was discovered, and fifteen (15) months later - on March 15, 2005 – Plaintiff requested and his Commander submitted – as was the Commander's prerogative regarding a Marine he deemed qualified for promotion - that Plaintiff be given remedial consideration under regulatory policies and procedures providing for review by an Enlisted Remedial Selection Board (the "ERSB").[7] This request was approved by the Commandant on March 18, 2005. Within a week of these events, Plaintiff was arrested on charges of attempted second degree murder arising from a domestic shooting incident involving a family member who was also a member of the Marine Corps – charges of which he was ultimately found not guilty. Plaintiff was acquitted following a civilian criminal trial concluding in late March, 2007, at which time the jury found he had acted in self-defense.[8] As a result of these pending criminal charges, however, Plaintiff was incarcerated from March 21, 2005 to July 26, 2005, and again from

---

[5] In the Marine Corps, "staff non-commissioned officers" are senior enlisted personnel in the higher pay grades.

[6] Enlisted Marine grades ranged from E-1 to E-9. See id. at 4, n. 6. See also id. at 10 (discussing the PEBD error and referring to the "2004 Reserve SNCO Selection Board").

[7] See Defendants' Appendix of Exhibits to Defendants' Motion (hereafter "Appendix", "Record" or "R.") at 196-215 (Plaintiff's March 10, 2005 request packet); id. at 220 (Sgt. Major Dixon's letter of recommendation for ERSB promotional consideration). Cf. Promotion Manual at 2604 Processing of Remedial Promotion Requests at para. 4.

[8] See R. at 216.

August 23, 2006 to March 26, 2007.  <u>See</u> R. at 250.

Consequent to his civilian arrest, Plaintiff was processed for "administrative separation (discharge)" from the Navy, and a promotion restriction was entered to his employment record in the MCTFS on April 8, 2005.  <u>See</u> Defendants' Brief at 10; R. at 179 (Command Unit Diary Entry noting Promotion Restriction and Administrative Separation Pending).  On April 26, 2005, Plaintiff's Commander of the Marine Corps Mobilization Command "initiated the administrative separation proceedings against Plaintiff" for his Other Than Honorable ("OTH") Discharge "by signing a 'Notification of Separation Proceedings'",[9] and directing correspondence by Certified Mail to Plaintiff (not at his place of incarceration) both informing Plaintiff that the Commander intended to recommend his discharge for Misconduct and advising Plaintiff of an extensive list of rights (including submission of written statements, consultation with Naval counsel, request for a hearing, copies of all documents, etc.).  <u>See</u> R. at 23 "Notification of Separation Proceedings" to Plaintiff from Mobilization Commander S.E. Brown).

On May 4, 2005, Plaintiff's PEBD was corrected and he was scheduled for consideration by the ERSB.  <u>See</u> R. at 164; Defendants' Brief at 10.  On May 11, 2005, during Plaintiff's initial period of incarceration and subsequent to the Commander's above correspondence, the ERSB nonetheless proceeded with its scheduled consideration of Plaintiff's remedial promotion.  He was not recommended.  Defendants assert, and there is no contrary documentary evidence, that (1) the record provided to the ERSB was properly redacted to January 12, 2004 (the date the regular selection board would have considered Plantiff's promotion but for the erroneous PEBD in his personnel file), and (2) the remedial selection board was not privy to any information

_____

[9] <u>See</u> Defendants' Brief at 10; Amended Complaint at 3.

regarding Plaintiff's civilian arrest or incarceration, or his ongoing military administrative separation proceedings.  See Defendants' Brief at 10-11; see also infra at n. 15 (discussing limitations of Administrative Record).

The Commandant approved the decision of the ERSB on May 16 and Plaintiff's pass over for promotion was noted to his record on May 24th. [10] On July 22, 2005 his administrative separation package was forwarded by his Commander of the Mobilization Command to the Court Martial Convening Authority, Commanding General of the Marine Forces Reserve, recommending Other than Honorable ("OTH") Discharge for Misconduct (Commission of a Serious Offense) related to the civilian criminal indictment.  See Defendants' Brief at 11; R. at 145; Amended Complaint at 4.  On September 2, 2005, Plaintiff received an OTH discharge, with a re-enlistment code of RE-4, rendering him ineligible for re-enlistment, and a demotion from Master Sergeant (a Grade of G-8) to Lance Corporal (a Grade of G-3).  See Defendants' Brief at 11; R. at 138.   As noted above, Plaintiff's civilian trial was completed approximately eighteen (18) months later, in March, 2007, and the jury concluded that he had acted in self-defense.  Id.  He was therefore acquitted.

Three months thereafter, in June, 2007, Plaintiff petitioned the BCNR[11] to have his OTH

---

[10] See Defendants' Brief at 11.  Defendants note that the "Marine Corps attempted" to notify Plaintiff of its ongoing employment actions, including, e.g., his scheduled consideration by the ERSB and its unfavorable decision.  Correspondence was not, however, received by Plaintiff during the period of his incarceration.  See R. at 235.  See also Amended Complaint at 3-4 (noting proceedings while incarcerated and without his knowledge); id. at 5 (asserting that Plaintiff first learned of his change in status on March 30, 2007).

[11] The BCNR is established under the statutory authority of the Secretary of the Navy.  It is a civilian Board which reviews the evidence submitted, and "may correct any military record when [the Secretary of the Navy acting through the BCNR] considers it necessary to correct an error or remove an injustice." 10 U.S.C. Section 1552(a).  In denying a petitioner's request, it is to compose a brief statement including "the reasons for the determination."  Defendants' Brief at

discharge and RE-4 re-enlistment code rescinded , his Master Sergeant E-8 rank restored, and his record expunged with respect to the civilian charges.  See Defendants' Brief at 11.  The BCNR issued its recommendation on this petition in December, 2007 – restoring Plaintiff's rank to Master Sergeant and transferring him to the Retired Reserve effective September 2, 2005 (the date he had been discharged).  See Defendants' Brief at 11-12; R. at 234-236 (correspondence from Acting Recorder of the BCNR to Secretary of the Navy recommending corrective action, noting that (1) owing to his incarceration, Plaintiff did not receive notice of his administrative processing or his option to request retirement rather than administrative separation, (2) Plaintiff "served for many years in an excellent manner", and (3) "was ultimately found not guilty of the offenses which resulted in his discharge").

In March, 2008, Plaintiff filed a second petition, requesting that the promotion restriction and passed-over promotion entries be expunged and that he receive remedial consideration for promotion to Master Gunnery Sergeant.[12]  See Amended Complaint at 6. This petition was denied without a hearing by the BCNR nine (9) months later, on January 16, 2009.  See R. at 140 (correspondence stating that BCNR "substantially concurred" with the June 25, 2008 Advisory Opinion[13] and found "the promotion restriction by reason of your administrative separation proceedings did not affect your remedial consideration for promotion").  The BCNR also denied Plaintiff's request for reconsideration in December, 2009.

8-9 (citing 32 C.F.R. Section 723, which enacts "procedures for correction of naval and marine records by the Secretary of the Navy acting through the Board for Correction of Naval Records (BCNR or the Board) to remedy error or injustice").

[12]  See Defendants' Brief at 12; Amended Complaint at 6.  Plaintiff's retirement pay is tied to his designated pay grade.  See Defendants' Brief at 8.

[13] See infra at 16.

As noted, Plaintiff instituted this action four months later, in April, 2010, and in August of that year, it was dismissed upon the parties' Joint Stipulation of Dismissal and agreement that the BCNR would reconsider Plaintiff's petition. A year later, on August 18, 2011, the BCNR again denied Plaintiff's petition (hereafter the "August 2011 BCNR Decision"), concluding that there was no "probable material error or injustice" where Plaintiff was eligible to be considered for promotion by the ERSB because he *"was not in confinement when the regular promotion board [i.e., the 2004 SNCO selection board] convened."* See R. at Appendix Vol. X, pp. 1-2 (emphasis added). The Decision by the BCNR indicates that it "considered Advisory Opinions from the Headquarters Marine Corps" dated October 14, 2010 and June 29, 2011.[14] Litigation before this Court was accordingly reopened and Plaintiff's Amended Complaint filed in December, 2011.

---

[14] The BCNR Decision does not include consideration of another related Advisory Opinion, dated April 13, 2011. See R. at 2-3, 61-62 and discussion *infra*. Cf. Defendants' Brief at 35 (indicating that the BCNR had thus "examined the relevant facts rationally connected to its decision" and that it "substantially concurred with the comments provided in the Marine Corps' advisory opinions"); Appendix Vol. X at 2.

   In addition, although the Decision indicates that it considered Plaintiff's "rebuttal letters" of November 29, 2010, December 1, 2010 and August 4, 2011, the BCNR's 1-1/2 page Decision (which provides no citation to, *e.g.*, Promotion Manual provisions) does not address non-frivolous arguments raised by Plaintiff - with citation to specific agency authority - in those letters. Compare BCNR Decision with, *e.g.*, August 4, 2011 Final Corrected Version of Plaintiff's Response to Advisory Opinion (citing pending adjudication of civilian charges, pending administrative separation, and incarceration "by civilian authorities before, during and after the remedial selection board of May 11, 2005" and referencing Promotion Manual provisions, including 1203 and 1204). R. at 6-8. Cf. Pettiford v. Sec'y of Navy, 774 F.Supp.2d 173 (D.D.C. 2011) (remanding to BCNR where failure to address a non-frivolous argument that could affect the BCNR's ultimate disposition of his claim for remedial promotion rendered BCNR's decision arbitrary); Pettiford v. Sec'y of Navy, 2012 WL 1548271, *3 (D.D.C. May 3, 2012) (noting "[i]n stark contrast", subsequent "seventeen single-spaced page" decision that identified regulations and procedures and addressed "each argument plaintiff made to support his application for relief and explain[ed] the BCNR's basis for rejecting those arguments").

Plaintiff's Amended Complaint brings claims under the APA, 5 U.S.C. Section 706, and other statutory provisions. The parties disagree on critical matters of interpretation of the applicable regulatory policies and procedures[15] and, as discussed *infra*, the fundamental question before this Court is whether, under the APA, the Defendants' interpretation is plainly erroneous or inconsistent with its regulations, and thus "contrary to law." See, *e.g.*, Pettiford v. Sec'y of the Navy, 2012 WL 1548271, *5 (D.D.C. May 3, 2012) (applying standard of review to Marine Corps' promotional regulations, rules and policies for "selection boards"); discussion *infra* at 19.

### III. RELEVANT MARINE CORPS PROMOTIONAL PROCEDURES;

---

[15] More particularly, the parties disagree as to whether Plaintiff was eligible for consideration by the ERSB in March, 2005 despite (a) his promotion restriction by reason of administrative separation proceedings and/or (b) his civilian incarceration from March, 2005 to July, 2005. Plaintiff also suggests that his remedial consideration by the ERSB was invalid because information provided to that selection board was not properly redacted or was otherwise improperly prejudicial. See Amended Complaint at 8, para. 32(citing Promotion Manual Section 3601.2 and asserting that redaction of records from ERSB consideration would not include promotion restrictions, administrative separations for misconduct, OTH discharge, reduction in rank or civilian confinement); Plaintiff's Response to the Defendants' Brief at 1; id. at 11 ("Promotion restrictions are entered into the [MCTFS] which the ERSB members have access to and cannot be redacted.").

As (1) the Administrative Record presently before this Court does not contain the materials presented to/reviewed by the ERSB, and may be insufficient to address these contentions, and (2) the Court concludes the ERSB proceeding was invalid on other grounds, the Court need not and will not decide this alternative claim. Cf. Pettiford v. Sec'y of the Navy, 774 F.Supp.2d 173, 179 (D.D.C. 2011) ("The Record of Proceedings contains no substantive information about the basis for the Remedial Selection Board's decision.") ; Defendants' Reply at 8 ("[I]t is simply impossible to know exactly why Plaintiff was not selected because the ERSB was sworn to keep the proceedings confidential."); id. (noting that Marine Corps' Advisory Opinions "articulate that, in accordance with the instruction governing the ERSB, the Marine Corps redacted Plaintiff's record"); Defendants' Reply at 9 ("[T]he administrative record is devoid of any evidence, and Plaintiff has offered none, that the Marine Corps failed to comply with its duty to redact."). The Court notes only that its now well-researched understanding of Marine Corps policies and procedures suggests Plaintiff would be unlikely to be in a position to proffer any such evidence.

## STATUTORY PROVISIONS AND REGULATIONS

The regulations for administration of the Marine Corps Reserve Components are extensive, and the comprehensive Appendix and Exhibits provided by Defendants have been reviewed in their entirety by this Court.

### A.  Defendants' Summation

As Defendants recount, "[b]y statute, each military department is required to prescribe regulations for the administration of reserve components" and for the time period relevant to this action, administration of the MCR was prescribed in the MCR Administration Management Manual ("Order P1001R.1J") of March 10, 1999.[16]  Each military department is also required "by statute to establish standards and qualifications for retention and promotion in reserve components" and the "Marine Corps Manual" is the basic and binding "regulatory publication for the Department of the Navy", as "issued by the Commandant of the Marine Corps and approved by the Secretary of the Navy."  Defendants' Brief at 2-3; Appendix Ex. B (relevant portions of Marine Corps Manual).

Regulatory promotional policies and procedures are, in turn, "prescribed by the Commandant of the Marine Corps [and] contained in the Marine Corps Promotion Manual and other directives."  Id. at 3; Appendix Ex. B at para. 0002.  The Marine Corps Promotion Manual in effect for the time relevant to this action was dated October 30, 2000 (Order or MCO "P1400.32C"; hereafter also the "Promotion Manual") and was "the authority for all enlisted promotions in the Marine Corps."  Id. & n. 5 (noting that 2000 Promotion Manual was superseded by MCO P1400.32D in May, 2006); id. at 24-25; see also Defendants' Ex. C.  It

---

[16] See Defendants' Brief at 2 & n. 2 (noting also that the Order was superseded by P1001R.1K in March, 2009).

"publishes regulations and policies concerning enlisted promotions"[17] and provides procedures

for personnel within each grade and "occupational field" or "military occupational specialty"

("MOS") to compete (by, *e.g.* comparison of eligible personnel records) for promotion.[18]

The promotion of Staff Non-Commissioned Officers ("SNCOs") such as Plaintiff was

"based on recommendations made by selection boards . . . convened [by the Commandant] each

calendar year" and on the allowable number of Marines that could be recommended for each

occupational field/MOS (the "allocations" or "allotments").  Defendants' Brief at 4.  The annual

selection boards determined the "best and fully qualified" candidates utilizing their Official

Military Personnel Files ("OMPFs") and based on "demonstrated performance [], leadership,

professional and technical knowledge, experience, growth potential, motivation, military

proficiency, physical fitness, personal appearance, conduct, moral character and maturity."  Id. at

5 (quoting Promotion Manual at para. 3100(1)).  Recommendations were made to the

Commandant who retained authority over the final determinations.  Id.

"Marine SNCOs who were eligible for promotion consideration but were not properly

considered by the relevant regularly scheduled section board", for reasons such as "incorrect

eligibility criteria" could be granted discretionary remedial consideration on a case-by-case basis.

Such cases were referred "to the Enlisted Remedial Selection Board ('ERSB') which, unlike the

regularly convened selection boards, convened as necessary on a non-regular basis."  Id. at 6

(citing Promotion Manual para. 3601-3602).  Because ERSBs "were not constrained by the

---

[17]  Ex. C at 1, para. 1, Purpose.

[18]  Chapter 1 of the Promotion Manual covers general policies, including Section 1203 Promotion
Policies and 1204 Promotion Restriction; while Chapter 3 sets forth the promotional policies and
procedures for SNCO promotions.  See Ex. C at 6, Contents.

allocation restrictions applicable to the regularly scheduled boards", they "were tasked with selecting 'fully qualified' [rather than 'best and fully qualified'] Marines." Id. at 7 (citing Promotion Manual and additional Promotional Directive issued July 21, 2000 "concerning the operation and function of the ERSB" – MCO 5420.16C – Appendix Ex. D).  In addition, "the record of any Marine referred to the ERSB was redacted to prevent the board from considering any material that post-dated the regularly scheduled selection board for which the remedial promotional consideration was granted."  Id.

Finally, Defendants note, in their summation of the applicable policies, that the entry of a "promotion restriction" against a Marine by his Commander "prohibited the commander of a Marine SNCO from effecting a promotion [but] did not prohibit the SNCO from being considered for promotion selection."  Id. at 7-8 (citing Policy Manual at para. 1204(3)(u) (as example of distinction between "consideration and actual promotion") and 1203(18)(d)); id. at 29 (citing 1204(3)(z), (bb) and (cc) as prohibiting only "a Marine's actual promotion, not promotion consideration or even selection").[19]  According to Defendants, a "promotion restriction category existed for Marines confined by civil authorities" and those "pending

_____

[19] Defendants assert a distinction as amongst the promotion-related terms "consideration" (review by "a selection board"), "selection" (recommendation for promotion by "a selection board"), and "promotion" (delivery of the appointment by "the relevant Marine commander").  Defendants' Brief at 29 n. 17 (acknowledging that no such definitions are provided in the Promotion Manual, but asserting that "the use of these terms in the manual establishes the distinction").  Compare, e.g., Paragraph 1204(3)(t), providing that "Marines who are confined by civil . . . authorities will not be promoted" and then directing that, if under consideration at the time, they be "deleted from the list of eligible" (language that would appear, on its face, to implement a bar on "promotion" in a manner encompassing "consideration" for promotion) or 1204(3)(u), providing that "Marines pending administrative separate for misconduct . . . are not eligible for selection consideration or promotion",  and then referring to this "loss of promotion eligibility".   Given the governing language of paragraph 1203(23) regarding ineligibility for *promotion consideration*" while confined by civilian authorities, as discussed *infra*, the reasonable validity of these distinctions is moot.

administrative separation from the Marine Corps." Id.[20]

**B.  Specific Marine Corps Promotional Policies**

The Court has found Defendants' summations of applicable Marine Corps promotional policies and procedures to be further elucidated by particular provisions of the regulatory materials appendixed:

**1.  Promotion Manual Provisions MCO P1400.32C (Appendix Ex. C)**

**a.  Promotion Policies**

Para. 1203.1 – <u>General</u> – "This Manual is the authority for all enlisted promotions in the Marine Corps. *Promotions not effected in accordance with this Manual or by implementing directives not referenced in this Manual will be considered erroneous and immediately revoked.* There are no waivers to this policy." (emphasis added)

Para. 1203.23 – "*Marines who are confined by civil . . . authorities . . . , or who enter such status while the selection board is in session, are <u>not eligible</u> for promotion consideration. If the Marine is subsequently exonerated of any wrongdoing, appropriate remedial consideration may be granted .*" (italics added; underlining in original)

**b.   Promotion Restrictions**

Para. 1204(3) – "Marines will not be promoted while in any of the following categories:"

\* \* \* \* \* \*

(t) – "Marines who are confined by civil . . . authorities will not be promoted.  If a Marine who is under consideration by a SNCO selection board enters into [a confinement status] while the board is in session, the individual will be administratively deleted from the list of eligibles. If the Marine is subsequently exonerated of any wrong doing, appropriate remedial consideration

---

[20] <u>Compare</u> discussion of plain language of Promotion Manual provisions, including 1203, *infra*.

may be granted."

(u)  "Marines pending administrative separation . . . are not eligible for selection consideration or promotion.  The loss of promotion eligibility begins the date the administrative separation package is signed by the commander for forwarding to the General Court-Martial Convening Authority for final disposition."

**c.**   **SNCO Promotions – Remedial Consideration for Promotion**

Para. 3601 – "*The CMC stipulates that the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB in their deliberations*" excepting that "remedial boards are tasked with selecting 'fully qualified' [versus "best and fully qualified"] Marines, as allocation restrictions are not applicable." (emphasis added)  In addition, "The ERSB is guided by the ERSB precept and the precepts used during the regularly convened selection board for which remedial consideration has been granted. Additionally, the ERSB is prohibited from considering material . . . regarding events occurring after the regularly convened selection board for which remedial promotion consideration has been granted."

Para. 3602 - Eligibility – "Remedial consideration for promotion is granted on a case-by-case basis . . . [and] a request for remedial consideration to the ERSB will be made based upon the merits of the individual request . . . .   Below are examples which may warrant remedial consideration:

\* \* \* \* \*

(c) The Marine is denied promotion opportunity as a result of action required by paragraph 1203 and is subsequently acquitted or absolved of all responsibility."

## 2. **ERSB Promotional Directive (Appendix Ex. D)**

July 21, 2000 (MCO 5420.16C) – <u>Procedures for Enlisted Remedial Selection Board</u> –
"The ERSB is an advisory board that provides advice to the Commandant of the Marine Corps
on [SNCO] remedial promotion cases."

<u>Exclusivity</u> -  "[T]he guidance and procedures contained herein or specifically referenced
. . . are considered the sole guidance and procedures governing the ERSB."

<u>Specific Guidance Concerning Remedial Promotions</u> - "When considering whether or not
to commend selection of Marines whose records have been submitted to the board, the ERSB
will be guided by the precept, procedural rules, policies, and regulations in effect when the
respective regularly scheduled promotion selection board was in session . . . . The ERSB is not
constrained by the selection allocations in effect at the time of the regularly scheduled board . . . .
The primary consideration of the ERSB will be a comparison of the record of the Marine . . . to
the records of the Marines selected by the regularly scheduled board . . . ."


## IV.  **RELEVANT INTERNAL ADVISORY OPINIONS**

This Court's comprehensive and repeated review of the entire Administrative Record in
this case indicates that multiple Advisory Opinions were solicited from and issued by the
Department of the Navy, Headquarters United States Marine Corps on questions of policy
interpretations and legal issues regarding Plaintiff's post-acquittal changes in discharge status
and restoration of rank, and his reconsideration for remedial promotion.  The relevant Opinions
were:

**August 10, 2007** – As a matter of equity, given absence of notice to Plaintiff of his
administrative processing or separation, he should be reinstated to his prior pay grade and retired

as of the date he was otherwise administratively separated.  <u>See</u> R. at 244-246; <u>see also</u> *supra* at 6.

**<u>June 25, 2008</u>** – "[Plaintiff] asserts that he would have been considered the best and fully qualified for promotion in the occupational field (OccFld) 3500 simply because he was the only Marine being considered.  This is not the case.  Each selection board [here the ERSB] has the discretion to determine if promoting to allocation is in the best interest of the Marine Corps. . . . [If not], that MOS will simply have a shortfall."  R. at 139.

**<u>October 14, 2010</u>** – "The confidentiality of the selection board process precludes knowing the exact reasons why a Marine is not selected for promotion.  It can only be inferred that . . . [Plaintiff's] record was not competitive with the records of the Marines selected for promotion.  He served in a highly competitive occupational field and simply did not get enough votes."[21]  In addition, Plaintiff  "was properly considered for promotion to master gunnery sergeant by the FY 2004 Reserve SNCO Selection Board (IRR)" where he "received a fair and impartial brief for remedial promotion consideration" on May 11, 2005 and "his record was redacted to reflect its status as of" January 12, 2004 "the day the FY 2004 Reserve SNCO Selection Board convened."

---

[21] The Court observes that the author of this Opinion may have been under some degree of misunderstanding as to the circumstances of Plaintiff's proceeding, *i.e.*, that it was not before the FY 2004 SNCO Selection Board and that his ERSB panel members were not voting amongst candidates.  The Opinion suggests, in these respects, some internal inconsistencies (or over-utilization of form language).  The Court also observes the Opinion provides *no* citation to *any* policy or procedural authority.

 See <u>Pettiford v. Sec'y of the Navy</u>, 774 F.Supp.2d at 180 (quoting Advisory Opinion that while "confidentiality of the [ERSB] process precludes knowing the exact reasons why [plaintiff] was not selected" it could "only be inferred that . . . his record was not competitive with the records of the Marines selected for promotion"); <u>cf.</u> <u>Dickson v. Sec'y of Defense</u>, 68 F.3d 1396, 1406 (D.C. Cir. 1995) (remanding where "boilerplate language . . . ma[de] it impossible to discern the Board's path").

Thus, "the ERSB would not have been aware that [Plaintiff] had been placed in a promotion restriction status" on April 8, 2005; "[h]owever, had he been selected by the ERSB . . ., he would not have been promoted but would have had his promotion withheld until pending charges had been adjudicated."  R. at Appendix Vol. X at 3-4; R. at 97.[22]

**March 16, 2011** -  Supplemental correspondence between BCNR (John Ruskin) and Headquarters Marine Corps ("HQMC", Dawn Murphy, Jr. Enlisted Promotion Specialist) with (1) BCNR pointedly noting that prior advice "does not specify the authority for the key point . . . that the 'promotion restriction' is a restriction from being promoted, not from being considered" and requesting amendment to include authority (which the BCNR suggests arises from 1204.3.u) and (2) HQMC responding that Plaintiff was granted consideration "based on meeting the eligibility requirements . . . of 3200.2d and . . . 3602.1e" neither of which "state[s] that Marines who are in a promotion restriction will not be considered."  R. at 64.

Not surprisingly, given the non-responsive nature of the HQMC reply, a week later the BCNR submitted a formal Memorandum request for the HQMC to "[s]pecifically please address" whether (1) under 1204.3 Plaintiff's "confinement by civil authorities" when the ERSB convened made him "ineligible to be considered by the ERSB" and (2) the ERSB was aware of the charge against Plaintiff or his confinement. R. at 63.

**April 13, 2011** – Following these BCNR repeated requests for authority and an Advisory Opinion including, specifically, the issue of promotional "consideration",  HQMC (Major DeNault, Head, Enlisted Promotion Section) responded, advising that (1) Plaintiff's record was

---

[22] Cf. Marine Corps Manual at para. 2502(2), Withholding Promotions (directing that "[a]ction toward withholding" promotion should be considered only for serious cause (such as conduct impugning moral or professional character) and in such cases commanders should not deliver promotion but report circumstances to Commandant).

properly redacted and "[t]he ERSB members did not have knowledge of, nor would they have viewed, any documentation regarding the charges that were brought against [Plaintiff] . . . or his confinement status", and (2) *"[A]t the time the promotion branch . . . approved [Plaintiff's] request for remedial promotion consideration, there was no legal action reported in the [MCTFS], [so he] was eligible . . . . Had the promotion branch been informed of [Plaintiff's] confinement or his restriction status, he would not have been eligible for consideration and his request for remedial consideration would have been subsequently disapproved."* R. at 61 (emphasis added).

**June 29, 2011** – This Second Advisory Opinion from HQMC Major DeNault (1) reiterates that the ERSB was unaware of Plaintiff's charges or confinement, (2) omits reference to his prior Opinion regarding Plaintiff's discontinued eligibility for remedial consideration had the promotion branch been informed of, *e.g.*, his confinement, and (3) further concludes "[a]s an aside, if [Plaintiff] had been selected . . ., and charges were still pending against him, his command would have been obliged to notify this office. The CMC . . . would then have delayed effecting his promotion (promotion withhold) pending a final adjudication of those charges.[23] It is therefore the opinion of this office that [his] record remain unchanged." Appendix Vol. X at pp. 5-6; R. at 56-57.

---

[23] As discussed *infra*, under Defendants' regulatory policies and procedures, this new conclusion, *i.e.*, (3) regarding withholding of *promotion* had Plaintiff been selected, is the reasonable interpretation of the governing plain language; however, the Major's prior conclusion, *i.e.*, (2) regarding discontinued eligibility for *consideration,* is *also* the only reasonable interpretation of the plain language governing *that* issue. *These conclusions are not – under the Marine Corps Promotional Manual - incompatible or substitutable, rather they are both essential components of a coherent policy disallowing promotional consideration or promotion of incarcerated individuals, and which looks to the timing of incarceration in relation to the promotional proceedings.*

## V.  GENERAL STANDARDS; DEFERENTIAL STANDARD OF REVIEW

### A.  General Standards on Motion to Dismiss

A motion to dismiss is an appropriate means of challenging the legal sufficiency of the Complaint.  See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987).  It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007).  See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The Supreme Court has further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

In Fowler v. UPMC Shadyside,  the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard in light of Twombly and Iqbal:

> After Iqbal, it is clear that . . . all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'

578 F.3d 203, 210 (3d Cir. 2009).[24]

In the case of a motion to dismiss pursuant to Rule 12(b)(1), presenting a challenge to the Court's subject matter jurisdiction, no presumptive truthfulness attaches to plaintiff's allegations and the trial court "evaluat[es] for itself the merits of jurisdictional claims."  Defendants' Brief at

---

[24] A *pro se* litigant is held to a less exacting standard than trained counsel and he is granted more latitude in the Court's construction of the allegations of the Complaint.  See generally, Haines v. Kerner, 404 U.S. 519, 520 (1972); Hughes v. Rowe, 449 U.S. 5, 9 (1980).

13 (quoting <u>Petruska v. Gannon Univ</u>, 462 F.3d 294 (3d Cir. 2006)).

**B.   <u>Standards on Summary Judgment with Deferential Review Under the</u>**

<u>Administrative Procedures Act</u>

As Defendants duly note, "[s]ummary judgment is an appropriate mechanism for

reviewing the final action of a government agency under the [APA]."  Defendants' Brief at 13

(citing <u>Concerned Citizens Alliance, Inc. v. Slater</u>, 176 F.3d 686, 693 (3d Cir. 1999)).  And the

administrative record provides the factual predicate for the Court's review, as factual issues are

resolved by the agency.  <u>Id.</u> at 14 (quoting <u>Fuller v. Winter</u>, 538 F.Supp.2d 179, 185 (D.D.C.

2008)).[25]

The BCNR was charged, in considering Plaintiff's Petition for relief, to determine if the

evidence submitted was "sufficient to establish the existence of probable material error or

injustice".  <u>See</u> *supra* n. 11. This Court is charged in turn - in considering litigation seeking to set

aside the August, 2011 BCNR Decision and underlying ERSB Decision - to determine whether

the Board's Decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. Section 706(2)(A).  Unless the Decision fails this deferential

standard, the reviewing Court will not substitute its judgment.  <u>Cf.</u>, *e.g.*, <u>Piersal v. Winter</u>, 435

F.3d 319, 321 (D.C. Cir. 2006) (noting that courts review "decisions of boards for correction of

military records 'in light of familiar principles of administrative law'").

An agency action is not "arbitrary and capricious if [it] is rational, based on relevant

factors, and within the agency's statutory authority."  <u>Motor Veh. Mfgrs. Ass'n v. State Farm</u>

---

[25] <u>Cf.</u> 5 U.S.C. Section 706 (when reviewing agency's final action under the APA, Court is limited to administrative record, which includes all materials compiled by agency and before it at the time decision was made); <u>Vince v. Mabus</u>, 2012 WL 1090272 (D.D.C. Mar. 31, 2012).

Mut., 463 U.S. 29, 42-43 (1983).[26]  And where the action was "taken pursuant to agency regulations, valid promulgated regulations have the force of law."  Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d 1052, 1055-56 (3d Cir. 1985) (citations omitted).  "[T]he agency itself is bound by its own regulations . . . .  Failure on the part of the agency to act in compliance with its own regulations is fatal to such action . . . .  Such actions are 'not in accordance with law.'"  Id. (citations omitted).  The agency's interpretation commands substantial deference and controls unless "plainly erroneous or inconsistent with the regulations being interpreted" or "there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter".  Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); Auer v. Robbins, 519 U.S. 452, 461 (1997); United States v. Keller, 2011 U.S. App. LEXIS 24743 at *11-12 (3d Cir. 2011) (agency interpretation given controlling weight unless plainly erroneous or inconsistent with regulation).

   The Court's review focuses on the agency's decision-making process, and not on the decision.  See Defendants' Brief at 15 (citing NVE, Inc. v. Dep't of Health & Human Services, 436 F.3d 182, 190 (3d Cir. 2006)).  For purposes of judicial review under the APA, there exists a strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith, and decisions regarding military personnel are reviewed under the APA by an unusually deferential application of the standard. See, e.g., Lechliter v. Rumsfeld,  181 Fed. Appx. 266, 269 (3d Cir. 2006) (citing Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C.Cir.1989)); Washington v. Donley, 802 F.Supp.2d

---

[26]  But a decision is deemed to be arbitrary or capricious when the decision maker failed "to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  See id., 463 U.S. at 43.

539, 545 -546 (D. Del. 2011). "Despite the deferential standard of review, judicial review must

nevertheless be meaningful; a court is 'not empowered to rubber-stamp the Board's decision . . .

.'" Id. at 545 -546 (citations omitted). And '[i]n practice . . . the question whether a particular

action is arbitrary or capricious must turn on the extent to which the relevant statute, or other

source of law, constrains agency action." Kreis v. Sec'y of the Air Force, 866 F.2d at 1514.[27]


## VI.  ANALYSIS

### A.  Subject Matter Jurisdiction

Defendants assert, as a threshold ground, that the case must be dismissed for lack of

subject matter jurisdiction, as it may be properly brought only before the Court of Federal

Claims. See Defendants' Brief at 17-23. Defendants' initial assertion that such Court "is the

exclusive forum for claims against the United States seeking a monetary remedy where Plaintiff

has not waived any monetary remedy beyond $10,000"[28] was mooted by Defendant's

subsequent voluntary waiver of any relief beyond the $10,000 jurisdictional limit.[29] Defendants

---

[27] See also Vince, 2012 WL 1090272 at * 3 (observing that in reviewing decision under APA, court determines "whether or not as a matter of law the evidence . . . permitted the agency to make the decision it did") (citations omitted).

As Defendants reference, the Court also looks to "a material legal error or an injustice in the proceedings" which led to an adverse action, and "an adequate nexus or link between the error or injustice and the adverse action." See, e.g., Mendez v. United States, 103 Fed. Cl. 370, 378 (Fed. Cl. Ct. 2012) (citations omitted); cf. Defendants' Brief at 17.

[28] See Defendants' Brief at 17-19.

[29] Defendants also asserted that because a claim primarily intended to obtain money damages may not be "disguis[ed]" as a claim for injunction requiring the payment of money" to "*circumvent limitations* on district court jurisdiction created by the Tucker Act", Plaintiff's claims fell outside the waiver of sovereign immunity under the APA "which can correspond to a grant of jurisdiction under 28 U.S.C. Section 1331 and 10 U.S.C. Section 1552." Id. at 19-20

also argue, however, that "this Court still lacks jurisdiction" because "Plaintiff asks the Court to interfere with military promotion matters that, by law, are left to the discretion of the military." Id. at 21. In this, they err. See, *e.g.*, Pettiford v. Sec'y of the Navy, 774 F.Supp.2d at 183; *infra* at 35 (noting nonjusticiability of *promotion decision* itself, as opposed to justiciable challenges to the *agency's decision-making process*). Cf. Neal v. Sec'y of Navy, 472 F.Supp. 763, 776 (3d Cir. 1979) (noting developments since "high-water mark of judicial non-intervention in military matters" and observing that "trepidation over interfering with the military establishment has not prevented review to determine if a military official has acted outside the scope of his powers or in violation of regulations"). [30]

## 28 U.S.C. Section 1331

This Court has federal question jurisdiction over Plaintiff's equitable claim(s) arising from the allegedly wrongful promotional consideration/decision by the ERSB underlying the BCNR's denials of his petition for redress. A final decision of the BCNR, as that of a federal

---

(pasticheing quotes) (emphasis added). See also id. at 20 (asserting that as there are no "tangible benefits" other than "increase in retired pay that Plaintiff can argue will result", promotion "to get the retired pay that goes with it" must be "Plaintiff's prime objective") (citing Fairview Township v. United States Envt'l Protection Agency, 773 F.2d 517, 527 n. 19 (3d Cir. 1985). Cf. *supra* (noting Plaintiff's effective waiver of claims in excess of $10,000 limit to District Court's concurrent jurisdiction under the Little Tucker Act). Cf. also Lechliter v. Rumsfeld, 181 Fed.Appx. 266, 268 (3d Cir. 2006) (affirming that District Court had jurisdiction under the APA where plaintiff was seeking equitable relief and "that to which [he was] entitled" under the applicable statute).

[30] Compare Defendants' Brief at 21, 23 (asserting that because "Plaintiff seeks an order retroactively promoting him", and "jurisdiction is lacking to issue an order promoting Plaintiff . . . the Amended Complaint should be dismissed") with id. at 22-23 (discussing Martinez v. United States, 77 Fed. Cl. 318 (2007), *aff'd* 260 Fed. App. 298 (Fed. Cir. 2008), in which Court concluded promotional decisions are properly left to discretion of military but it had authority to grant equitable relief on separate claims). Cf. Neal, 472 F.Supp. 763 (analyzing, in case combining "request for equitable relief . . . with one for money damages", threshold questions of jurisdiction and immunity "with respect to any of [the] claims").

agency acting under federal regulations, is subject to judicial review.  See _supra_.  See also, _e.g._, Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Piersall v. Winter, 435 F.3d 319, 321 (D.C. Cir. 2006); Pettiford v. Secr'y of the Navy, 2012 WL 1548271 (D.D.C. May 3, 2012). And while Section 10 of the APA does not itself  "afford an implied [independent] grant of subject-matter jurisdiction", final federal administrative action _is_ subject to the District Court's jurisdiction under 28 U.S.C. Section 1331.  See Califano v. Sanders, 430 U.S. 99, 105-106 (1977) (resolving division among courts over construction of APA, concluding that while the "statute undoubtedly evinces Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative officials",  "broad policy" rationale for "interpreting the APA as an independent jurisdictional provision" was mooted by Congressional 1976 amendment of scope of federal-question jurisdiction over agency actions under 28 U.S.C. Section 1331);[31] Snydor v. Office of Personnel Management, 2007 WL 172339, *3 (E.D. Pa. Jan. 23, 2007) (observing that APA provides entitlement to judicial review of legal wrong from agency action within meaning of a relevant statute, and concluding that District Court "has federal question jurisdiction to determine [plaintiff's] claim [for violation of agency's own administrative regulations regarding his federal service employment] under the [APA] pursuant to 28 U.S.C. Section 1331"); id. ("The federal question statute, 28 U.S.C. Section 1331, provides the district courts with jurisdiction over all civil actions coming under the laws of the

---

[31] See also Neal v. Sec'y of the Navy, 472 F.Supp. 763, 770-71 (E.D. Pa. 1979) (noting amendment's purpose of removing technical barriers to consideration on merits of complaints against Federal Government, agencies or employees); id. 771-73 (discussing Jaffe v. United States, 592 F.2d 712 (3d Cir. 1979)); id. at 775-76 (concluding Court had jurisdiction under Section 1331 to review agency action, including that of  BCNR under the APA, and that it had "both the power and the duty to inquire whether the decision . . . and the procedure by which that decision was made were proper under the Constitution, statutes and regulations . . . .").

United States" including federal laws and "[v]alidly issued administrative regulations").[32]

### 28 U.S.C. Section 1346

In addition, this Court has jurisdiction over Plaintiff's claims for potential money damages entailed by remedial promotion, in an amount voluntarily limited to less than $10,000. The Little Tucker Act, 28 U.S.C. § 1346, confers concurrent jurisdiction over certain claims against the United States on both the District Courts and the United States Court of Federal Claims.[33] The Act thus extends concurrent jurisdiction to claims seeking correction of military records where the appropriate relief may include limited monetary recovery for, *e.g.*, back pay. See, *e.g.*, Jarrett v. White, 57 Fed. Appx. 87, 88-89 (3d Cir. 2003). Plaintiff has, as noted above, amended his Compliant to effectively waive claims in excess of $10,000.

In concluding, the Court notes that the Navy appears to have invoked, fairly recently, a differing understanding when appearing before the Federal Claims Court. See Mendez v. United

---

[32] Cf. Barlow v. Collins, 397 U.S. 159, 166 (1970) ("[J]udicial review of [federal] administrative action is the rule, and non-reviewability an exception which must be demonstrated."); Jarrett v. White, 57 Fed. Appx. 87 (3d Cir. 2003) (discussing appellate jurisdiction where District Court had jurisdiction regarding military's refusal to change Plaintiff's discharge status, as claims were within APA and Little Tucker Act).

[33] The Act gives District Courts original, concurrent jurisdiction over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2) (2000). The Big Tucker Act is codified at 28 U.S.C. § 1491 and grants the Court of Federal Claims exclusive jurisdiction over similar monetary claims against the United States regardless of the amount at stake.

Cf. Neal, 472 F.Supp. at 774, n. 21 (observing that "subject to the general principles of *res judicata* and collateral estoppel, nothing would preclude a litigant from seeking monetary relief [in amount within the exclusive jurisdiction of ] the Court of Claims following a suit for equitable relief in a district court on the same claim") (citing Greene v. United States, 376 U.S. 149 (1964) in which subsequent action was instituted following determination that plaintiff had been illegally dismissed).

States, 103 Fed. Cl. 370 (Fed. Cl. Ct. 2012). In Mendez, the plaintiff sought correction of his military records for discharge from the Marine Corps, his petition was denied by the BCNR, and plaintiff filed federal litigation alleging involuntary separation following repeated denials of promotion, and related violations of MCO/USMC regulations. He sought rescission of material from his record, reinstatement and back pay. Defendant, through a U.S. Assistant Attorney General and Naval General Litigation Division counsel, contested that Court's jurisdiction and asserted that (a) the plaintiff had "put the cart before the horse", and (b) rather than falling within the jurisdiction of the Court of Federal Claims as a claim for back pay under the Military Pay Act, the case was properly one "*seek[ing] . . . administrative review of the BCNR's decision*" regarding whether improper promotional considerations resulted from a violation of USMC regulations. Id. at 375 (emphasis added) (noting defendant's contention that plaintiff "was required to advance" this theory). Only on demonstration of a clear legal entitlement to promotion (and hence back pay), Defendant asserted, would that Court have jurisdiction under the Military Pay Act. The Court of Federal Claims concluded that, where plaintiff alleged entitlement to pay owing to improper separation, it had jurisdiction under the Military Pay Act and Tucker Act. See 103 Fed. Cl. at 377 (quoting Sanders v. United States, 594 F.2d 804, 816 (Ct. Cl. 1979) ("reaffirm[ing] that material factual errors and prejudicial injustices which are not corrected rise to the level of legal error in that the refusal to correct them is in derogation of the mandate of the board's enabling statutes and, where pay is lost and claimed, [the Military Pay Act, the Tucker Act, and the statute governing correction of military records] enable us to review and right the wrong").[34]

---

[34] See also id. at 378 ("Indeed, it is troublesome that, despite the clear jurisdictional affirmations in these and other analogous precedential rulings, defendant has opted to challenge

**B. ERSB Consideration of Plaintiff for Promotion During Pendency of his Administrative Separation**

As discussed above, the BCNR rejected Plaintiff's assertion that he was ineligible for promotion consideration by the ERSB because of his pending administrative separation. See, e.g., supra at 7-8; R. at 140. Defendants' reading of the applicable regulatory policies and procedures is, in this respect, not only reasonable/consistent with their terms (which is sufficient), but correct.

Paragraph 1204(3)(u) of the Promotion Manual provides that "Marines pending administrative separate for misconduct . . . are not eligible for selection consideration or promotion", but this "loss of promotion eligibility begins the date the administrative separate package is signed by the [Marine's] commander for forwarding to the General Court-Martial Convening authority . . . for final disposition." Appendix Ex. C. See also Defendants' Brief at 30.

Although Plaintiff's Commander initiated the separation process by Notification of Separation Proceedings dated April 26, 2005, that correspondence/action did not – under the Promotional Manual language – trigger a consideration restriction under paragraph 1204(3)(u). Rather, the bar from promotional consideration was effective only *subsequent* to the ERSB proceeding, *i.e.*, on July 22, 2005, when Plaintiff's Mobilization Commander ultimately signed the administrative separation package for forwarding to the Court Martial Convening Commander for approval. See id., R. at 145; Amended Complaint at 4.

**C. ERSB Consideration of Plaintiff for Promotion During His Civilian Incarceration**

jurisdiction.").

Here, the Court finds Defendants' asserted interpretation of the applicable regulatory provisions to be unsupported by and inconsistent with the plain language of the binding documents. Defendants' interpretation is also contrary to the Headquarters Marine Corps' own April 13, 2011 Advisory Memorandum, which was, as noted *supra*, omitted from consideration/reference in the August, 2011 BCNR Decision. <u>See</u> R. at 61 (April 13, 2011 Advisory Opinion concluding that if the promotion branch been informed of Plaintiff's confinement status, he would not have been eligible for consideration and the request would have been subsequently disapproved).[35]

Defendants maintain that Plaintiff was properly considered for promotion by the ERSB despite his concurrent incarceration because any restriction on his eligibility for consideration turned *solely* on his status fifteen (15) months prior, at the time the *annual* selection board, or 2004 SNCO selection board, convened. Defendants provide, however, no reasonable authority for this assertion. <u>See</u> Defendants' Brief at 27-28, 31; Defendants' Reply Brief (citing to Defendants' Brief).

Although they look, as one must, to the plain language of the binding Promotion Manual provision(s), Defendants have not proffered a reasonable (and thus permissible) construction. Defendants attempt to equate two Promotion Manual provisions which, by their language, require comparison and contrasting.[36] More specifically, <u>Promotion Restriction</u> paragraph

---

[35] <u>Compare</u> <u>Neal</u>, 472 F.Supp. at 768 n. 8 ("All of the solicited advisory opinions concluded that all applicable regulations and procedures had been followed in [plaintiff's] case, and that there had been no violation of any right . . . .").

[36] <u>See</u> Defendants' Brief at 31-32 (asserting that "[t]he plain language of [1204(3)(t)] reveals that its limitation on eligibility applies to regularly convened selection boards, not remedial promotion consideration. . . [t]he same holds true for 1203(23)").

1204(3)(t) bars *promotion* of a Marine confined by civil authorities and continued consideration "*by a SNCO selection board*" should a Marine enter confinement while that board is in session, while the preceding Promotion Policies paragraph 1203(23) more broadly and expressly bars eligibility for *promotion consideration* of a "Marine[] who [is] confined by civil . . . authorities . . . ." *or* "who enter[s] such status while *the selection board* is in session." Appendix Ex. C (emphasis added); *supra* at 13; Defendants' Brief at 31. In other words, under the Marine Corps Promotion Policies, (1) a selection board may not consider promotion of a Marine in civil confinement, and (2) should a Marine be placed in confinement while he is under consideration by a selection board in session, the board may not continue to consider him.[37] Thus, the provision bars a "look back" exception to its exclusion from "promotion consideration" of any Marine in civil confinement.

*Firstly, then, and determinatively, Plaintiff was a Marine confined by civil authorities from March 21 through July 26, 2005, and was therefore ineligible for promotion consideration in May, 2005, in accordance with the plain language of the governing Promotion Policies of the Promotion Manual.* And even if Plaintiff's period of incarceration fell within the second clause of 1203(23)'s restriction from consideration (that is, even if he had entered confinement while the selection board was in session), the Enlisted Remedial *Selection Board*, or ERSB, which was considering Plaintiff and which convened in May, 2005, is "the *selection board*", and he would have been barred from consideration on that basis. There is simply no reasonable basis in the applicable law or in Defendants' agency regulations for interpreting this express exclusion from promotional consideration under Section 1203(23) as inapplicable to Plaintiff because he was not

---

[37] See Plaintiff's August 4, 2011 Response, R. at 8; Plaintiff's Response to the Defendants' Brief at 3.

in confinement *in January 2004* when the *annual SNCO* selection board convened.  None.

*Expressum facit cessare tacitum.* [38]

Although Defendants correctly observe that the Commandant's initial March 15, 2005 discretionary determination of eligibility for remedial consideration, and forwarding of Plaintiff's case to the ERSB, "depend[ed] on [plaintiff's] status and eligibility *at the time of the regularly convened selection board* for which remedial consideration was requested", Defendants' Brief at 27 (emphasis in original), it simply does not follow that Defendants were then excused from compliance with their other regulatory policies/procedures regarding continued eligibility for promotional consideration under specified intervening circumstances, such as confinement by civilian authorities.[39]  Indeed, to the contrary, Plaintiff became ineligible for consideration when he was incarcerated on March 21, 2005, and the request for remedial consideration recently forwarded by his Commander should have been withdrawn at that time, in accordance with Defendants' own governing policies. See generally *supra*; cf. *supra* n. 23.

The Court further observes that, as also discussed above, Promotion Manual para. 3601 expressly prescribes that "the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB in their deliberations." Appendix Ex. C, *supra* at 30.  See also Pettiford , 2012 WL 1548271, *6 (noting stipulation to same by Commandant of the Marine Corps); ERSB Promotional Directive, July 21, 2000 (MCO

---

[38] And Section 1203(23)'s second sentence - providing that a Marine who "is subsequently exonerated of any wrongdoing" may be granted "appropriate remedial consideration", rather than supporting, further undercuts Defendants' interpretation of this paragraph as permitting remedial promotional consideration of an incarcerated Marine under unresolved indictments, as it reflects the appropriateness of deferring consideration for promotion pending resolution of a Marine's civilian criminal indictment/incarceration.  Compare Defendants' Brief at 32.

[39] Compare Defendants' Brief at 33-34; Defendants' Reply at 8-9.

5420.16C) ("When considering whether or not to commend selection of Marines whose records have been submitted to the board, the ERSB will be guided by the precept, procedural rules, policies, and regulations in effect when the respective regularly scheduled promotion selection board was in session . . . .") (Appendix Ex. D).[40]

Pursuant to Promotion Manual Pargraph1203.1, promotions not effected in accordance therewith, or by implementing directives not referenced therein, are "erroneous and immediately revoked." See Appendix Ex. C; *supra* at 12.[41] And Plaintiff (who had been previously promoted through the Marine Corps' ranks to Grade 8) suffered an adverse action, and was harmed by an invalid proceeding which considered and denied his promotion.[42]

---

[40] Compare Defendants' Brief at 28 (asserting that eligibility for remedial consideration was based solely on the standard set forth in paragraph 3602 of the Promotion Manual, which "is silent with respect to . . . . any [ ] provisions that would limit a Marine's eligibility for remedial consideration. Indeed, administrative separation processing, civilian confinement, and promotion restrictions are all notably absent . . . . .").

  Compare also Defendants' Brief at 32 (asserting that "the ERSB is not a separate and distinct selection board" but only a "mechanism") with ERSB Promotional Directive (Appendix Ex. D) (noting that "the ERSB is an advisory board"). Cf. Pettiford, 2012 WL 1548271, *2-3 (quoting Marine Corps' Advisory questions and answers which refer to the "regularly scheduled board" and "remedial board" as "selection boards", as indeed they are).

[41] Cf. Marine Corps Manual at para. 2503, Enlisted Promotions ("Promotion policy and procedures prescribed by the Commandant of the Marine Corps are contained in the Marine Corps Promotion Manual and other directives."). Appendix Ex. B.

[42] Compare Defendants' Brief at 33 (asserting that even if "Plaintiff 'slipped through the cracks' and was considered for promotion by the ERSB at the wrong time, he suffered no harm since his record was still considered fairly and impartially" and he has "already benefitted [on May 11, 2005] from . . . remedial promotional consideration"); id. at 34 ("If anything, any error actually resulted in Plaintiff receiving the very relief to which he would be entitled.") with id. at 37 (concluding that "the evidence provided by Plaintiff failed to establish any error in the Marine Corps' decision to approve Plaintiff's request for remedial consideration" and "because Plaintiff failed to provide evidence that the ERSB was otherwise erroneously conducted, the BCNR found no reason to second guess that board's decision not to select Plaintiff for promotion").

This Court's conclusion that the May, 2005 ERSB proceeding was invalid and void is compelled by the language of Defendants' own regulations. The Court rests its conclusion on the regulatory policies and procedures submitted of record by Defendants and delineated at length herein. It notes that this conclusion is consistent with Defendants' internal Advisory Opinion of April 13, 2011 (*i.e.*, the Advisory Opinion absent from the August, 2011 BCNR Decision and from Defendants' briefings). As the August, 2011 BCNR Decision denied Plaintiff's petition on bases inconsistent with a reasonable interpretation of the agency's own governing administrative regulations, the BCNR acted beyond its authority or discretion, and the Decision was contrary to law.[43] Cf. Pettiford v. Sec'y of the Navy, 774 F.Supp. at 183 (noting that defendant "acknowledge[d] that '[t]his Court would have authority to set aside the [BCNR] and [ERSB] decisions as procedurally improper'").

---

[43] Cf. generally, Neal, 472 F.Supp. at 776 (noting, in "ascertain[ing] whether defendants' actions comported with all mandated regulations and procedures . . . the cases holding that the procedures, regulations and guidelines adopted by an agency are binding upon it") (citing Service v. Dulles, 354 U.S. 363 (1957)); Vince, 2012 WL 1090272 at *4 (observing that "an agency such as the [BCNR] is required to adhere to its own regulations during its decision-making processes").

**D. Nature of "Fully Qualified" for Promotion in an ERSB Proceeding**

Plaintiff correctly observes that, under the regulations, regularly scheduled selection boards, *i.e.*, SNCO selection boards, are tasked with selecting the "best and fully qualified" candidates, while remedial selection boards, *i.e.*, ERSBs, select "fully qualified" candidates for promotion, as allotment restrictions are inapplicable. See Appendix Ex. C, *supra* at 14. But Plaintiff's assertion that he has met all remaining, purely objective criteria, and is, therefore, entitled to remedial promotion, goes a step beyond the stair. See Plaintiff's Response to Defendants' Brief at 6-9.

To the contrary, even the ERSB looks to a comparison with other candidates in the applicable annual pool.[44] Plaintiff asserts that he was the *only* Master Sergeant in his occupational field in the IRR category eligible for selection/promotion to Master Gunnery Sergeant by the FY 2004 SNCO and that there was, therefore, no comparison for him to "fall short" of. [45] See Promotion Manual at 3200(2) SNCO Eligibility Requirements, General, Reserve Component Selection Boards ("discussing "three separate competitive categories within the reserve component (SMCR, IRR and AR)" and directing that "Reserve Marines in each

_____

[44] See, *e.g.*, 1999 Precept - The ERSB is to be guided in part by "the precept . . . in effect when the respective regularly scheduled promotion selection board was in session", in this case the 1999 Precept. It provides, in relevant part, that "[t]he function of the selection board is to recommend eligible first sergeants, master sergeants and gunnery sergeants for promotion to the next higher grade. . . . . [A]ll Marines recommend for promotion must be fully qualified. Each Marine's qualification and performance of duty must clearly demonstrate that the Marine will be capable of performing the duties normally associated with the next higher grade." See Pettiford v. Sec'y of the Navy, 2012 WL 1548271, *6 (D.D.C. May 3, 2012); id. at *2-3 (quoting Marine Corps Advisory Opinion that effective in 2000, "each regular SNCO Board began selecting comparison cases from each competitive category to be used for comparison by" remedial boards and candidates' Official Military Personnel Files ("OMPFs") were used).

[45] See, *e.g.*, Plaintiff's August 4, 2011 Response, R. at 10; see also R. at189. Cf. R. at 196-215 (Plaintiff's 3/10/05 qualifications packet).

33

category will compete for selection only with Marines in the appropriate category (i.e., SMCR with SMCR, IRR with IRR, and AR with AR, except IRR and SMCR GySgts and 1st Sgts compete together for selection to SMCR 1st Sgt and SgtMaj, respectively.").[46] Cf. R. at 197 (Plaintiff's 3/10/05 Request for Remedial Consideration, noting that "the IRR allocation went unfilled as there were no [other] IRR Master Sergeants in OF 3500 [promotion zone] eligible for consideration by the [2004 SNCO] board"); R. at 220 (Internal Memorandum from Commander, Sergeant Major Dixon, "positively endors[ing]" Plaintiff's request for remedial consideration and observing that the selection by the 2004 SNCO of 3 candidates from the SMCR (as opposed to 1 from the IRR and 2 from the SMCR) "appears to have been a mistake" and questioning the fate of the allocation intended for the IRR "in the 3500 OCC field"). The question of the designated scope and nature of competing candidate consideration, and its implementation in Plaintiff's ERSB proceeding, is thus less than clear to this Court on the present record.

What is critically clear, however, is that Defendants reasonably interpret applicable regulations to direct consideration of subjective criteria in assessing whether – independent of the existence of other qualified candidates - each *individual* candidate for promotion is "fully qualified". See *supra* at 11 (citing Defendants' Brief and quoting Promotion Manual); Defendants' Reply Brief at 3 (citing, *e.g.*, MCO 1400.32C at Para. 3200(6) including subjective prerequisites of "exceptionally high degree of leadership and supervisory ability and ability to act independently"); Promotion Manual, para. 1100(19) Definitions; Fully Qualified ("A Marine that has completed the required Professional Military Education (PME) for selection to the next

---

[46] Compare R. at 112 (Commandant's May 18, 2005 Memorandum advising Plaintiff that "[a]fter a comparison of [his] personnel file with those Marines competing for promotion within your [IMOS] 3500, it was the recommendation of the board that you not be selected for promotion . . . .").

higher *grade and is capable of assuming the duties and responsibilities of that grade*.")
(emphasis added); id. at para. 3100(1) Selection Boards, General ("In the course of their
evaluations, selection boards consider demonstrated performance/achievement, leadership,
professional and technical knowledge, experience (type and level), growth potential, motivation,
military proficiency, physical fitness, personal appearance, conduct, moral character, and
maturity.").[47] See also Pettiford at *3 (quoting Advisory Opinion that comparison to other
candidates "is only one element" for consideration "by a regular or remedial board" and that
"Marine's record is viewed in its entirety . . . [including indications of whether] he is fully
capable of assuming the duties of the next higher grade" - such as responsibility and leadership,
as well as technical proficiency); id. at *6 (finding BCNR's conclusion that ERSB properly looks
to "other important considerations" such as "whether plaintiff possessed the high degree of
leadership and other attributes to perform the duties at the [promotional] grade" persuasive rather
than plainly erroneous). The Court notes that the Marine Corps apparently recognized the high
quality of Plaintiff's performance not only through repeated commendations, but also through his
promotion through its ranks to the all-but-one-highest level of Grade E-8, Master Sergeant.[48]

---

[47] Cf. Advisory Opinion of June 25, 2008 (observing that Plaintiff would not be promotable "simply because he was the only Marine being considered" because each selection board has discretion ). R. at 139.

[48] The Court also notes, however, that while Plaintiff's military record contains several highly favorable letters from superiors and subordinates alike, and reflects continued promotions to a position of high rank, it is not entirely commendatory. Compare, e.g., R. at 68-75 (letters of recommendation) with R. at 296-98, 303-19 (documentation regarding allegations of racial remark and intoxication and related Administrative Remark to Plaintiff's record in September, 2004, as well as referral to EO counseling and denial of Plaintiff's request for removal of record entry). Cf. Neal, 472 F.Supp. at 780 (noting that "mere fact that there are numerous complementary reports in [plaintiff's] record . . . does not render [adverse decision] arbitrary or capricious").

In addition, as noted, *supra*, to the extent Plaintiff seeks remedial promotion directly from this Court, it is well established that "a request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions." <u>Kreis v. Sec'y of the Air Force</u>, 866 F.2d 1508, 1511 (D.C. Cir. 1989). <u>See also</u> <u>Pettiford v. Sec'y of the Navy</u>, 2012 WL 1548271, *2-3 (D.D.C. May 3, 2012); <u>Pettiford v. Sec'y of the Navy</u>, 774 F.Supp.2d at 183 (dismissing plaintiff's claim to extent he asked Court to order Secretary of Navy to retroactively promote him, but setting aside BCNR decision denying plaintiff's petition challenging ERSB recommendation, and remanding for further proceedings); Defendants' Reply Brief at 2-4.

## VII. <u>CONCLUSION</u>

An Order consistent with this Memorandum Opinion, denying in part and granting in part Defendants' Motion to Dismiss Or In the Alternative for Summary Judgment, will be entered. The August, 2011 Decision of the BCNR will be set aside, and the case will be remanded to the Defendants for further proceedings – to be made in accordance with relevant law and this Opinion – with the directions that (1) a new BCNR panel be convened;[49] (2) Defendants' decision(s) be rendered with all due promptness; and (3) the subsequent record indicate the steps taken by Defendants to ensure that Plaintiff is placed, for purposes of remedial promotional consideration, in the same position he would have been had he been correctly considered by the January, 2004 SNCO selection board, and not prejudiced by (a) Defendant's erroneous eligibility date; (b) the May, 2005 ERSB promotional consideration and non-recommendation conducted in

---

[49] <u>Cf.</u> <u>Pettiford v. Sec'y of the Navy</u>, 2012 WL 1548271, *1 (D.D.C. May 3, 2012) (noting prior decision, in which BCNR Decision had been set aside and case remanded for further proceedings, with new analyst and new BCNR panel assigned to consider plaintiff's application for relief from ERSB Decision denying remedial promotion).

violation of applicable, binding regulations; or (c) the BCNR's subsequent failures to remedy the

invalid ERSB proceeding despite Plaintiff's appeals.

_____
LISA PUPO LENIHAN
United States Chief Magistrate Judge


Dated: September  28, 2012

Cc: **JAMES S. FRAZIER, JR.**
Post Office Box 224
McKeesport, PA 15134