**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES S. FRAZIER, JR., | ) | Civil Action No. 10-500 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| SECRETARY RAY MABUS, U.S. | ) | |
| DEPARTMENT OF THE NAVY; | ) | |
| EXECUTIVE DIRECTOR W. DEAN | ) | |
| PFEIFFER, BOARD FOR | ) | |
| PFEIFFER, BOARD FOR | ) | |
| CORRECTION OF NAVAL RECORDS, | ) | |
| | ) | |
| Defendants. | ) | *Filed electronically* |

**BRIEF IN SUPPORT OF DEFENDANTS' RENEWED
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

STATUTORY AND REGULATORY FRAMEWORK ........................................................ 2

    A.    Enlisted Remedial Selection Board ...................................................... 2

    B.    The Board For Correction Of Naval Records ...................................... 5

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ..................................................................................................................... 10

    I.    The December 2012 ERSB's Consideration Of Plaintiff's Record Was Not Arbitrary, Capricious, An Abuse Of Discretion, Or Contrary To Law ..……...... 12

        A.    Role of the Enlisted Promotion Section Head ........................................ 12

        B.    Notice Requirement and Submission of Materials to the ERSB ............. 13

        C.    Selection Procedure ................................................................................. 14

        D.    Review for Consecutive Fiscal Years .................................................... 16

    II.    There is no Procedural Bar to Review of the December 2012 ERSB Decision by the BCNR ......................................................................................................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

Baraka v. McGreevey, 481 F.3d 187 (3d Cir. 2007) ………………………………………….. 11

Buckingham Township v. Wykle, 157 F.Supp.2d 457 (E.D. Pa. 2001) ...................................... 7

Burlington Truck Lines v. United States, 371 U.S. 156 (1962) ................................................... 7

Byrne v. Cleveland Clinic, 684 F.Supp.2d 641 (E.D. Pa. 2010) …………………………… 11

Calloway v. Brownlee, 366 F.Supp.2d 43 (D.D.C. 2005) .............................................................. 9

Calloway v. Harvey, 590 F.Supp.2d 29 (D.D.C. 2008) ................................................................. 9

Carson v. U. S. Railroad Retirement Board, 2004 WL 2106553 (E.D. Pa. Sept. 21, 2004) ......... 6

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) ...................................... 7

Collins v. United States, 24 Ct. Cl. 32 (1991) ............................................................................... 9

Concerned Citizens Alliance, Inc. v. Slater, 176 F.3d 686 (3d Cir. 1999) .................................. 6

Cone v. Caldera, 223 F.3d 789 (D.C. Cir. 2000) ...................................................................... 8, 9

Day v. Federal Bureau of Prisons, 233 F. App'x. 132 (3d Cir. 2007) ………………………… 11

Dougherty v. U.S. Navy BCNR, 784 F.2d 499, 501 (3d Cir. 1986) ……………………………. 7

Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d 1052 (3d Cir. 1985) ............................... 8

Frizzelle v. Slater, 111 F.3d 172 (D.C. Cir. 1997) ....................................................................... 9

Fuller v. Winter, 538 F.Supp.2d 179 (D.D.C. 2008) .................................................................... 6

Griffin v. Harris, 571 F.2d 767 (3d Cir. 1978) ............................................................................. 7

Kelly v. Railroad Retirement Board, 625 F.2d 486 (3d Cir. 1980) .............................................. 7

Kreis v. Sec'y of the Air Force, 866 F.2d 1508 (D.C. Cir. 1989) ................................................. 8

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) ……………………………… 11

Motor Veh. Mfgrs. Ass'n. v. State Farm Mut., 463 U.S. 29 (1983) ..................................... 7, 8, 9

Neal v. Sec'y of the Navy, 639 F.2d 1029 (3d Cir. 1981) …………………………………... 9, 10

NVE, Inc. v. Dep't of Health & Human Services, 436 F.3d 182 (3d Cir. 2006) .......................... 8

Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ……………….…………………………….. 8

Prometheus Radio Project v. F.C.C., 373 F.3d 372 (3d Cir. 2004) ...................................... 8

Sanders v. United States, 594 F.2d 804 (Ct. Cl. 1979) ................................................. 9

Schweiker v. McClure, 456 U.S. 188 (1982) ............................................................... 8

United States v. Nixon, 418 U.S. 683 (1974) ............................................................. 7

## STATUTES

Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et. seq................................ 6, 7, 8, 9, 10

10 U.S.C. § 1552 ........................................................................................ 5

## RULES, REGULATIONS AND OTHER ADMINISTRATIVE MATERIALS

Fed. R. Civ. P. 11 ………………………………………………………………………… 11

32 C.F.R. Part 723 ........................................................................................ 5

32 C.F.R. § 723.2 ........................................................................................ 5, 6

32 C.F.R. § 723.3 ........................................................................................ 5, 6

32 C.F.R. § 723.6 ........................................................................................ 5

32 C.F.R. § 723.9 ........................................................................................ 5

Marine Corps Order 5216.9U .......................................................................... 2

Marine Corps Order P1400.32C (October 30, 2000) .................................................. 2

Marine Corps Order P1400.32D (May 11, 2006) ............................................. passim

Marine Corps Order 5420.16C (July 21, 2000) ...................................................... 2, 3

Marine Corps Order 5420.16D (November 2, 2008) ........................................ 3, 4, 12, 13, 15, 18

SECNAVINST 542.193 (November 19, 1997) …………………………………….…… 6, 18

# INTRODUCTION

Plaintiff, James S. Frazier, Jr., originally commenced this action on April 19, 2010 by filing a motion for leave to proceed *in forma pauperis* along with a Complaint seeking an order from this Court promoting him retroactively to Master Gunnery Sergeant (E-9), adjusting his retirement rank, and expunging certain entries from his official Marine Corps record. On September 28, 2012, the Court issued an order granting in part and denying in part Defendants Motion to Dismiss, or in the Alternative, for Summary Judgment and remanding this matter to the Department of the Navy. See Doc. Nos. 26-28, 39-40, 42.

On December 13, 2012, pursuant to the Court's orders, Plaintiff was reviewed by an Enlisted Remedial Selection Board ("ERSB") convened at Marine Corps Base Quantico by the Promotions Branch in the Manpower Management Division of the Manpower and Reserve Affairs Department. See Doc. Nos. 39-40, 42. On March 13, 2013, following an unfavorable decision at the ERSB, Plaintiff filed a motion seeking to reopen his case for further judicial review. See Doc. No. 43. In his motion and supporting brief, Plaintiff alleges, *inter alia*, that he suffered impartiality and "injustices" in connection with his review and he insists that he exceeds the fully qualified standard for promotion. See Doc. Nos. 43-44.

Plaintiff's motion was granted on April 22, 2013. In reopening this matter, the Court ordered Defendants to demonstrate compliance with its September 28, 2012 order remanding the case, as well as to respond to other questions concerning procedures followed by the ERSB raised at the April 18, 2013 conference which the Court noted on the record.

In accordance with the April 22, 2013 order reopening this matter, Defendants hereby respond to the issues now before the Court.

1

## STATUTORY AND REGULATORY FRAMEWORK

### A.     Enlisted Remedial Selection Boards

Marine Staff Noncommissioned Officers (SNCO(s)) eligible for promotion consideration

but not properly considered by the regularly scheduled selection board are entitled to request

remedial consideration.  See Marine Corps Promotions Manual, Volume 2, Enlisted Promotions,

MCO P1400.32D[1] at ¶ 3600 (pg. 3-29).[2]  Eligibility for remedial promotion consideration is

governed by ¶ 3602 (pg. 3-29), and the Manpower and Reserve Affairs Department, Enlisted

Promotions Section (MMPR-2)[3] at U.S. Marine Corps Headquarters is designated by the

Commandant to make the final determination of a Marine's eligibility for remedial

consideration.  Id. at ¶¶ 3602(2) (pg. 3-30) and 3604 (pg. 3-33).  As a discretionary function of

the promotion system, remedial consideration is granted on a case-by-case basis.  See generally

id. at ¶ 3601-3602 (pp. 3-29 to 3-32).  Reasons for remedial consideration include, for example, a

Marine who was not considered by the regular board as a result of incorrect eligibility criteria in

his record at the time of that board.  Id. at ¶ 3602 (pg. 3-32).  Cases approved for remedial

---

[1]  Although previous submissions to this Court referred to MCO P1400.32C and MCO 5420.16C as the governing regulations (relating to how the ERSB is constituted) at the time of Plaintiff's original ERSB, both orders have since been replaced by newer versions which are the applicable regulations for constituting the December 2012 ERSB.

[2]  Relevant portions of MCO P1400.32D are attached to Defendants' Supplemental Appendix as Exhibit E.  This 188-page document is also available in full at http://www.newriver.marines.mil/ Portals /17/ Documents/MCO%20P1400.32D.pdf.

[3]  While referencing MMPR-2, MCO P1400.32D does not explicitly explain what MMPR-2 means.  MMPR-2 was (and still is) the abbreviation used to designate the Enlisted Promotions Section of the Promotions Branch in the Manpower Management Division of the Manpower and Reserve Affairs Department.  See Marine Corps Order 5216.9U, Enclosure (1), dated January 28, 2005, available at http://www.globalsecurity.org/military/library/policy/usmc/mco/5216-9/ mco5216-9u.pdf.

promotion consideration are referred by MMPR-2 to the ERSB which, unlike the regularly convened selection boards, convenes as necessary on a non-regular basis.  Id. at 3605 (pg. 3-34).[4]

A separate directive issued on July 21, 2000 provided amplifying information and guidance concerning the operation and function of the ERSB.  See Marine Corps Order 5420.16C ("MCO 5420.16C"), dated July 21, 2000, attached to Defendant's original Motion for Summary Judgment Appendices in full as Exhibit D.  This order was replaced by Marine Corps Order 5420.16D in 2008, which provides that "[t]he ERSB will consider the cases of enlisted Marines both Regular and Reserve, who, for any reason other than ineligibility, did not receive consideration or were not properly considered, when they were eligible for consideration by a regularly convened Headquarters, U.S. Marine Corps Staff Noncommissioned Officer Selection Board."  See Marine Corps Order 5420.16D ("MCO 5420.16D"), dated November 2, 2008 at ¶ 4(c)(7) (pg. 3 of 5). [5]

Upon convening, the ERSB is guided by the same criteria and selection procedures that the regularly scheduled selection board was instructed to follow.  See MCO P1400.32D, at ¶ 3601(2) (pg. 3-29); see also MCO 5420.16D, at ¶ 4(c)(8) (pg. 3 of 5).  Because remedial consideration is conducted under the same criteria and selection procedures of the regularly scheduled board, the record of a Marine referred to the ERSB is redacted to prevent the board from considering any material that post-dated the regularly scheduled selection board(s) for

---

[4] See also https://www.manpower.usmc.mil/portal/page/portal/M_RA_HOME/MM/PR/ MMPR2/MMPR2_STAFF_NONOFFICER_PROMOTIONS/MMPR2_STAFF_NONOFFICER _PROMOT_REMEDIAL/BOARDS/MMPR2_SNCO_REMEDIAL_Schedule (for the tentative nature of ERSB scheduling).

[5] MCO 5420.16D is attached to attached to Defendants' Supplemental Appendix as Exhibit F.

which the remedial promotion consideration was granted.  <u>See</u> MCO P1400.32D, at ¶ 3601(2) (pg. 3-29).  However, whereas the regularly scheduled selection boards are tasked with selecting the "best and fully qualified" Marines, the ERSBs are tasked with selecting "fully qualified" Marines.  <u>Id.</u>  This is because the ERSBs are not constrained by the allocation restrictions applicable to the regularly scheduled boards.  <u>Id.</u>; <u>see</u> <u>also</u> MCO 5420.16D, ¶ 4(c)(9) (pg. 3 of 5).

With the absence of allocation restrictions, the primary criterion of the ERSB becomes a comparison of the record of the Marine granted remedial consideration to the records of the Marines selected by the regularly scheduled board for which the Marine is receiving remedial consideration.  Marines who are granted remedial promotion will be considered in the military occupational specialty, component and category, if applicable, in which they were serving on the convening date of the selection board for which remedial consideration has been granted.  <u>See</u> MCO P1400.32D, at ¶ 3603(1) (pg. 3-33).  Marines must receive a majority vote of the members to be selected.  <u>See</u> <u>also</u> MCO 5420.16D, at ¶ 4(c)(9)-(10) (pg. 3 of 5).

Whether the Marine is selected or not selected by the ERSB, a naval letter will be forwarded via the Marine's chain of command notifying the Marine of the ERSB's decision on all selection boards before which the Marine was considered.  <u>See</u> MCO P1400.32D, at ¶ 3605(2)(a) (pg. 3-34).  Due to the confidentiality of selection board proceedings, the notification will not state any reason for nonselection.  <u>Id.</u>  Marines do not suffer a promotion pass for the remedial board if they are already shown as a pass for the original board.[6]  <u>Id.</u>

---

[6]  This effectively prevents the Marine from suffering a "double charge" for not promoting at both the original board and the remedial board.

**B.      The Board For Correction of Naval Records**

    The Secretary of the Navy, as authorized by statute, has established a Board for Correction of Naval Records ("BCNR"). 10 U.S.C. § 1552. The BCNR's rules are codified at 32 C.F.R. Part 723. The BCNR is composed of civilians authorized by the Secretary to identify and correct material errors or injustices in Navy and Marine Corps records. 32 C.F.R. § 723.2(a). When the BCNR identifies a material error or injustice, it may – when authorized – take final action to correct the record.[7] Id. at. §§ 723.2(b) and 723.6(e). When not authorized to take final corrective action itself, the BCNR may make appropriate recommendations to the Secretary for the correction of records. Id. at. § 723.6.

    The BCNR is not, however, an investigative body. Id. at § 723.2(b). It may examine applications and review "all pertinent evidence of record," but it may deny a petition when the "record fails to demonstrate the existence of probable material error or injustice." Id. at § 723.6(e)(1) – (e)(2). Additionally, the "Board relies on a presumption of regularity to support the official actions of public officers." Id. at § 723.3(e)(2). Accordingly, a petitioner bears the burden of proving with substantial evidence that the acting officials committed an error or fashioned an injustice. Id. In the absence of substantial evidence to the contrary, the Board will presume military officers "properly discharged their official duties." Id.

    The Board may accept petitions for reconsideration following an otherwise final decision. Id. at § 723.9. However, an applicant must present new and material evidence and may not simply raise matters the Board previously addressed. Id. New evidence is "evidence not previously considered by the Board and not reasonably available to the applicant at the time of

---

[7] In limited circumstances, such as when the Board's decision is not unanimous, only the Secretary may take action. See 32 C.F.R. § 723.6.

the previous application." Id.  Likewise, evidence is only "material if it is likely to have a substantial effect on the outcome."  Id.  The statute of limitations for application to the BCNR is three years; however, this limit can be excused at the discretion of the Board.  See SECNAVINST 5420.193, 1997 (Encl. 1, pg. 2).[8]

When the Board denies an applicant's original request in executive session, including an applicant's request for reconsideration, it shall do so in writing.  32 C.F.R. § 723.2(a) at § 723.3(e).  The Board must compose a brief statement, which "shall include the reasons for the determination."  Id.

## STANDARDS OF REVIEW

### A.  Fed. R. Civ. P. 56 and the Administrative Procedure Act, 5 U.S.C. §§ 701-706

Summary judgment is an appropriate mechanism for reviewing the final action of a government agency under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Concerned Citizens Alliance, Inc. v. Slater, 176 F.3d 686, 693 (3d Cir. 1999).  However, rather than applying the standard of review set forth in Fed. R. Civ. P. 56, the court's function is to determine, as a matter of law according to the standard of review set forth in the APA, whether the evidence in the record permitted the agency to decide as it did.  Carson v. United States Railroad Retirement Board, 2004 U.S. Dist. LEXIS 19034, *14-15 (E.D. Pa. 2004).  In reviewing the decision of an administrative agency pursuant to a motion for summary judgment, "the administrative record provides the complete factual predicate for the court's review."  Id. This is because, under the APA, factual issues are resolved by the agency.  Fuller v. Winter, 538 F.Supp.2d 179, 185 (D.D.C. 2008).  Thus, there are "generally no issues of material fact in an

_____

[8] SECNAVINST 5420.193 is attached to Defendants' Supplemental Appendix as Exhibit G.

APA case," Buckingham Township v. Wykle, 157 F.Supp.2d 457, 462 (E.D. Pa. 2001), and the

court's review is limited to the administrative record. 5 U.S.C. § 706; see also Dougherty v. U.S.

Navy Bd. for Correction of Naval Records, 784 F.2d 499, 501 (3d Cir. 1986).

Under the APA, the court may set aside agency actions, findings, or conclusions that are

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A). As stated by the Court of Appeals for the Third Circuit:

> Agency action may not be set aside on grounds that it is arbitrary and capricious if the action is rational, based on relevant factors, and within the agency's statutory authority. Motor Veh. Mfgrs. Ass'n. v. State Farm Mut., 463 U.S. 29, 42-43, 103 S Ct. 2856, 866, 7 L.Ed.2d 443 (1983).
>
> In considering whether agency action is rational, a reviewing court must determine whether the agency considered the relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).
>
> In considering whether agency action was based on relevant factors, the reviewing court normally must determine whether the agency relied on factors Congress intended it to consider. If the court determines that the agency relied on factors Congress did not intend for it to consider, or has failed to consider an important aspect of the problem, then the action should be set aside as arbitrary and capricious. See Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43-44, 103 S.Ct. at 2867.
>
> In considering whether agency action was within the scope of its statutory authority, the reviewing court first must construe the relevant statute to determine the scope of the agency's authority and discretion and then must determine whether the action in question lies within that scope. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-416 (1971).
>
> Finally, where...judicial review includes action taken pursuant to agency regulations, validly promulgated regulations have the force of law. Griffin v. Harris, 571 F.2d 767, 772 (3d Cir. 1978). Moreover, the agency itself is bound by its own regulations. U.S. v. Nixon, 418 U.S. 683, 695-696, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). Failure on the part of the agency to act in compliance with its own regulations is fatal to such action. Kelly v. Railroad Retirement Board, 625 F.2d 486, 492 (3d Cir. 1980). Such actions are "not in accordance with law."

<u>Frisby v. U.S. Dep't of Hous. & Urban Dev.</u>, 755 F.2d 1052, 1055-56 (3d Cir. 1985).

The scope of review under the "[APA] standard is 'narrow, and a court is not to substitute its judgment for that of the agency.'" <u>Prometheus Radio Project v. F.C.C.</u>, 373 F.3d 372, 389 (3d Cir. 2004)(quoting <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 42). While a reviewing court is not precluded from conducting a thorough, probing, in-depth review of the agency's action, the agency action is entitled to a presumption of regularity. <u>Frisby</u>, 755 F.2d at 1055 (citing <u>Overton Park</u>, 401 U.S. at 415-416 and <u>Schweiker v. McClure</u>, 456 U.S. 188, 196 (1982)). The court's review focuses on the agency's decision making process, not the decision itself. <u>NVE, Inc. v. Dep't of Health & Human Services</u>, 436 F.3d 182, 190 (3d Cir. 2006).

Courts afford an even higher level of deference when reviewing decisions by boards for correction of military records. <u>Kreis v. Sec'y of the Air Force</u>, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (decisions of the boards for correction of military records are reviewed under the APA by an unusually deferential application of the arbitrary and capricious standard). This highly deferential standard in the context of military personnel decisions ensures that courts do not become embroiled in the debates of disappointed soldiers, sailors, and Marines, which would tend to destabilize the effectiveness of military operations. <u>Cone v. Caldera</u>, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing <u>Orloff v. Willoughby</u>, 345 U.S. 83, 94 (1953)). With this framework, courts proceed with extreme caution and will only disturb the clearest violations of law and regulation. <u>Kreis</u>, 866 F.2d at 1515. Otherwise, the judiciary may inadvertently interfere with military operations and inappropriately decide what administrative measures are in the interest of good order and discipline. <u>See Cone,</u> 223 F.3d at 793.

The legal inquiry for a court reviewing the decision of a military corrections board under the APA is whether the correction board's decision was arbitrary and capricious, unsupported by substantial evidence, or contrary to law. Frizzelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997). Indeed, a court in an autonomous review might arrive at a different result, but reasonable minds can reach differing conclusions. Calloway v. Harvey, 590 F.Supp.2d 29, 35 (D.C.C. 2008) (citing Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979)). Accordingly, the critical question here is whether the Board followed the proper procedure, applied facts rationally connected to its decision, and provided a reasoned basis for its decision. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

Moreover, there is a "strong but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." Frizzelle, 111 F.3d at 177 (quoting Collins v. United States, 24 Ct. Cl. 32, 38 (1991); aff'd, 975 F.2d 869 (Fed. Cir. 1992)); see also Neal v. Sec'y of the Navy, 639 F.2d 1029, 1037-1038 (3d Cir. 1981). Such discretion applies not only to military personnel "but to any decision maker whose decision is to be reviewed under a standard that assumes discretion has been exercised soundly, in the absence of proof to the contrary." Neal, 639 F.2d at 1037-1038. Accordingly, a service member challenging the decisions of military personnel or a military corrections board bears the difficult burden of overcoming this presumption of regularity with "cogent and clearly convincing evidence that the decision was the result of a material error or injustice." Calloway v. Brownlee, 366 F.Supp.2d 43, 54 (D.D.C. 2005)(citations omitted); accord Cone, 223 F.3d at 792-793 and Frizzelle 111 F.3d at 177.

Finally, when reviewing an agency's decision under the APA, the court must give proper account to the role of prejudicial error. 5 U.S.C. § 706(2); see also Neal, 639 F.2d at 1035 (where the Third Circuit rejected plaintiff's claim based on procedural irregularities as a result of plaintiff's failure to demonstrate prejudice).

## ARGUMENT

## I.   DEFENDANTS ARE ENTITLED SUMMARY JUDGMENT IN THEIR FAVOR

On September 28, 2012 the Court granted in part and denied in part Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.  Specifically, the Court set aside the 2011 BCNR decision which denied Plaintiff a promotion to Master Gunnery Sergeant (E9) in the Marine Corps Reserves, and remanded the case for consideration by a new BCNR panel, as follows:

> [T]he August, 2011 Decision of the BCNR is set aside, and the case remanded to the Defendants for further proceedings to be made in accordance with relevant law and this Opinion with the directions that (1) a new BCNR panel be convened; that (2) Defendants' decision(s) be rendered with all due promptness; and that (3) the subsequent record indicate the steps taken by Defendants to ensure that Plaintiff is placed, for purposes of remedial promotional consideration, in the same position he would have been had he been correctly considered by the January, 2004 SNCO selection board, and not prejudiced by (a) Defendants' erroneous eligibility date; (b) the May, 2005 ERSB promotional consideration and non-recommendation conducted in violation of applicable, binding regulations; or (c) the BCNR's subsequent failures to remedy the invalid ERSB proceeding despite Plaintiff's appeals. The Clerk is directed to mark this case closed.

See Doc. Nos. 39-40.  On motion by the Defendants, the Court subsequently amended its order to remand the case to a newly convened ERSB in place of the BCNR.  See Doc. Nos. 41-42. Pursuant to that order, Plaintiff was considered for promotion by an ERSB on December 13, 2012.  See Administrative Record ("AR") 350, attached to Defendants' Supplemental

Appendix.[9]

As noted above, on March 13, 2013, following his nonselection for promotion at the December 2012 ERSB, Plaintiff filed a motion seeking to reopen his case for further judicial review. See Doc. No. 43. In his motion and supporting brief, Plaintiff alleges, *inter alia*, that he suffered impartiality and "injustices" in connection with his review and he insists that he exceeds the fully qualified standard for promotion. See Doc. Nos. 43-44. Specifically, Plaintiff asserts that the Marine Corps abused its discretion, or otherwise acted contrary to law, in the way it convened and conducted the ERSB. See Doc. No. 44 at 1-3, 6. Second, he claims that the actions of the Enlisted Promotions Section in some way prevent him from appealing ERSB results to the BCNR. See id. at 2.[10] However, because the administrative record demonstrates that none of these actions was arbitrary, capricious, an abuse of discretion, contrary to law, or

---

[9] A detailed recitation of the factual background leading to this Court's September 28, 2012 decision is set forth in Defendants' Brief in Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, and is incorporated herein by reference. See Doc. No. 27.

[10] In addition to these complaints, and in a desperate attempt to convince the Court that the Department of the Navy is wrong and that he should be promoted, Plaintiff casts baseless and inappropriate aspersions against Counsel for Defendant, this Court and Major Denault. See Doc. No. 44 at 2 ("Plaintiff further argues that either this Honorable Court was complicit in this injustice or was "duped" and "mislead" by the Defendants through Assistant U.S. Attorney Jennifer R. Andrade into granting Defendant's Motion to Clarify …."); see also Doc. No. 44 at 6 ("Major S.M. Denault knew and calculated …." and "This was an extremely manipulative, dishonest, mean spirited, and underhanded and calculated move by Major S.M. Denault …."). While Plaintiff's *pro se* status permits his pleadings to read liberally, it does not permit such immaterial allegations to be considered. See, e.g., Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Day v. Federal Bureau of Prisons, 233 F. App'x. 132, 133 n. 3 (3d Cir. 2007) (a court "need not ... credit a pro se litigant's 'bald assertions' or 'legal conclusions.'") (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)); Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 649 (E.D. Pa. 2010) ("While the Court of Appeals for the Third Circuit traditionally has given pro se litigants 'greater leeway where they have not followed the technical rules of pleading and procedure,' ... all parties must nonetheless follow the Federal Rules of Civil Procedure") (internal citations omitted); see also Fed. R. Civ. P. 11(b).

unsupported by substantial evidence, Defendants are entitled to judgment as a matter of law.

## I.     The December 2012 ERSB's Consideration of Plaintiff's Record Was Not Arbitrary, Capricious, an Abuse Of Discretion, or Contrary To Law

### A.     The Role of the Enlisted Promotion Section Head

In his Motion to Reopen this matter, Plaintiff alleges that the Head of the Marine Corps Enlisted Promotion Section, Major S.M. Denault, somehow interfered with or influenced the outcome of the 2012 ERSB. See Doc. No. 44 at 5-6. This bald allegation is wholly unsupported. As provided by MCO 5420.16D, the Head of the Enlisted Promotion Section of MMPR-2 functions as the Senior Recorder for the ERSB which is a nonvoting role, and refers cases granted remedial consideration to the board. See MCO 5420.16D, at ¶ 4(b)(1)(f) (pg. 2 of 5). Upon convening to consider referred cases, a recorder must be appointed and present to document the proceedings. Id. at ¶ 4(c)(6) (pg. 3 of 5). For the December 2012 ERSB, Ms. Cynthia A Guillory and Master Sergeant Yesenia Craft served as the recorders, with at least one of them present during all deliberations. See AR 342, Precept Convening the Enlisted Remedial Selection Board, December 12, 2012.

The convening precept for the ERSB also lists Major Suzanne M. Denault as part of the available administrative support personnel. Id. Paragraph 1 of that precept lists the voting members of the board and makes clear that they are the only individuals who will consider the cases of the eligible Marines being reviewed. Prior to the ERSB, the head of MMPR-2, along with her staff, prepares the convening documents and update materials. See Declaration of Major Suzanne M. Denault ¶ 1(c).[11] Having a nonvoting role, with no duties beyond administrative support, the MMPR-2 Head has no capability or opportunity to influence the

---

[11]     Major Denault's Declaration is attached to Defendants' Supplemental Appendix as Exhibit H.

results of the convened ERSB. Thus, in accordance with the applicable rules, once the December 13, 2012 ERSB was convened, Major Denault had no role or influence over the actual decision making process and deliberations of the board members. Id. ¶ 15. In this regard, the decision not to select Plaintiff for promotion to Master Gunnery Sergeant belonged solely to the assembled members of the ERSB, who were fellow Marines and who had no role in Plaintiff's prior promotion boards. Id. ¶ 14(b).

B.     **Notice Requirement and Submission of Materials to the ERSB**

Plaintiff asserts that he was entitled to some form of advance notice of the convening of the December ERSB, which he did not receive, and that this lack of notice negatively affected his chance of promotion. See Doc. No. 44 at 5. Specifically, Plaintiff complains that the lack of notice prevented him from supplying supplemental materials to the ERSB, materials that he clearly believes would have aided in his quest for promotion. Id.

However, none of the applicable regulations include an advance notice requirement following the Marine's application for remedial consideration. In accordance with those regulations, MMPR-2 does not notify Marines receiving remedial consideration of the date and time of the board, and there is no opportunity for those receiving remedial consideration to appear in person before the board. See Denault Decl. ¶ 4. The only correspondence requirement is for notification of the board's decision to be sent to the Marine or command, following approval of the results by the CMC or his designated representative. See generally MCO P1400.32D, at ¶¶ 3600-3605 (pg. 3-29 to 3-34); see also MCO 5420.16D, at ¶ 5(b)(2) (pp. 4 of 5). Further, the ERSB is required to function under the selection precepts (*i.e.*, substantive

selection criteria) in place at the time of the original selection board.[12] As stated explicitly in MCO P1400.32D, "the ERSB is prohibited from considering material (i.e., fitness reports, commendatory/adverse material) regarding events occurring after the regularly convened selection board for which remedial promotion consideration has been granted." See MCO P1400.32D, at ¶ 3601(2) (pg. 3-29).

Thus, any materials Plaintiff would have provided that referenced events occurring after his original FY 2004 selection board would not have been seen nor considered by the December 13, 2012 ERSB. See Denault Decl. ¶¶ 4, 7. Instead, the board had access to the same materials, documents and records that were available to the original FY 2004 and FY 2005 boards. See id. In fact, contrary to Plaintiff's assertions, commendatory materials were provided to the board when they considered him for promotion in the FY 2005 board. See AR 570-585. Based on the regulations and the administrative record, the December 13, 2012 ERSB was presented with the appropriate materials and voted not to promote Plaintiff based on that record. See Denault Decl. ¶ 12.

### C. Selection Procedure

Although Plaintiff clearly disagrees with the decision of the December 2012 ERSB, that decision was made in accordance with applicable regulations. Although Plaintiff correctly notes that ERSBs are tasked with selecting "fully qualified" Marines versus "best and fully qualified" Marines at the regular selection boards, this linguistic distinction is only meant to convey that the selection quotas used to limit the number of Marines that can be promoted in a given fiscal year are not in place for remedial selection. See MCO P1400.32D, at § 3601(3) (pg. 3-29); see also

---

[12] This is distinguished from the procedures in place to constitute the board. See supra, footnote 1.

MCO 5420.16D, at ¶ 4(c)(9) (pg. 3 of 5). It in no way establishes a policy where any Marine who has met basic qualification standards is entitled to automatic promotion to the next higher paygrade, as Plaintiff suggests in his case. See Denault Decl. ¶ 10. A recommendation from his commanding officer also does not guarantee that a Marine receiving remedial consideration will be promoted. See id. ¶ 13. For a Marine receiving remedial consideration to be promoted, he or she must receive a majority vote of selection from the assembled members. See MCO 5420.16D, at ¶ 4(c)(10) (pg. 4 of 5). The members' votes are based on a thorough review of the Marine's record and comparison to the records of both Marines selected for promotion at the original selection board and Marines who were not selected at the original board.

However, because a Marine receiving remedial consideration is compared only to other Marines in the same military occupational specialty, component and category, there may not be records in both the selected and nonselected categories for comparison. See MCO P1400.32D, at ¶ 3603(1) (pg. 3-33). When there is a lack of proper comparison records, as in the case of Plaintiff's FY 2004 remedial consideration, the Marine is given remedial consideration based on his individual performance record, and the promotion decision is based on whether the board members consider the Marine to be "fully qualified and capable of assuming the duties of the next higher grade." See Precept Convening the Enlisted Remedial Selection Board, December 12, 2012, AR 342; see also Denault Decl. ¶¶ 9, 14(a). The December 13, 2012 ERSB had access to Plaintiff's Official Military Personnel File. See generally AR 355-569. Importantly, *none* of the material related to both his civilian incarceration and prior nonselections was included in the FY 2004 consideration. AR 355-569. For the FY 2005 board, the ERSB had access to additional supplemental documents that were provided by Plaintiff in advance of the original

board.  AR 570-585.  In this regard, there is nothing in the administrative record to suggest that the ERSB's decision was based on improper materials in Plaintiff's file or contrary to the appropriate regulations.

### D.    Review for Consecutive Fiscal Years

Following this Court's remand order of September 28, 2102, the Marine Enlisted Promotion Section took steps to ensure that Plaintiff received proper remedial consideration for promotion.  The order directed that Plaintiff be placed in the same position he would have been had there been no error in his eligibility date or improper consideration by the 2005 ERSB.  See Doc. Nos. 39-40, 42.  In accordance with the Court's orders, MMPR-2 forwarded Plaintiff's record to the December 13, 2012 ERSB for remedial consideration for promotion to Master Gunnery Sergeant in FY 2004 and FY 2005.  See Report of Enlisted Remedial Selection Board, December 2012, AR 350; see also Precept Convening the Enlisted Remedial Selection Board, December 12, 2012, AR 342.  Although the order of this Court only explicitly directed remedial consideration for FY 2004, it was determined by MMPR-2 that Plaintiff would have been eligible for the FY 2005 board as well had there been no error in his record, and per regulation, Marines are typically granted remedial consideration for all selection boards affected by the error or injustice, beginning with the first board following the error or injustice.  See Denault Decl. ¶ 6; see also MCO P1400.32D, at ¶ 3602(6) (pg. 3-32).  Thus, Plaintiff was given remedial consideration for two different fiscal years.  This also allowed the ERSB to review supplemental commendatory materials that had been provided by Plaintiff after the original FY 2004 board but prior to the FY 2005 selection board.  AR 570.

Plaintiff asserts that this second review by the same ERSB panel negatively affected his chances for selection. There is nothing in the applicable regulations or administrative record to support this claim. As evidenced by the report of the December 2012 ERSB, it was not merely a "rubber stamp" for non-promotion at a second or even third fiscal year. For instance, other Marines receiving remedial consideration that day were selected for promotion while being reviewed for multiple fiscal years. AR 350-351 (note Marines in IMOS of 0111 and 0369); <u>see also</u> Denault Decl. ¶ 7.

Even if the decision to grant Plaintiff remedial consideration for a second fiscal year was in error, there is nothing to suggest that Plaintiff will be in any way prejudiced by having two non-selections in his record, as he attests. The BCNR has a full understanding of the applicable regulations granting remedial consideration for consecutive years if eligible. <u>See</u> Denault Decl. ¶ 11. As discussed below, the number of non-selections does not affect his eligibility to appeal to the BCNR. In fact, the decision to grant Plaintiff a second review at the ERSB was a benefit that most Marines seeking remedial consideration are not granted. The time limit for requesting remedial consideration is three years after the date the contested board results are released. If Plaintiff were to decide in the future to challenge his lack of consideration by a FY 2005 board, he would not be eligible for a grant of remedial consideration. <u>See</u> MCO P1400.32D, at ¶ 3602(2) (pg. 3-30).

**II.    There is no Procedural Bar to Review of the December 2012 ERSB Decision by the BCNR**

Plaintiff also complains that he is in some way prohibited from appealing the decision of the December 13, 2012 ERSB to the BCNR. This claim is completely without merit. There is no statutory limitation on the number of times an individual can seek relief from the BCNR. The

applicable instruction requires that applications for correction of a record be filed using DD 149 (Application for Correction of Military Record), within three years of the discovery of the alleged injustice.  The time requirement also can be waived at the discretion of the Board.  Even if the BCNR were to view Plaintiff's application as a request for reconsideration, he would only need to present new material not previously considered by the Board.  See generally SECNAVINST 5420.193, 1997 (Encl. 1).  This requirement is satisfied by the new results generated by the December 13, 2012 ERSB.

In summary, the Commandant of the Marine Corps has authorized MMPR-2 to execute Enlisted Remedial Selection Boards pursuant to the applicable Marine Corps regulations.  The administrative record demonstrates that the Marine Corps' ERSB convened on December 13, 2012 operated correctly and appropriately, in accordance with MCO P1400.32D and MCO P5420.16D, and in accordance with this Court's orders.  Indeed, nothing in the record indicates that the Marine Corps violated its regulations or ran afoul of what it was required to do in this case.  Furthermore, even assuming that the Marine Corps acted erroneously in reviewing Plaintiff for two consecutive fiscal year selection boards, there is no evidence that Plaintiff was prejudiced by such actions.  To the contrary, such an "error" gave Plaintiff an *additional* opportunity to receive the promotion he seeks.

In light of the foregoing, that Plaintiff disagrees with the determination of the ERSB does not mean that further review by this Court or another ERSB is warranted.  As such, Defendants are entitled to judgment in their favor and this case should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in favor of Defendants and against Plaintiff with prejudice.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

/s/ Jennifer R. Andrade
JENNIFER R. ANDRADE
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7354
*Attorney for Defendants*

Of Counsel:
LT Matthew R. Roush, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
1322 Patterson Avenue, SE, STE 3000
Washington Navy Yard, DC 20374

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing *Brief in Support of Defendant's Renewed Motion for Summary Judgment* was served via electronic filing and/or first-class mail upon the following:

James S. Frazier, Jr.
Post Office Box 224
McKeesport, PA 15134
*Pro se Plaintiff*

Dated:   June 24, 2013

<u>s/ Jennifer R. Andrade</u>
JENNIFER R. ANDRADE
Assistant U. S. Attorney