IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JAMES S. FRAZIER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-500 |
| | ) | |
| vs. | ) | Chief Magistrate Judge Lisa P. Lenihan |
| | ) | ECF No. 61 |
| SECRETARY RAY MABUS, U.S. | ) | |
| DEPT. OF THE NAVY; EXECUTIVE | ) | |
| DIRECTOR W. DEAN PFEIFFER, BOARD | ) | |
| FOR CORRECTION OF NAVAL RECORDS | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDUM OPINION ON DEFENDANTS' RENEWED
MOTION FOR SUMMARY JUDGEMENT**


**I.   SUMMATION**

The Renewed Motion for Summary Judgment filed by Defendants Secretary Ray Mabus,

U.S. Dept. of the Navy (hereafter the "Navy"), and Executive Director W. Dean Pfeiffer, Board

for Correction of Naval Records (hereafter the "BCNR") (also collectively "Defendants"), in this

*pro se* plaintiff's action for reconsideration of his remedial promotion will be denied and the case

again remanded.  The case is appropriate for review on the administrative record.  The Court

maintains, in this case reopened on Plaintiff's petition and with Defendants' consent, its (a)

original jurisdiction, under 28 U.S.C. Section 1331, over Plaintiff's equitable claims arising from

final federal agency action under federal regulations, and regarding the actions of Defendants under the Administrative Procedure Act (the "APA"), 5 U.S.C. Section 701 *et seq.*; and (b) concurrent jurisdiction with the Federal Court of Claims, under 28 U.S.C. § 1346 (the "Little Tucker Act"), over Plaintiff's claims for potential money damages arising from remedial promotion and limited to an amount under $10,000, as amended.[1]

The Court further finds that the present record, containing the documentation related to Defendants' interpretation and implementation of its regulations, policies and/or procedures in considering Plaintiff's remedial promotion on remand, reflects that the Enlisted Remedial Selection Board ("the ERSB") was expressly directed to apply a standard to its consideration of Plaintiff's qualification for promotion that was (a) inconsistent with Defendant's own governing regulatory policies and/or (b) an unreasonable interpretation thereof. Defendant's conduct thus did not comply with the Court's Order and unfortunately requires that this now nine-year-old matter again be remanded for proper review and reconsideration in accordance with this Court's September 28, 2012 Memorandum Opinion (the "September, 2012 Opinion"). The Court fervently hopes that this case will not follow a course of repeated remands similar to that of Pettiford v. Sec'y of the Navy, 2012 WL 1548271 (D.D.C. May 3, 2012), which imposed significant time and financial burdens on increasingly limited Federal judicial resources.[2]

---

[1] See Plaintiff's Motion for Second Amendment (waiving "any monetary remedy in excess of $10,000").

[2] Cf. Eugene R. Fidell, "The Boards for Correction of Military and Naval Records: An Administrative Law Perspective", 65 Admin. L. Rev. 499 (Spring 2013) (describing Pettiford Federal Court proceedings from 2005 through 2012, entailing 5 remands).

## II. **PRIOR FACTUAL AND PROCEDURAL HISTORY**

In the interest of judicial efficiency, this Court will not reiterate the full factual and procedural history set forth in Section II of its September 2012 Opinion , which facts are all well known to the parties and this Court. It observes that Plaintiff alleged that the United States Marine Corps' selection board decision denying his remedial promotion to Master Gunnery Sergeant was in violation of Defendants' regulatory policies/procedures, and the BCNR's denial of his related petition(s) for correction/redress was therefore contrary to law. He sought retroactive promotion to Master Gunnery Sergeant, with related adjustment of his retirement rank, and revision of his military record.

In brief, due to Defendants' record-keeping error, Plaintiff was not included with other Marine Corps candidates for consideration for promotion to Master Gunnery Sergeant – a promotion for which he was otherwise eligible for consideration – when the Marine Corps' regularly-scheduled selection board for Staff Non-Commissioned Officers (the "SNCO Board") convened in January, 2004 and made its annual review and promotion recommendations for Fiscal Year 2004 ("FY 2004").

The error was discovered, and on March 15, 2005 Plaintiff's Commander requested that Plaintiff be given remedial consideration by the ERSB.[3] Within a week, Plaintiff was arrested on charges of attempted second degree murder arising from a domestic shooting incident involving

---

[3] Although Defendants attest, through the Affidavit of Maj. DeNault, that a commander's recommendation "in no way *guarantees* or *results in* a Marine's promotion" they do not indicate whether the denial of promotion to a recommended Marine is commonplace. The phrasing suggests it is not. Supplemental Record, Ex. H – Declaration of Maj. DeNault at para. 13. See also *infra*, noting that Plaintiff was the only one of the six Marines considered by the December, 2012 ERSB to be denied a promotion recommendation.

his son, another Marine. Plaintiff was acquitted (on self-defense) following a civilian criminal trial concluding in late March, 2007.[4] However, Plaintiff had been incarcerated from March 21, 2005 to July 26, 2005, and again from August 23, 2006 to March 26, 2007.

On May 11, 2005, during Plaintiff's initial period of incarceration, the ERSB nonetheless proceeded with its scheduled consideration of Plaintiff's remedial promotion and he was not recommended. In addition, on September 2, 2005, Plaintiff received an Other Than Honorable ("OTH") discharge, with a re-enlistment code of RE-4, rendering him ineligible for re-enlistment, and a demotion. Several months after criminal acquittal, in December, 2007, the BCNR restored Plaintiff's rank to Master Sergeant and transferred him to the Retired Reserve effective September 2, 2005 (the date he had been discharged).

In March, 2008, Plaintiff requested that the promotion restriction and passed-over promotion entries be expunged and that he receive remedial consideration for promotion to Master Gunnery Sergeant.[5] This petition, and Plaintiff's request for reconsideration, was denied by the BCNR. Plaintiff instituted this action in April, 2010, but it was dismissed upon the parties' Joint Stipulation and agreement that the BCNR would reconsider Plaintiff's petition. (ECF Nos. 14-15). In August, 2011, the BCNR again denied Plaintiff's petition, concluding that there was no "probable material error or injustice" where Plaintiff was eligible to be considered for promotion by the ERSB because he "was not in confinement when the regular promotion board [i.e., the 2004 SNCO Board] convened."

Plaintiff's December 14, 2011 Amended Complaint brought claims under the APA, 5 U.S.C. Section 706, and other statutory provisions. The fundamental question before this Court

---

[4] See Original Record ("R.") at 216.

[5] Plaintiff's retirement pay is tied to his designated pay grade.

was whether, under the APA, the Defendants' interpretation was plainly erroneous or inconsistent with its regulations, and thus "contrary to law." See, *e.g.*, Pettiford v. Sec'y of the Navy, 2012 WL 1548271, *5 (D.D.C. May 3, 2012) (applying standard of review to Marine Corps' promotional regulations, rules and policies for "selection boards").

The Court concluded, in its September, 2012 Opinion, on Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, that the Navy and United States Marine Corps (hereafter the "Marine Corps") violated binding agency regulations in considering Plaintiff's promotion when he was incarcerated on civilian criminal charges, and the BCNR's denial of Plaintiff's challenge to that invalid proceeding was thus outside the agency's authority or discretion and contrary to law. In light of the (a) nonjusticiability of his remedial promotion, and (b) subjective/discretionary considerations applicable under the Marine Corps rules and regulations governing Plaintiff's qualification for promotion, the Court returned the case to the Defendants for further proceedings – to be undertaken in accordance with relevant law and that Opinion. It issued an Order dated September 28, 2012 remanding the case to the BCNR and, on Defendants' request, an amended Order dated October 25, 2012 remanding the case directly to a new ERSB (ECF Nos. 41-42).

### III.  SUBSEQUENT FACTUAL AND PROCEDURAL HISTORY

On December 13, 2012, Plaintiff and five other Marines were reviewed by an ERSB convened by the Defendants' Promotions Branch. See Defendants' Brief in Support of Renewed Motion for Summary Judgment ("Defendants' Brief in Support of RMSJ") at 1; Supplemental Record at 350 (Record of Proceedings of the December 13, 2012 ERSB). Plaintiff was given remedial consideration for the years for which he would have been eligible for consideration by

the annual SNCO Board, *i.e.* 2004 and 2005.[6]  And Plaintiff, *unlike each of the other five Marines considered by that December, 2012 ERSB Board*, was not recommended for promotion. Rather, he received an unfavorable determination for both 2004 and 2005.  Supplemental Record at 350.

   In considering Plaintiff's qualification for promotion, Defendants maintain that the ERSB acted under the revised regulatory policies and provisions of Marine Corps. Promotions Manual MCO P1400.32D and Order 5420.16D (pertaining to ERSB procedures and remedial recommendation criteria and dated November, 2008), see Defendants' Brief in Support of RMSJ at 2-3,[7] and was further subject to the requirements of the Defendants' Precept convening that particular Board (the "December, 2012 Convening Precept"), see *infra* at Section IV(B).  The ERSB had, in accordance with governing regulations, access to only the same materials, documents and records that would have been available to the original annual SNCO Boards for FY2004 and FY2005, respectively.  Thus, "commendatory materials" which post-dated the 2004 SNCO Board "were provided to the [ERSB] when they considered [Plaintiff] for promotion in the FY 2005 board."  Defendants' Brief in Support of RMSJ at 14; see also id. at 16 (noting that remedial consideration for 2005 "allowed the ERSB to review supplemental commendatory

_____

[6]  See Defendant's Brief in Support of RMSJ at 16 (noting that had there been no error in his record, Plaintiff would have been eligible for the 2004 and 2005 boards and "Marines are typically granted remedial consideration for all selection boards affected by the error or injustice, beginning with the first board following"); id. at 17 (noting that other Marines considered were also reviewed for multiple fiscal years).  See also MCO 1400.32, para. 3602(6) (same); Supplemental Record, Ex. H – Declaration of Maj. DeNault at para. 6-7; Supplemental Record at 350 (Record of Proceedings of  December, 2012 ERSB in which four of six candidates were considered for multiple years).

[7]  Cf. September, 2012 Opinion at 10 (noting, with citation to Defendant's Brief and Appendix B (Marine Corps Manual) that "regulatory promotional policies and procedures are . . . 'contained in the Marine Corps Promotion Manual and other directives'").

materials"). The ERSB members' votes were "based on a thorough review of [Plaintiff's] record and comparison to the records of both Marines [in the same military occupational specialty, component and category] selected for promotion at the original selection board and Marines who were not selected at the original board." Id. at 15. Because there were no comparison records for Plaintiff's 2004 remedial consideration, it was "based on his individual performance record" and "whether the [ERSB] considered [Plaintiff] to be 'fully qualified and capable of assuming the duties of the next higher grade.'" Id. (quoting December, 2012 Convening Precept); see also Supplemental Record, Ex. H – Declaration of Maj. DeNault at para. 14(a), id. at 354 (January 2, 2003 correspondence from Maj. DeNault to Plaintiff ). For 2005, Plaintiff's record was considered "along with the record of the comparable select and non-select of the same MOS and category (IRR)." Id.[8]

By Motion of March 13, 2013 (ECF No. 43), Plaintiff requested that the case be reopened for further judicial review and Defendants responded that they had no objection. See Defendants' Response to Plaintiff's Motion to Reopen (ECF No. 45) at 2-3. A conference was held on April 18, 2013, and Defendants were directed to demonstrate compliance with the Court's Order. See Defendants' Brief in Support of RMSJ and Supplemental Record. See generally, Transcript of Proceedings.

---

[8] An "MOS" is the Marine's military occupational specialty. See September, 2012 Opinion at 11 (providing citations). The "IRR" is the component of the Marine Corps Reserve to which Plaintiff belonged, the Individual Ready Reserve, comprised of those who previously served in active duty. See id. at 3 n. 4. These two components are sometimes referred to herein collectively as Plaintiff's comparison or comparable category.

## IV. RELEVANT MARINE CORPS PROMOTIONAL PROCEDURES; STATUTORY PROVISIONS AND REGULATIONS

### A. Previously Noted Applicable Procedures and Provisions

Here again, this Court will not fully reiterate its September, 2012 Opinion's comprehensive summary of the extensive regulations for administration of the Marine Corps Reserve Components, and the Appendix and Exhibits initially provided by Defendants. See September 2012 Opinion at 9-15. For purposes of the Court's analysis of Defendants' conduct on remand, it observes that the applicable administrative regulations were prescribed in the MCR Administration Management Manual ("Order P1001R.1J") of March 10, 1999, and that the applicable, binding standards for promotion were contained in the regulatory provisions of the Marine Corps Manual. In addition, the regulatory promotional policies and procedures were contained in the Marine Corps Promotion Manual in effect for the time relevant to this action, which was dated October 30, 2000 (Order or MCO "P1400.32C"; hereafter also the "Promotion Manual"). See September 2012 Opinion at 10 (noting, with citation to Defendants' Brief and Exhibits, that 2000 Promotion Manual was superseded by MCO P1400.32D in May, 2006).[9] The Promotion Manual is "the authority for all enlisted promotions in the Marine Corps." Id.

The Court further observes that, as summarized in its September 2012 Opinion, *promotion of Staff Non-Commissioned Officers ("SNCOs") such as Plaintiff was based on recommendations made by annual selection boards and limited to the allowable number of Marines that could be recommended promotions for each occupational field/MOS (the "allocations" or "allotments"). The annual selection boards determined the "best and fully*

---

[9] Chapter 1 of the Promotion Manual covers general policies, including Section 1203 Promotion Policies and 1204 Promotion Restriction; while Chapter 3 sets forth the promotional policies and procedures for SNCO Board promotions.

qualified" candidates utilizing their Official Military Personnel Files ("OMPFs") and based on "demonstrated performance [], leadership, professional and technical knowledge, experience, growth potential, motivation, military proficiency, physical fitness, personal appearance, conduct, moral character and maturity." <u>See</u> September 2012 Opinion at 11 (quoting Exhibits and Promotion Manual 1400.32C at para. 3100(1)). Marine SNCOs not properly considered by the relevant regular selection board could be granted discretionary remedial consideration by the ERSB, which convened as necessary. *Because ERSBs "were not constrained by the allocation restrictions applicable to the regularly scheduled boards", they "were tasked with selecting 'fully qualified' [rather than 'best and fully qualified'] Marines."* <u>Id.</u> at 11-12 (quoting Defendants' Brief, which cited Promotion Manual 1400.32C and the additional Promotional Directive issued July 21, 2000 "concerning the operation and function of the ERSB" – MCO 5420.16C – Original Record Ex. C & D). In addition, the record of any Marine referred to the ERSB was redacted to prevent consideration of material that post-dated the regularly scheduled selection board for which the remedial promotional consideration was granted. <u>Id.</u> at 12.

Finally, as noted in the September 2012 Opinion at 13-15:

a) the applicable <u>Promotion Manual</u> (MCO P1400.32C) provides:

Para. 1203.1– "This Manual is the authority for all enlisted promotions in the Marine Corps. Promotions not effected in accordance with this Manual or by implementing directives not referenced in this Manual will be considered erroneous and immediately revoked. There are no waivers to this policy."

Para. 3601.2 – *"The CMC stipulates that the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB in their deliberations" excepting that "remedial boards are tasked with selecting 'fully qualified' [versus*

9

"best and fully qualified"] Marines, as allocation restrictions are not applicable." In addition,

"The ERSB is guided by the ERSB precept and the precepts used during the regularly convened

selection board for which remedial consideration has been granted." (emphasis added)

And (b) the applicable <u>ERSB Promotional Directive</u>, dated July 21, 2000 (MCO

5420.16C) provided:

<u>Exclusivity</u> - "*[T]he guidance and procedures contained herein or specifically referenced . . . are considered the sole guidance and procedures governing the ERSB.*"

<u>Specific Guidance Concerning Remedial Promotions</u> - "*[T]he ERSB will be guided by the precept, procedural rules, policies, and regulations in effect when the respective regularly scheduled promotion selection board was in session . . . . The ERSB is not constrained by the selection allocations in effect at the time of the regularly scheduled board . . . . The primary consideration of the ERSB will be a comparison of the record of the Marine . . . to the records of the Marines selected by the regularly scheduled board . . . .*"[10]

## B. **Additional Applicable Procedures and Provisions**

Defendants issued a Precept Convening the Enlisted Remedial Selection Board, dated

December 12, 2012. <u>See</u> Defendants' Brief in Support of RMSJ at 12 (citing Supplement

Record at 342). This Precept convened the particular ERSB considering Plaintiff's (and five

other Marine's) qualification for promotion the following day, and directed that ERSB to comply

with the instructions governing the relevant SNCO Board, with exceptions including:

> The ERSB will utilize a sampling of records of Marines in each competitive category/IMOS who were recommended for promotion. The sampling of records provides a relative base from which the ERSB can determine *which Marines*

[10]   As discussed *infra*, MCO 5420.16C was superseded by Order 5420.16D in November, 2008.

*eligible for remedial consideration are* in the opinion of the majority of the ERSB members, *better qualified for promotion than the Marines who failed selection* by the regularly scheduled selection board *and equally or better qualified for promotion than the Marines who were selected* by the regularly scheduled selection board.

December 12, 2002 Precept at para. 5(a), Supplemental Record at 343 (emphasis added).[11]

## V. <u>DEFERENTIAL STANDARD OF REVIEW</u>

The applicable standards are explicated more fully in the September 2012 Opinion. In general, summary judgment is an appropriate mechanism at this time. <u>See Concerned Citizens Alliance, Inc. v. Slater</u>, 176 F.3d 686, 693 (3d Cir. 1999). And the administrative record provides the factual predicate for the Court's review. <u>Fuller v. Winter</u>, 538 F.Supp.2d 179, 185 (D.D.C. 2008).

This Court is now charged - in considering , in this reopened case, Defendants' proceedings on remand as directed by this Court in September, 2012 - to determine whether Defendants' remand proceedings were in compliance with the Court's Order, and whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Section 706(2)(A).

---

[11]  <u>Cf. id.</u> at para. 5(b) (stating that years 1999 and earlier, the official military personnel record of the candidate would be compared to the record of Marines *selected* by the SNCO, while for 2000 and later, the comparison would be to records of Marines *considered,* in the same competitive category).

This convening Precept concludes, somewhat peculiarly in light of para. 5(a), that "The report of the board shall also certify that the board has carefully considered the record of each Marine whose name was furnished to it. However, the certification for this board shall replace the best and fully qualified certification with the following: 'That the Marines recommended for promotion are, in the opinion of the majority of the members of the board, fully qualified for promotion.'" <u>Id.</u> at para. 6.

As noted in the September 2012 Opinion, an agency action is not "arbitrary and capricious if [it] is rational, based on relevant factors, and within the agency's statutory authority." Motor Veh. Mfgrs. Ass'n v. State Farm Mut., 463 U.S. 29, 42-43 (1983). And "valid promulgated regulations have the force of law." Frisby v. U.S. Dep't of Hous. & Urban Dev., 755 F.2d 1052, 1055-56 (3d Cir. 1985) (citations omitted). "[T]he agency itself is bound by its own regulations . . . . Failure on the part of the agency to act in compliance with its own regulations is fatal to such action . . . . " Id. (citations omitted). In addition, the *agency's interpretation commands substantial deference* and controls *unless* "*plainly erroneous or inconsistent with the regulations being interpreted*" or "there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter". Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945) (emphasis added).

The Court's review focuses on the agency's decision-making process, and not on the decision. See, *e.g.*, NVE, Inc. v. Dep't of Health & Human Services, 436 F.3d 182, 190 (3d Cir. 2006)). For purposes of judicial review under the APA, there exists a strong but rebuttable presumption that administrators of the military discharge their duties correctly, lawfully, and in good faith. See, *e.g.*, Lechliter v. Rumsfeld, 181 Fed. Appx. 266, 269 (3d Cir. 2006) (citing Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C.Cir.1989)). "Despite the deferential standard of review, judicial review must nevertheless be meaningful; a court is 'not empowered to rubber-stamp the Board's decision . . . .'" Id. at 545 -546 (citations omitted). And *'[i]n practice . . . the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action*." Kreis v. Sec'y of the Air Force, 866 F.2d at 1514 (emphasis added).

## VI. <u>ANALYSIS</u>

After careful and thorough review of both the previous submissions of record and all supplementing materials provided by the parties with regard to the Defendants' ERSB proceedings and determination on remand, the Court can only conclude that Defendants have again made and effectuated an interpretation of governing provisions which is inconsistent with the plain language of the core, binding agency documents. Because Defendants have again failed to proffer a reasonable (and thus permissible) construction, Defendants' determination on remand unfortunately again fails the deferential standard of review.

As noted in Section III, *supra*, Defendants maintain that they applied the provisions of Promotions Manual 1400.32D, para. 3601(2) which provides:

> The CMC stipulates that the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB . . . . However, where regularly scheduled selection boards are tasked with selecting the "best and fully qualified" Marines; remedial boards are tasked with selecting "fully qualified" Marines, as allocation restrictions are not applicable. *The ERSB will utilize a sampling of records of Marines in each competitive category who were recommended for promotion, and records of Marines in each competitive category who were not recommended for promotion. The sampling of records provides a relative base from which the ERSB can determine which Marines eligible for remedial consideration are fully qualified for promotion by comparing their records to both those selected by the regularly scheduled selection board and those not selected by the regularly scheduled selection board.* The ERSB is guided by the ERSB precept and the precepts used during the regularly convened selection board for which remedial consideration has been granted.

MCO 1400.32D, Para. 3601(2) (emphasis added). <u>See also</u> Defendants' Brief in Support of RMSJ at 2-4. <u>Compare</u> Promotions Manual MCO 1400.32C, Para. 3601.2 ("The CMC stipulates that the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB in their deliberations" excepting that "remedial boards are tasked with selecting 'fully qualified' [versus "best and fully qualified"]

Marines, as allocation restrictions are not applicable." In addition, "The ERSB is guided by the ERSB precept and the precepts used during the regularly convened selection board for which remedial consideration has been granted." ). And they maintain that they applied MCO 5420.16D, the Order governing ERSB proceedings, as revised effective Nov. 2, 2008, which provides - as did MCO 5420.16C, effective in 2000 - that "the primary consideration of the ERSB will be a comparison of the record of the Marine granted remedial consideration *to the records of the Marines selected by* the regularly scheduled board before which the Marine has been granted remedial consideration." See also Defendants' Brief in Support of RMSJ at 4; Supplemental Record Ex. F at pp. 4-5.

As Promotions Manual 1400.32C contained the regulations applicable to the 2004 and 2005 annual SNCO Boards, it was still the version applicable on remand. See September 28, 2012 Order directing that Plaintiff be "placed, for purposes of remedial promotional consideration, in the same place he would have been had he been correctly considered." See also MCO 5420.16C ("[T]he ERSB will be guided by the precept, procedural rules, policies, and regulations in effect when the respective regularly scheduled promotion selection board was in session."). Compare Defendants' Brief in Support of RMSJ at 2, n. 1 (asserting, incorrectly, that because MCO P1400.32 was subsequently revised, the newer version was applicable to the December, 2012 ERSB). See id. at 18 (noting that the December 2012 ERSB "operated correctly and appropriately in accordance with MCO P1400.32D and MCO P5420.16D and . . . this Court's orders"). Thus, although the direction of Defendants' December, 2012 Convening Precept - indicating that the ERSB was to compare the qualifications of those candidates for remedial promotion to the qualifications of both selected and non-selected officers – conformed to the provisions of Promotions Manual 1400.32D, it did *not* reflect the provisions of the

14

applicable Promotions Manual 1400.32C, nor the provisions of MCO 5420.16, version C or D.[12]

These apparent errors are, however, as elaborated *infra*, of little moment to this Court's

decision.[13]

What *is* of great moment to the validity of Defendants' proceedings on remand is that

Defendants' December, 2012 Convening Precept went on to expressly require that the remedial-

selection candidates exceed the qualifications of candidates not selected, and meet or exceed the

qualifications of those comparison category candidates selected, by the relevant SNCO Board.  It

is for this reason that the case must be remanded.  For this requirement simply *cannot* be

reconciled with Defendants' own express, binding regulatory policy that – because the regular

promotion year *allotments* are not applicable, and therefore do not restrict the promotion of

qualified Marines who were erroneously omitted from consideration by an annual board - an

ERSB is to make a selection determination to the standard of "fully qualified" rather than "best

and fully qualified".  <u>See</u> Defendants' Brief in Support of RMSJ at 4.  By requiring that Plaintiff

---

[12] <u>Cf.</u> *supra* at 9 (quoting MCO 5420.16 as providing sole "guidance and procedures governing the ERSB").

  Cf. also <u>Pettiford v. Sec'y of the Navy</u>, 2012 WL 1548271, *6  (D.D.C. May 3, 2012); <u>id.</u> at *2-3 (quoting Marine Corps Advisory Opinion that effective in 2000, "each regular SNCO Board began selecting comparison cases from each competitive category to be used for comparison by" remedial boards and candidates' Official Military Personnel Files ("OMPFs") were used); Supplemental Record Ex. H – Declaration of Maj. DeNault at para. 8-9 (noting that for 2004 (Plaintiff's "case was archived as *the* non-select comparison case" and that there was a "shortfall" in his category for that year's allotment).

[13] This is fortunate given that the Court's parsing of the record has rendered a determination of the MCOs *actually applied* by the December, 2012 ERSB elusive.  <u>See, *e.g.*</u>, Supplemental Record at 354 (January 2, 2003 correspondence from Maj. DeNault to Plaintiff ) (indicating this Court's Order and MCO P1400.*32C* as the "references" in "accordance with" which Plaintiff "received remedial consideration"; <u>id.</u> at 347 (Record of Proceedings of December, 2012 ERSB stating only compliance with MCO 5420.16 without reference to its version or to any version of MCO P1400.32).

could not be recommended for promotion unless he was *at least as qualified as those Marines determined to be the best of the fully qualified candidates before the annual boards, Defendants' December, 2012 Convening Precept expressly subjected Plaintiff (and the other Marines given remedial consideration at that time) to a standard which the governing regulatory policies directed <u>not</u> be applied*.

Defendants' assertion that this "linguistic distinction" - made in regulatory policies directing that the annual SNCO Boards are tasked with selecting the "*best and fully qualified*" candidates, while ERSBs are to select "*fully qualified*" candidates for promotion - "is only meant only to convey that the selection quotas used to limit the number of Marines that can be promoted in a given fiscal year are not in place" and, correspondingly, that the distinction has *no actual import as to selection standards applied*, is facially unreasonable.  Defendants' Brief in Support of RMSJ at 14.  <u>Cf.</u> <u>id.</u> at 9 ("[T]he critical question here is whether the Board followed proper procedure, applied facts rationally connected to its decision, and provided a reasoned basis for its decision.") (citing <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mutual</u>, 453 U.S. 29, 43 (1983)).  <u>Compare</u> Supplemental Record, Ex. H – Declaration of Maj. DeNault at para.10 ("Selecting Marines for remedial promotion is not as difficult as selecting Marines competitively because the Marine is not competing for an allocation.").

As Defendants are aware, the Court does not disagree with their observation that the regulatory standard for promotional recommendation by an ERSB, *i.e.*, whether the Marine is "fully qualified", "in no way establishes a policy where any Marine who has met basic qualification standards *is entitled to an automatic promotion*".  <u>Id.</u> at 14-15.  Indeed, the Court's prior Opinion extensively observed that the applicable regulations include consideration of subjective and discretionary criteria in assessing whether an individual candidate for promotion

is "fully qualified".[14]

It may well be that (a) Defendants' long-standing distinction between the annual SNCO Board's recommendation, owing to "allotment" limitations, of the *best from amongst the fully qualified candidates* (because not all fully qualified candidates may be promotable if positions are unavailable), and a Remedial Selection Board's recommendation of *any fully qualified candidate* (because the allotments are inapplicable to the error-correction-based convening of the special remedial board) and (b) Defendants' adoption of Orders/Precepts/Directives by which candidates before an ERSB are evaluated with reference to candidates selected for that same promotion category by the applicable annual SNCO Board, are reconcilable. This would be so, for example, where the ERSB looks to the records of annual SNCO Board selected candidates to inform their assessment of the subjective components of the "fully qualified" standard (*i.e.*, what do we look to in assessing, *e.g.,* growth potential, motivation, proficiency, appearance, moral character).

It may even be that the distinction between "best and fully qualified" and "fully qualified" can be interpreted consistently with MCO 1400.32(D), para. 3601(2)'s further

---

[14]  See September, 2012 Opinion at 11, 34 (citing Defendants' Brief and quoting Promotion Manual) (also citing Defendants' Reply Brief at 3 (citing, *e.g.*, MCO 1400.32C at Para. 3200(6) including subjective prerequisites of "exceptionally high degree of leadership and supervisory ability and ability to act independently"); Promotion Manual, para. 1100(19) Definitions; Fully Qualified ("A Marine that has completed the required Professional Military Education (PME) for selection to the next higher *grade and is capable of assuming the duties and responsibilities of that grade*.") (emphasis added); id. at para. 3100(1) Selection Boards, General ("In the course of their evaluations, selection boards consider demonstrated performance/achievement, leadership, professional and technical knowledge, experience (type and level), growth potential, motivation, military proficiency, physical fitness, personal appearance, conduct, moral character, and maturity.")). Cf. Advisory Opinion of June 25, 2008 (observing that Plaintiff would not be promotable "simply because he was the only Marine being considered" because each selection board has discretion). R. at 139.

direction that the ERSB utilize a "sampling of records" of those selected *and not selected* as a "relative base" for determining whether a candidate for remedial promotion is "fully qualified", so long as the comparison is used only to inform a subjective assessment of specified criteria/characteristics and *not* to ground a *clearly invalid conclusion* that any individual not selected by the SNCO Board was not "fully qualified" (*i.e.*, that if Plaintiff's record was deemed most comparable to that of an annual candidate who was not promoted, Plaintiff should not be promoted). Suffice it to say that this paragraph appears more at odds with itself.

But what the ERSB *clearly was* prohibited from doing - and what can only be reasonably understood to have violated Defendant's core governing regulatory policies - was to deny Plaintiff recommendation for promotion on the basis that he was not as well, or better, qualified than the candidate(s) selected to fill the allotment for that promotion category from amongst the candidates before the FY2005 SNCO Board. Compare December 12, 2002 Precept convening the ERSB, *supra*,[15] with, *e.g.*, clear language of the binding Promotions Manual 1400.32C (and subsequent version D as well) differentiating consideration standards for SNCO Board and ERSB.[16]

And because Plaintiff's record under consideration for remedial promotion for FY2005 included "commendatory documents" that were not part of his FY2004 military record, this Court cannot conclude that because he was denied promotion on the basis of his individual

---

[15] Cf. September, 2012 Opinion at 16 (noting October 14, 2010 Advisory Opinion's conclusion that, as to Plaintiff's prior ERSB non-recommendation, it could "only be inferred that . . . [Plaintiff's] record was not competitive with the records of the Marines selected for promotion").

[16] Because the December, 2012 Convening Precept is patently contrary to the binding regulatory policies, the Court need not determine whether it is also *ultra vires*. Cf. Promotion Manual, MCO P1400.32C, Para. 1203.1, and MCO 5420.16C, *supra*.

performance record in the absence of "comparison records" for 2004,[17] he would also have been denied a recommendation for promotion by that same Board under a valid standard for 2005.[18] Indeed, Major DeNault's Affidavit itself, and the Record of Proceedings of the December 13, 2012 ERSB, note – without reference to commendations - the possibility (or, as to the December 13, 2012 ERSB, the probability) of differing results for different years.  <u>See</u> Supplemental Record, Ex. H – Declaration of Maj. DeNault at para. 11 (noting that in the December, 2012 ERSB's review, "multiple Marines were in fact selected for promotion when considered for a subsequent fiscal year after failing to receive a majority of votes for the first fiscal year considered"); <u>see also</u> Defendants' Brief in Support of RMSJ at 17 (noting, with citation to Supplemental Record 350-51 that "other Marines [considered] that day were selected  . . . while being reviewed for multiple fiscal years"); Supplemental Record at 350 (showing that four of six candidates were considered for multiple years, and only Plaintiff was ultimately denied recommendation).[19]

---

[17]  <u>See</u> Defendants' Brief in Support of RMSJ at 15.

[18]  <u>Cf</u>. September, 2012 Opinion at 34 (similarly observing that "[t]he question of the designated scope and nature of competing candidate consideration, and its implementation in Plaintiff's [March, 2005] ERSB proceeding, [was] . . . less than clear to this Court on the present record").  <u>Cf. also</u> <u>Pettiford</u>, <i>supra</i> at *3 (quoting Dept. of Navy's Advisory Opinion that comparison to other candidates "is only one element" for consideration "by a regular or remedial board" and that "Marine's record is viewed in its entirety . . . [including indications of whether] he is fully capable of assuming the duties of the next higher grade" - such as responsibility and leadership, as well as technical proficiency); <u>id.</u> at *6 (finding BCNR's conclusion that ERSB properly looks to "other important considerations"  such as "whether plaintiff possessed the high degree of leadership and other attributes to perform the duties at the [promotional] grade" persuasive).  The Court notes that the Marine Corps apparently recognized the high quality of Plaintiff's performance not only through repeated commendations, but also through his promotion through its ranks to the all-but-one-highest level of Grade E-8, Master Sergeant.

[19]  The Court also observes that of the other Marines considered and all recommended for promotion that day, one was for promotion to Gr. E-9 (<i>i.e.</i>, the same grade for which Plaintiff

**VII.  CONCLUSION**

Thus, as in September last, this Court's conclusion that the ERSB proceeding was invalid is compelled by the language of Defendants' own regulations and policies.[20]  The Court again rests its conclusion on the regulatory policies and procedures submitted of record by Defendants and delineated at length herein.  As the question of the ERSB proceedings and determination's compliance with this Court's September, 2012 Order has been reviewed by this Court in accordance with the reopening of the case pursuant to Plaintiff's request and the Defendants' concurrence, no interim appeal for consideration by the BCNR has occurred.  The Court therefore will set aside the recommendation of the ERSB and remand the case to the BCNR for further proceedings in accordance with all applicable (and consistently and reasonably interpreted) regulations, policies and procedures. [21]  Cf. Pettiford v. Sec'y of the Navy, 774 F.Supp. at 183 (noting Court's "authority to set aside the [BCNR] and [ERSB] decisions as procedurally improper"); cf. also September, 2012 Opinion at 26 (providing citations and

---

was being considered).  See Supplemental Record at 351.  Cf. Supplemental Record, Ex. H – Declaration of Maj. DeNault at para. 12 ("The Court should be aware that Mr. Frazier is seeking promotion to the enlisted grade E-9, a rank that is achieved by only a fraction of Marines.").

[20] Cf. September, 2012 Opinion at 29 ("There is simply no reasonable basis in the applicable law or in Defendants' agency regulations for interpreting this express exclusion from promotional consideration under Section 1203(23) as inapplicable to Plaintiff because he was not in confinement in January 2004 when the annual SNCO selection board convened.")

[21] Cf.  Defendants' Brief in Support of RMSJ at 17-18 (noting that "new results" of the December, 2012 ERSB could be appealed to/reviewed and considered by the BCNR).  Cf. generally, Neal, 472 F.Supp. at 776 (noting, in "ascertain[ing] whether defendants' actions comported with all mandated regulations and procedures . . . the cases holding that the procedures, regulations and guidelines adopted by an agency are binding upon it") (citing Service v. Dulles, 354 U.S. 363 (1957)); Vince, 2012 WL 1090272 at *4 (observing that "an agency . . . is required to adhere to its own regulations during its decision-making processes").

quoting <u>Sanders v. United States</u>, 594 F.2d 804, 816 (Ct. Cl. 1979), for principle that "prejudicial injustices which are not corrected rise to the level of legal error in that the refusal to correct them is in derogation of the mandate of the [BCNR's] enabling statutes and, where pay is lost and claimed [Federal law, including the Tucker Act] enable the Courts with jurisdiction "to review and right the wrong").[22]

An Order consistent with this Memorandum Opinion, denying Defendants' Renewed Motion for Summary Judgment and remanding the case to the BCNR, will be entered.


　/s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Chief Magistrate Judge


Dated: October 28, 2013

Cc: JAMES S. FRAZIER, JR.
　　Post Office Box 224
　　McKeesport, PA 15134

---

[22] The Court also notes that as Plaintiff's non-recommendation for promotion must be remanded on other grounds, the Court need not at this time confront the potential tensions between its obligation to make an informed assessment of the validity of the ERSB's determination proceedings and Defendant's failure, on the basis of the "confidentiality of selection board proceedings" to provide – in the voluminous Original and Supplemental Records – an indication of the reasons for Plaintiff's singular non-selection. <u>Compare</u> Defendants' Brief in Support of RMSJ at 4 <u>with</u> September, 2012 Opinion at 16 n. 21 (citing <u>Pettiford</u>, <i>supra</i>, and <u>Dickson v. Sec'y of Defense</u>, 68 F.3d 1396, 1406 (D.C. Cir. 1995 (remanding where it was "impossible to discern the Board's path")). <u>Cf.</u> Transcript of April 18, 2013 Proceedings at 14 (documenting this Court's request that Defendants enable it to ascertain that its Order "was followed by the Board that reviewed [Plaintiff] and why they made their decision and what the basis of it was").